RANDALL K. PULLIAM (*Pro Hac Vice* Application Forthcoming)
JOSEPH HENRY (HANK) BATES (167688)
BART DALTON (187930)
CAULEY BOWMAN CARNEY & WILLIAMS, PLLC
11311 Arcade Drive, Suite 200
Little Rock, Arkansas 72212
Telephone: (501) 312-8500
Facsimile: (501)312-8505
rpulliam@cauleybowman.com

Proposed Lead Counsel

JAMES M. WAGSTAFFE (95535)
ADRIAN J. SAWYER (203712)
KERR & WAGSTAFFE LLP
100 Spear Street, Suite 1800
San Francisco, California 94105-1528
Telephone: (415) 371-8500
Facsimile: (415)371-0500
sawyer@kerrwagstaffe.com

Proposed Liaison Counsel

Attorneys for Plaintiffs
The City of Omaha Nebraska Civilian Employees'
Retirement System and the City of Omaha Police
and Fire Retirement System

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN re SiRF TECHNOLOGY HOLDINGS, INC., SECURITIES LITIGATION | Case No. C 08-0856 MMC <br> <u>Class Action</u> |
| | **DECLARATION OF ADRIAN J. SAWYER IN SUPPORT OF MOTION BY OMAHA FUNDS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF THEIR SELECTION OF COUNSEL** |
| This Document Relates To: <br><br> All Actions | Date:          May 16, 2008 <br> Time:          9 a.m. <br> Courtroom:  7, 19th Floor <br><br> Hon. Maxine M. Chesney |

I, Adrian J. Sawyer, hereby declare as follows:

1.      I am an associate with the law firm of Kerr & Wagstaffe LLP, liaison counsel for proposed lead plaintiff, The City of Omaha, Nebraska Civilian Employees' Retirement System and the City of Omaha Police and Fire Retirement System (the "Omaha Funds").  I make this declaration in support of The City of Omaha, Nebraska Civilian Employees' Retirement System and the City of Omaha Police and Fire Retirement System's Motion for Appointment as Lead Plaintiff and Approval of Their Selection of Counsel.

2.      Attached hereto as Exhibit 1 is a true and accurate copy of the complaint filed against SiRF Technology Holdings, Inc. in the United States District Court, Northern District of California.

3.      Attached hereto as Exhibit 2 is a true and accurate copy of the declaration of Carol Ebdon, the Finance Director for the City of Omaha, Nebraska.

4.      Attached hereto as Exhibit 3 is a true and accurate copy of the Omaha Fund's certification and loss chart presenting its transactions in the subject securities and summarizing its total estimated losses of $717,684.73.

5.      Attached hereto as Exhibit 4 is a true and accurate copy of charts representing the Omaha Fund's transactions in the subject security.

6.      Attached hereto as Exhibit 5 is a true and correct copy of the notice published on, a national, business-oriented newswire service, on February 8, 2008.

7.      Attached hereto as Exhibit 6 is a copy of the firm resume of Cauley Bowman Carney & Williams, PLLC, proposed lead counsel.

KERR
&
WAGSTAFFE
LLP

1        8.    I declare under penalty of perjury under the laws of the United States of America

2    that the foregoing is true and correct and was executed April 8, 2008, at San Francisco,

3    California.

4

5    _____
                  /s/

6                 Adrian J. Sawyer

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CASE NO. C 08-0856 MMC

SAWYER DECL. I/S/O OMAHA FUNDS'
MTN. FOR APPOINTMENT OF LEAD PLAINTIFF

**EXHIBIT 1**

1  COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
2  SHAWN A. WILLIAMS (213113)
   100 Pine Street, Suite 2600
3  San Francisco, CA  94111
   Telephone:  415/288-4545
4  415/288-4534 (fax)
   shawnw@csgrr.com
5       – and –
   DARREN J. ROBBINS (168593)
6  DAVID C. WALTON (167268)
   655 West Broadway, Suite 1900
7  San Diego, CA  92101
   Telephone:  619/231-1058
8  619/231-7423 (fax)
   darrenr@csgrr.com
9  davew@csgrr.com

10 LAW OFFICES BERNARD M.
     GROSS, P.C.
11 DEBORAH R. GROSS
   ROBERT P. FRUTKIN
12 Wanamaker Bldg., Suite 450
   100 Penn Square East
13 Philadelphia, PA  19107
   Telephone:  215/561-3600
14 215/561-3000 (fax)
   deborahg@bernardmgross.com
15 robertf@bernardmgross.com

16 Attorneys for Plaintiff

17 [Additional counsel appear on signature page.]

18              UNITED STATES DISTRICT COURT

19              NORTHERN DISTRICT OF CALIFORNIA

20 SAMMY ESSES, Individually and On Behalf    )  No.
   of All Others Similarly Situated,          )
21                                            )  CV  08  0856
                                              )  CLASS ACTION
                         Plaintiff,           )
22                                            )  COMPLAINT FOR VIOLATION OF THE
      vs.                                     )  FEDERAL SECURITIES LAWS
23                                            )
   SiRF TECHNOLOGY HOLDINGS, INC.,            )
24 MICHAEL L. CANNING, DIOSDADO P.            )
   BANATAO, GEOFFREY RIBAR and               )
25 KANWAR CHADHA,                             )
                                              )
26                      Defendants.           )
   _____)  DEMAND FOR JURY TRIAL

27

28

**INTRODUCTION**

1.      This is a securities class action on behalf of all persons who purchased or otherwise acquired the publicly traded securities of SiRF Technology Holdings, Inc. (SiRF" or the "Company") between October 30, 2007 and February 4, 2008 (the "Class Period"), against SiRF and certain of its officers and/or directors for violations of the Securities Exchange Act of 1934 ("1934 Act").

2.      SiRF, through its subsidiaries, engages in the development and marketing of semiconductor and software products that are designed to enable location-awareness utilizing global positioning system ("GPS") and other location technologies worldwide. SiRF is headquartered in San Jose, California.

3.      During the Class Period, defendants issued materially false and misleading statements regarding the Company's business and financial results. As a result of defendants' false statements, SiRF stock traded at artificially inflated prices during the Class Period. This permitted one of the defendants to sell $9.6 million worth of his SiRF stock at $24.18-$24.29 per share.

4.      On February 4, 2008, after the market closed, the Company issued a press release entitled "SiRF Technology Holdings Inc. Announces Financial Results for Fourth Quarter and Fiscal 2007," which stated in part:

> Net revenue in the fourth quarter of 2007 was $100.4 million, an increase of 35.3 percent from $74.2 million reported in the fourth quarter of 2006. Net revenue in fiscal 2007 was $329.4 million, an increase of 33.0 percent from $247.7 million reported in fiscal 2006. Gross margin in the fourth quarter of 2007 was 48.1 percent, as compared to 54.7 percent in the fourth quarter of 2006. Gross margin in fiscal 2007 was 50.9 percent, as compared to 54.8 percent in fiscal 2006.
>
> Net income for the fourth quarter of 2007 was $0.7 million, or $0.01 per diluted share, based on 64.3 million diluted weighted average shares outstanding. This compares with net income of $9.1 million, or $0.16 per diluted share, based on 56.1 million diluted weighted average shares outstanding in the fourth quarter of 2006.
>
> Net loss for fiscal 2007 was $(10.4) million, or $(0.19) per diluted share, based on 55.5 million diluted weighted average shares outstanding. This compares with net income of $2.4 million, or $0.04 per diluted share, based on 56.0 million diluted weighted average shares outstanding in fiscal 2006.

1      5.     On February 5, 2008, SiRF's stock collapsed $8.91 per share to close at $7.36 per

2 share, a one-day decline of 54% on volume of 63 million shares, 30 times the average three-month

3 volume.

4      6.     The true facts, which were known by the defendants but concealed from the investing

5 public during the Class Period, were as follows:

6          (a)     SiRF's acquisition of Centrality Communications, Inc. ("Centrality") was

7 having an adverse impact on SiRF's results due to the similar products sold by Centrality which

8 were cannibalizing SiRF's sales;

9          (b)     SiRF's major customers were not placing orders at sufficient quantities for

10 SiRF to meet the aggressive targets set by and for the Company;

11          (c)     Centrality's System-on-Chip ("SoC") product line had lower gross margins

12 than SiRF's products and defendants knew that although the Centrality acquisition would increase

13 revenues in Q4 (as it did), it would also significantly lower SiRF's gross margins (as it also did);

14 therefore, defendants had no basis for their statements on the Q3 conference call that EPS would be

15 up in the $0.31-$0.33 range, or that the gross margins of 54% to 55% experienced in Q3 would be

16 maintained in Q4;

17          (d)     Competitive pressures were having much more of an adverse impact on the

18 Company than acknowledged by defendants, as SiRF's customers were moving to cellular-enabled

19 products which SiRF could not adequately compete with;

20          (e)     As of October 30, 2007, which is also one month into Q4, Q4 gross margins

21 would be down significantly because of the lower SoC product line margins, which products were

22 accounting for much of the increased revenues in Q4; and

23          (f)     Downward pricing pressures were accelerating and would lead to lower

24 margins and earnings in future quarters.

25      7.     As a result of defendants' false statements, SiRF's stock traded at inflated levels

26 during the Class Period. However, after the above revelations seeped into the market, the

27 Company's shares were hammered by massive sales, sending them down more than 75% from their

28 Class Period high.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS       - 2 -

**JURISDICTION AND VENUE**

8.    Jurisdiction is conferred by §27 of the 1934 Act.  The claims asserted herein arise under §§10(b) and 20(a) of the 1934 Act and SEC Rule 10b-5.

9.    (a)    Venue is proper in this District pursuant to §27 of the 1934 Act.  Many of the false and misleading statements were made in or issued from this District.

(b)    SiRF's principal executive offices are located at 217 Devcon Drive, San Jose, California.

**PARTIES**

10.    Plaintiff Sammy Esses purchased SiRF publicly traded securities as described in the attached certification and was damaged thereby.

11.    Defendant SiRF develops and markets semiconductor and software products that are designed to enable location-awareness utilizing GPS and other location technologies worldwide. SiRF offers a range of GPS chip set and software products. The Company's chip set product line consists of two integrated circuits, a radio frequency integrated circuit and a digital signal processing circuit, and standard embedded GPS software.

12.    Defendant Michael L. Canning ("Canning") is, and at all relevant times was, President and Chief Executive Officer ("CEO") of the Company.  During the Class Period, Canning was responsible for the Company's public statements.

13.    Defendant Diosdado P. Banatao ("Banatao") is, and at all relevant times was, Chairman of the Board of SiRF.  Banatao was also a co-founder of the Company.  During the Class Period, while SiRF's stock was artificially inflated by defendants' false statements, Banatao sold 400,000 shares of his SiRF stock for proceeds of $9.6 million.

14.    Defendant Geoffrey Ribar ("Ribar") is, and at all relevant times was, Chief Financial Officer ("CFO") and Senior Vice President of Finance of the Company.  During the Class Period, Ribar was responsible for the Company's public statements.

15.    Defendant Kanwar Chadha ("Chadha") is co-founder of the Company.  At all relevant times Chadha was Vice President of Marketing and a director of the Company.  During the Class Period, Chadha was responsible for the Company's public statements.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                                    - 3 -

1    16.    Defendants Canning, Banatao, Ribar and Chadha (the "Individual Defendants"),

2  because of their positions with the Company, possessed the power and authority to control the

3  contents of SiRF's quarterly reports, press releases and presentations to securities analysts, money

4  and portfolio managers and institutional investors, *i.e.*, the market. They were provided with copies

5  of the Company's reports and press releases alleged herein to be misleading prior to or shortly after

6  their issuance and had the ability and opportunity to prevent their issuance or cause them to be

7  corrected. Because of their positions with the Company, and their access to material non-public

8  information available to them but not to the public, the Individual Defendants knew that the adverse

9  facts specified herein had not been disclosed to and were being concealed from the public and that

10  the positive representations being made were then materially false and misleading. The Individual

11  Defendants are liable for the false statements pleaded herein at ¶¶20-21.

12    **FRAUDULENT SCHEME AND COURSE OF BUSINESS**

13    17.    Defendants are liable for: (i) making false statements; or (ii) failing to disclose

14  adverse facts known to them about SiRF. Defendants' fraudulent scheme and course of business that

15  operated as a fraud or deceit on purchasers of SiRF publicly traded securities was a success, as it: (i)

16  deceived the investing public regarding SiRF's prospects and business; (ii) artificially inflated the

17  price of SiRF's publicly traded securities; (iii) allowed defendant Banatao to reap $9.6 million in

18  insider trading proceeds; and (iv) caused plaintiff and other members of the Class to purchase SiRF

19  publicly traded securities at inflated prices.

20    **BACKGROUND**

21    18.    SiRF develops and markets semiconductor and software products that are designed to

22  enable location-awareness utilizing GPS and other location technologies worldwide. SiRF offers a

23  range of GPS chip set and software products. The Company's chip set product line consists of two

24  integrated circuits, a radio frequency integrated circuit and a digital signal processing circuit, and

25  standard embedded GPS software. SiRF's software products include SiRFLoc for wireless devices

26  that provides location information for multimode GPS; SiRFXTrac to provide high-sensitivity

27  satellite tracking in autonomous GPS applications; SiRFDRive for automotive applications that

28  enhances positioning by using sensors found in automobiles, such as odometers; SiRFNav for

automotive navigation systems that shares resources with the host processor; SiRFInstantFix, which provides quick position fix and high-sensitivity satellite acquisition in occasionally connected GPS applications; and SiRFSoft, which enables application processors to perform the functions of a GPS baseband processor. The Company also offers utility software to its customers to assist them in high-volume manufacturing and testing. SiRF markets and sells its products through direct sales, independent sales representatives, and distributors. It serves wireless handheld devices, automotive, and consumer and computer devices markets.

19. On August 6, 2007, the Company acquired Centrality for 2.1 million shares of SiRF stock. Defendants wanted to demonstrate that the acquisition, which required the issuance of 2.1 million shares, was beneficial to the Company. Unfortunately, the acquisition occurred just as SiRF's own business was peaking and certain of Centrality's products overlapped with SiRF's. Defendants sought to conceal these problems for as long as possible, hoping the market would improve prior to these problems being revealed.

## DEFENDANTS' FALSE AND MISLEADING STATEMENTS ISSUED DURING THE CLASS PERIOD

20. On October 30, 2007, the Company issued a press release entitled "SiRF Technology Holdings Inc. Announces Financial Results for Third Quarter 2007," which stated in part:

SiRF reports record revenue and strong Non-GAAP operating profits

. . . SiRF Technology Holdings, Inc., a leading provider of GPS-enabled silicon and premium software location platforms, today reported unaudited financial results for its third quarter ended September 30, 2007.

Net revenue in the third quarter of 2007 was $91.2 million, an increase of 43 percent from $63.7 million reported in the third quarter of 2006. Net revenue in the first nine months of 2007 was $229.0 million, an increase of 32 percent from $173.5 million reported in the first nine months of 2006. Gross margin in the third quarter of 2007 was 52.2 percent, as compared to 55.6 percent in the third quarter of 2006. Gross margin in the first nine months of 2007 was 53.7 percent, as compared to 55.7 percent in the first nine months of 2006.

Net loss for the third quarter of 2007 was $16.1 million, or $(0.28) per diluted share, based on 57.0 million diluted weighted average shares outstanding. This compares with net income of $2.6 million, or $0.05 per diluted share, based on 55.6 million diluted weighted average shares outstanding in the third quarter of 2006.

Net loss for the first nine months of 2007 was $11.1 million, or $(0.21) per diluted share, based on 54.0 million diluted weighted average shares outstanding. This compares with net loss of $6.7 million, or $(0.13) per diluted share, based on

50.9 million diluted weighted average shares outstanding in the first nine months of 2006.

*      *      *

"We believe our Q3 performance has been exceptional. We have once again posted record revenues on record shipment volumes with excellent profitability and strong bookings momentum. *Our acquisition of Centrality and broadening of our product portfolio with the System-on-Chip (SoC) products has been enthusiastically welcomed by customers, and the SoC products are also breaking revenue and shipment volume records*," said Dr. Michael Canning, President and CEO.

The assets acquired and liabilities assumed as part of the acquisition of Centrality in August 2007 are reflected in SiRF's consolidated financial statements. As SiRF finalizes certain valuation assumptions, adjustments may be recorded in the related purchase price allocations.

Q3'2007 Highlights and Business Outlook:

- We have successfully closed the merger with Centrality Communications and are integrating our products, platforms and personnel. The resulting combination has exceeded our expectations and has been very well received by customers, vendors and employees alike. We are seeing significant design win momentum at major PND customers for our SoC platforms. We are now working on synergistic extensions of our combined fundamental technology.

- Growth in our Automotive business, and particularly in Portable Navigation Devices (PNDs), continues to be very strong and to mirror overall market growth. In Q3, we made record volume shipments to a number of major customers. In addition, many of our customers, including ASUS, Garmin, HP, Magellan, Mio, Siemens VDO and TomTom, launched new platforms using SiRfstarIII or SiRF SoC based products this quarter.

- Interest in and demand for our products continues to accelerate in our Wireless business. One of our key tier one customers launched their first new GPS enabled handset which has been qualified at two operators this quarter; and RIMM continues to launch new GPS-enabled products and expand the number of operators using their platform. Multiple handsets based on the SiRFstarIII platforms have also been announced or moved into volume production by customers such as Mio ASUS and Amoi, one of the leading local handset manufacturer in China. In July, Chung-Hwa Telecom launched LBS services based on a SiRF SUPL 1.0 AGPS server and our SiRFstudio development platform for LBS applications is getting good reception at some of the leading operators.

- In the consumer and mobile computing market, SiRFstarIII architecture is gaining more momentum. Garmin launched a new generation of their SiRFstarIII based Edge platforms for cyclists and Magellan launched a new family of SiRFstarIII based TRITON™ handhelds featuring National Geographic's award winning full color topographic maps. One of the leading mobile gaming customers launched a GPS accessory with gaming and navigation software for their mobile gaming platform and we are also starting to see increasing interest from digital camera industry.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                              - 6 -

21.     Following the release of its Q3 2007 results, SiRF hosted a conference call for analysts, investors and media representatives, during which defendants stated the following:

[CANNING]:  Customer interest in our Atlas type and SoC platforms has been very strong, especially in the tier one PND market, and we expect them to be significant contributors to our revenue growth in 2008 and beyond as these and other design wins move into high volume production.

*     *     *

Interest in and demand for our products continues to accelerate in our wireless business.  One of our key tier one customers has launched their first new GPS-enabled hand set, which has been qualified at two operators.  And one of our leading wireless customers, Research in Motion, continues to launch new GPS-enabled products and expand a number of operators supporting their platform. Multiple handsets based on SiRFstarIII platforms have also been announced or moved into volume production by customers such as Mio (inaudible), Asus and Amoi, one of the leading local handset manufacturers in China.  *In addition, our diverse customer base continues to introduce mobile products based on our award winning GPS technology.  Of particular note this quarter, many of the tier one handset manufacturers have launched GPS Bluetooth accessory modules based on SiRFstarIII and compatible with a variety of existing handsets which can provide GPS navigation, mapping and other traffic data to the appropriate Bluetooth-enabled phones.*

Our end-to-end location platform continues to gain momentum.  For example, LBS services based on a SiRF secure user plain 1.0 AGPS server were launched by Chung-Hwa Telecom in July, and our SiRF studio development platform for LBS applications is getting good reception at some of the leading operators worldwide.  In our consumer markets segment Garmin launched a new generation of their SiRFstarIII based edge platforms for cyclists and Magellan launched a new family of SiRFstarIII based TRITON handhelds featuring National Geographic's award winning, full color, topographic maps.  We're also experiencing good growth and substantial sustained interest from Asian consumer electronics and computing companies in some of the more mobile applications of GPS into media players, cameras and gaming systems. Already a leading manufacturer has introduced a SiRFstarIII based GPS accessory to a portable gaming system, which is expected to be deployed globally at an attractive price point early in 2008.

With our newly extended product portfolio and a major new operational base in China, *we believe there will be substantial growth in this market segment in the next year or so as the use of GPS-based location technology becomes a standard feature in consumer electronics, and we believe that we are extremely well positioned to enjoy that growth.*  Earlier this quarter, we signed a major agreement with Intel to jointly develop a series of innovative products designed to bring our GPS technology to mainstream mobile computing platforms.  And we continue to receive positive feedback from our customers on this.

*     *     *

Demand for our products is robust across all market segments and we expect to see Q4 revenues in the range of $99 to $102 million with at least 10% of this revenue coming from SoC products.  This will bring revenue for the year into the range $328

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                              - 7 -

million to $331 million. Assuming a tax rate of 5% to 10%, we are modeling EPS for Q4 in the range $0.31 to $0.33.

                    *        *        *

[ANALYST]: So let's say a full quarter of Centrality in Q4. Will than then depress margin or would the higher revenue level, do you expect gross margin to go up sequentially a little bit?

[CANNING]: We expect to maintain our gross margins. We have done for the last five years, we expect it to continue.

[RIBAR]: In the 54% to 55% range.

                    *        *        *

[CHADHA]: Okay so on the wireless side we do expect more handsets from tier one customers in '08. We expect '08 to be quite a strong year for our wireless based on all the feedback we are getting from handset partners as well as in operators. We just held a Location 2.0 Summit where we brought together key leaders in the handset industry as well as operators, global operators and all the feedback during the Summit as well as in our private conversation is that 2008 will be a strong year with multiple handsets from tier one customers.

                    *        *        *

Yes, I think 2008, clearly there is a significant ramp up in the wireless market. A lot will depend on how quickly can these handsets be qualified by operators and deployed into the marketplace. Let's say that you can talk to the front operators, you can talk to the front handset vendors. All indications are that the growth is very high. The key question is, is the growth 100%, 200%, or even higher than those numbers? So we expect that most of the 3G handsets, especially in the U.S. market, will be GPS-enabled. We expect significant deployment of 3G handset with the location capability in both Europe as well as in Asian markets. So that market clearly will have high penetration of GPS. So based on that, you can model what kind of numbers will be there in terms of unit models.

                    *        *        *

[ANALYST]: Well then as a follow-up. Did you feel like you've really taken a big brunt of the ASP decline in Q3 so we'll see more modest declines going forward or will we see more of the same?

[CANNING]: Well there's always competition in the marketplace, and that's something we have expected and forecast for sometime. So it's not surprising that competitors are there. It's not surprising that if they want to try to win business from us, they try to offer lower prices. But we plan to be just as competitive going forward as we have been in the past. And we expect to win more sockets than we lose and to improve the value of the sockets that we win.

[RIBAR]: So I think the other point is clearly, right, we've been able to sustain our market share, sustain our margin, sustain our business model in this pricing environment. So I think we've done an outstanding job over an extended period of time of maintaining our business.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                    - 8 -

1    22.    Following the release of the Company's Q3 earnings and the Q3 conference call,

2  SiRF's stock shot up in one day from $23.30 to $29.81 per share on volume of 11.9 million shares.

3  This was particularly noteworthy given the downward direction of the stock market during this time.

4    23.    On November 29-30, 2007, defendant Banatao sold 400,000 shares of his SiRF stock

5  for proceeds of $9,694,000.

6    24.    In January 2008, SiRF's stock declined as the market began to doubt the market for

7  SiRF's products. However, defendants did not reveal how much of SiRF's growth was disappearing

8  and the stock continued to be artificially inflated.

9    25.    On February 4, 2008, SiRF's stock closed at $16.27 per share.

10    26.    Then, after the market closed on February 4, 2008, the Company issued a press

11  release entitled "SiRF Technology Holdings, Inc. Announces Financial Results for Fourth Quarter

12  and Fiscal 2007," which shocked the market with a decrease in fourth quarter profits and which

13  stated in part:

14  SiRF reports record revenue

15    . . . SiRF Technology Holdings, Inc., a leading provider of GPS-enabled
    silicon and premium software location platforms, today reported unaudited financial
16  results for its fourth quarter and year-ended December 31, 2007.

17    Net revenue in the fourth quarter of 2007 was $100.4 million, an increase of
    35.3 percent from $74.2 million reported in the fourth quarter of 2006. Net revenue
18  in fiscal 2007 was $329.4 million, an increase of 33.0 percent from $247.7 million
    reported in fiscal 2006. Gross margin in the fourth quarter of 2007 was 48.1 percent,
19  as compared to 54.7 percent in the fourth quarter of 2006. Gross margin in fiscal
    2007 was 50.9 percent, as compared to 54.8 percent in fiscal 2006.
20

21    Net income for the fourth quarter of 2007 was $0.7 million, or $0.01 per
    diluted share, based on 64.3 million diluted weighted average shares outstanding.
22  This compares with net income of $9.1 million, or $0.16 per diluted share, based on
    56.1 million diluted weighted average shares outstanding in the fourth quarter of
23  2006.

24    Net loss for fiscal 2007 was $(10.4) million, or $(0.19) per diluted share,
    based on 55.5 million diluted weighted average shares outstanding. This compares
25  with net income of $2.4 million, or $0.04 per diluted share, based on 56.0 million
    diluted weighted average shares outstanding in fiscal 2006.
26
                                    *    *    *
27
        The assets acquired and liabilities assumed as part of the acquisition of
28  Centrality in August 2007 are reflected in SiRF's consolidated financial statements.
    The results of Centrality's operations have been included in SiRF's consolidated

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                    - 9 -

results of operations since the August 6, 2007 acquisition close date. As SiRF finalizes certain valuation assumptions, adjustments may be recorded in the related purchase price allocations.

27.     On the conference call following the earnings release, Canning admitted that defendants had expected gross margins to decline:

We had always expected that gross margins would start to shift down as ramping of certain products occurred and as competitive influences came into the market. So for the moment, I think, it's probably best to assume that we'll be around 50% gross margin.

28.     On February 5, 2008, SiRF's stock collapsed $8.91 per share to close at $7.36 per share, a one-day decline of 54% on volume of 63 million shares, 30 times the average three-month volume.

29.     As *Forbes.com* noted on February 5, 2008, in an article entitled "SiRF Shares Wiped-Out":

Shares of SiRF Technologies drowned on Tuesday.

The firm closed trading down 54.8%, or $8.91, to $7.36 after announcing fourth-quarter earnings below analyst estimates.

SiRF Technologies, makes parts for GPS devices. The firm saw its shares fall after it reported an 89% decrease in fourth-quarter profits to $0.7 million from $9.1 million the year before. The company also gave a miserable outlook for the first-quarter, predicting a loss of 4 cents per share on revenue of $71 million to $77 million. Analysts polled by Thomson Financial expected, on average, profit of 24 cents per share on revenue of $92.4 million.

SiRF is the leading supplier of global positioning system chips, supplying industry-leading brands like TomTom and Garmin. Despite demand for the GPS units, pricing has gone down significantly over the last year putting strain on SiRF to lower prices as well.

"The guidance was the big bugaboo," said Jefferies analyst Adam Benjamin. "We've been concerned about Portable Navigation Devices pricing pressure, but thought the wireless would offset that. Handsets are a billion-unit market; as that takes off that could dwarf the PND market."

Benjamin downgraded the stock to "hold" from "buy" and lowered his price target to $9 from $32.

"I think over time you will see GPS in all handsets," added Benjamin, "but the question is 'who is going to benefit from that?'"

SiRF purchased Centrality Communications, another GPS chip-maker, June of last year, giving it the potential to be a bigger player in the wireless market. Mobile phone currently incorporate GPS technology, but it is not widely used. The

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                    - 10 -

1    industry is making a shift over to 3G, or W-CDMA standards, opening up the market
2    for next-gen mobile devices.

3        30.    The true facts, which were known by the defendants but concealed from the investing
4    public during the Class Period, were as follows:

5        (a)    SiRF's acquisition of Centrality was having an adverse impact on SiRF's
6    results due to the similar products sold by Centrality which were cannibalizing SiRF's sales;

7        (b)    SiRF's major customers were not placing orders at sufficient quantities for
8    SiRF to meet the aggressive targets set by and for the Company;

9        (c)    Centrality's SoC product line had lower gross margins than SiRF's products
10   and defendants knew that although the Centrality acquisition would increase revenues in Q4 (as it
11   did), it would also significantly lower SiRF's gross margins (as it also did); therefore, defendants had
12   no basis for their statements on the Q3 conference call that EPS would be up in the $0.31-$0.33
13   range, or that the gross margins of 54% to 55% experienced in Q3 would be maintained in Q4;

14       (d)    Competitive pressures were having much more of an adverse impact on the
15   Company than acknowledged by defendants, as SiRF's customers were moving to cellular-enabled
16   products which SiRF could not adequately compete with;

17       (e)    As of October 30, 2007, which is also one month into Q4, Q4 gross margins
18   would be down significantly because of the lower SoC product line margins, which products were
19   accounting for much of the increased revenues in Q4; and

20       (f)    Downward pricing pressures were accelerating and would lead to lower
21   margins and earnings in future quarters.

22       31.    As a result of defendants' false statements, SiRF's stock traded at inflated levels
23   during the Class Period. However, after the above revelations seeped into the market, the
24   Company's shares were hammered by massive sales, sending them down more than 75% from their
25   Class Period high.

26                       **LOSS CAUSATION/ECONOMIC LOSS**

27       32.    By misrepresenting demand for its products, the defendants presented a misleading
28   picture of SiRF's business and prospects. Thus, instead of truthfully disclosing during the Class

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS    - 11 -

1  Period that SiRF's business was not as healthy as represented, defendants misrepresented the

2  benefits of the Centrality acquisition.

3       33.    These claims of profitability caused and maintained the artificial inflation in SiRF's

4  stock price throughout the Class Period and until the truth was revealed to the market.

5       34.    Defendants' false and misleading statements had the intended effect and caused SiRF

6  stock to trade at artificially inflated levels throughout the Class Period, reaching as high as $30 per

7  share.

8       35.    As a direct result of defendants' admissions and the public revelations regarding the

9  truth about demand for SiRF's products and its actual business prospects going forward, SiRF's

10  stock price plummeted 54% on February 5, 2008, to $7.36 per share, a one-day decline of $8.91 per

11  share. This drop removed the inflation from SiRF's stock price, causing real economic loss to

12  investors who had purchased the stock during the Class Period.

**COUNT I**

**For Violation of §10(b) of the 1934 Act and Rule 10b-5
Against All Defendants**

15
16       36.    Plaintiff incorporates ¶¶1-35 by reference.

17       37.    During the Class Period, defendants disseminated or approved the false statements

18  specified above, which they knew or deliberately disregarded were misleading in that they contained

19  misrepresentations and failed to disclose material facts necessary in order to make the statements

20  made, in light of the circumstances under which they were made, not misleading.

21       38.    Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

22          (a)    employed devices, schemes and artifices to defraud;

23          (b)    made untrue statements of material facts or omitted to state material facts

24  necessary in order to make the statements made, in light of the circumstances under which they were

25  made, not misleading; or

26          (c)    engaged in acts, practices and a course of business that operated as a fraud or

27  deceit upon plaintiff and others similarly situated in connection with their purchases of SiRF

28  publicly traded securities during the Class Period.

39.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for SiRF publicly traded securities. Plaintiff and the Class would not have purchased SiRF publicly traded securities at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

## COUNT II

### For Violation of §20(a) of the 1934 Act
### Against All Defendants

40.     Plaintiff incorporates ¶¶1-39 by reference.

41.     The Individual Defendants acted as controlling persons of SiRF within the meaning of §20(a) of the 1934 Act. By reason of their positions with the Company, and their ownership of SiRF stock, the Individual Defendants had the power and authority to cause SiRF to engage in the wrongful conduct complained of herein. SiRF controlled the Individual Defendants and all of its employees. By reason of such conduct, defendants are liable pursuant to §20(a) of the 1934 Act.

## CLASS ACTION ALLEGATIONS

42.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise acquired SiRF publicly traded securities during the Class Period (the "Class"). Excluded from the Class are defendants.

43.     The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. SiRF has over 60 million shares of stock outstanding, owned by hundreds if not thousands of persons.

44.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a)     whether the 1934 Act was violated by defendants;

(b)     whether defendants omitted and/or misrepresented material facts;

(c)    whether defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)    whether defendants knew or deliberately disregarded that their statements were false and misleading;

(e)    whether the prices of SiRF's publicly traded securities were artificially inflated; and

(f)    the extent of damage sustained by Class members and the appropriate measure of damages.

45.    Plaintiff's claims are typical of those of the Class because plaintiff and the Class sustained damages from defendants' wrongful conduct.

46.    Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

47.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment as follows:

A.    Declaring this action to be a proper class action pursuant to Fed. R. Civ. P. 23;

B.    Awarding plaintiff and the members of the Class damages, including interest;

C.    Awarding plaintiff reasonable costs and attorneys' fees; and

D.    Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

1                             **JURY DEMAND**

2       Plaintiff demands a trial by jury.

3 DATED: February 8, 2008             COUGHLIN STOIA GELLER

4                             RUDMAN & ROBBINS LLP

                          SHAWN A. WILLIAMS

5

6                                   SHAWN A. WILLIAMS

7

8                          100 Pine Street, Suite 2600

                         San Francisco, CA  94111

9                          Telephone:  415/288-4545

                         415/288-4534 (fax)

10                         COUGHLIN STOIA GELLER

                            RUDMAN & ROBBINS LLP

11                         DARREN J. ROBBINS

                        DAVID C. WALTON

12                         655 West Broadway, Suite 1900

                       San Diego, CA  92101

13                         Telephone:  619/231-1058

                       619/231-7423 (fax)

14

                        LAW OFFICES BERNARD M. GROSS, P.C.

15                         DEBORAH R. GROSS

                       ROBERT P. FRUTKIN

16                         Wanamaker Bldg., Suite 450

                       100 Penn Square East

17                         Philadelphia, PA  19107

                       Telephone:  215/561-3600

18                         215/561-3000 (fax)

19                         LAW OFFICES OF KENNETH A. ELAN

                        KENNETH A. ELAN

20                         217 Broadway, Suite 605

                       New York, NY  10007

21                         Telephone:  212/619-0261

                       212/385-2707 (fax)

22

                        Attorneys for Plaintiff

23

    S:\CptDraft\Securities\Cpt Sirf Technologies.doc

24

25

26

27

28

1

# CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

2     Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the

3     named parties, there is no such interest to report.

4     _____
      ATTORNEY OF RECORD FOR PLAINTIFF
5     SAMMY ESSES

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES BERNARD M. GROSS, P.C.

### AFFIDAVIT OF SAMMY ESSES

1.    I, Sammy Esses, have reviewed the Complaint and have authorized the filing of same;

2.    I did not purchase the common stock or calls of SIRF TECHNOLOGY HOLDINGS INC. ("SIRF") at the direction of my counsel or in order to participate in any private action arising under this title;

3.    I am willing to serve as a class representative and provide testimony at a deposition and trial if necessary;

4.    My transactions in SIRF common stock and calls during the time period October 30, 2007 through February 4, 2008 are as follows:

| DATE | PURCHASE/SALE | AMOUNT | PRICE |
|------|---------------|--------|-------|

SEE ATTACHED EXHIBIT A

5.    During the previous three years, I have not been or moved to be a lead plaintiff in any securities fraud class action.

6.    I will not accept any payment for serving as a class representative beyond my *pro rata* share of any recovery, except as ordered or approved by the Court with respect to an award for reasonable costs and expenses (including lost wages).

I declare under penalty of perjury that the foregoing is true and correct. Executed this 8 day of February, 2008, at Brooklyn, New York,

_____
SAMMY ESSES

SCHEDULE A

SECURITIES TRANSACTIONS

**Common Stock**

| Date Acquired | Type/Amount of Securities Acquired | Price |
|---|---|---|
| 12/26/2007 | 800 | $25.74 |

| Date Sold | Type/Amount of Securities Sold | Price |
|---|---|---|
| 01/08/2008 | 500 | $18.75 |

**Options**

| Date Acquired | Type of Option | Contract Amount | Price |
|---|---|---|---|
| 12/18/2007 | C 27.5 JAN '08 | 30 | $0.65 |
| 12/31/2007 | C 27.5 JAN '08 | 35 | $0.30 |
| 01/07/2008 | C 22.5 JAN '08 | 10 | $0.65 |
| 01/08/2008 | C 22.5 JAN '08 | 10 | $0.40 |
| 01/08/2008 | C 25 FEB '08 | 20 | $0.65 |
| 01/30/2008 | C 20 MAR '08 | 31 | $0.35 |
| 01/31/2008 | C 17.5 FEB '08 | 10 | $0.50 |
| 01/31/2008 | C 17.5 FEB '08 | 20 | $0.50 |
| 02/01/2008 | C 17.5 FEB '08 | 13 | $0.65 |
| 02/01/2008 | C 20 FEB '08 | 65 | $0.15 |

| Date Sold | Type of Option | Contract Amount | Price |
|---|---|---|---|
| 02/01/2008 | C 20 FEB '08 | 65 | $0.20 |

**EXHIBIT 2**

## DECLARATION OF CAROL EBDON

CAROL EBDON, pursuant to 28 U.S. C. 1746, declares as follows:

1. I respectfully submit this declaration in support of the application of the City of Omaha Employees' Retirement System and the City of Omaha Police and Fire Retirement System (collectively referred to herein as the "Omaha Funds") to be appointed lead plaintiff in this Action pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") I am familiar with the facts set forth herein, and if called as a witness could testify competently thereto.

2. I am the Finance Director for the City of Omaha, Nebraska. In this position, I am statutorily authorized to serve as a member of the Board of Trustees for the City of Omaha Civilian Employees' Retirement System and the City of Omaha Police and Fire Retirement System.

3. The City of Omaha Civilian Employees' Retirement System became effective on January 1, 1949. Chapter 22, Article II of the Omaha Municipal Code governs certain provisions of the Civilian Employees' Retirement System. All City employees except police officers, firefighters, and contract, temporary or part-time employees are eligible for participation in the Civilian Employees' Retirement System.

4. The City of Omaha Police and Fire Retirement System became effective January 1, 1961. Chapter 22, Article III of the Omaha Municipal Code and current contracts govern certain provisions of the Police and Fire Retirement System. Regular and probationary uniformed personnel of the Police and Fire Departments are eligible for participation in the Police and Fire Retirement System.

5. In the fall of 2006, the Omaha Funds determined that it would engage the services of a

nationally recognized securities litigation law firm to monitor its investment holdings for signs of impact by securities fraud and in the appropriate actions as deemed so by the Omaha Funds bring lawsuits to recover those defrauded assets. As such the Omaha Funds reviewed the qualifications and heard presentations from several different securities litigation law firms. Both the Boards of Trustees for the City of Omaha Civilian Employees' Retirement System and the City of Omaha Police and Fire Retirement System separately selected Cauley Bowman Carney & Williams, PLLC, ("Cauley Bowman") as its securities monitoring and litigation counsel. As such the Omaha Funds have engaged the services of Cauley Bowman.

6. On March 6, 2008, the Finance Committee of the City of Omaha Civilian Employees' Retirement System met by conference call with its counsel at Cauley Bowman to discuss the allegations in the pending class action litigation against SIRF Technology Holdings, Inc., as well as the impact of the alleged fraud on the investment holdings of the Civilian Employees' Retirement System. After this meeting the Finance Committee of the Civilian Employee' Retirement System recommended that Cauley Bowman meet with the Board of Trustees of the City of Omaha Civilian Employees' Retirement System.

7. On March 19, 2008, the Board of Trustees of the City of Omaha Civilian Employees' Retirement System met with its counsel at Cauley Bowman to discuss the allegations in the pending class action litigation against SIRF Technology Holdings, Inc. By unanimous vote the Board of Trustees instructed Cauley Bowman to file the instant motion with the court to be appointed lead plaintiff in this Action. The Board of Trustees was advised of their duties as lead plaintiff in a federal securities class Action.

8. On March 5, 2008, the Finance Committee of the City of Omaha Police and Fire

Retirement System met by conference call with its counsel at Cauley Bowman to discuss the allegations in the pending class action litigation against SIRF Technology Holdings, Inc., as well as the impact of the alleged fraud on the investment holdings of the Police and Fire Retirement System. After this meeting the Finance Committee of the Police and Fire Retirement System recommended that Cauley Bowman meet with the Board of Trustees of the City of Omaha Police and Fire Retirement System.

9. On March 20, 2008, the Board of Trustees of the City of Omaha Police and Fire Retirement System met with its counsel at Cauley Bowman to discuss the allegations in the pending class action litigation against SIRF Technology Holdings, Inc. By unanimous vote the Board of Trustees instructed Cauley Bowman to file the instant motion with the court to be appointed lead plaintiff in this action. The Board of Trustees was advised of their duties as lead plaintiff in a federal securities class Action.

10. The Omaha Funds understand that one of the purposes for the PSLRA was to encourage institutional investors with meaningful losses to step forward and become involved in leading securities class actions. As such the Omaha Funds are willing to manage and oversee this Action. The Omaha funds will remain fully informed concerning the status and progress of this Action, the strengths and weaknesses of this Action, and the prospects for settlement. As lead plaintiff, the Omaha Funds will consult with class counsel in advance with respect to each major litigation event, such as important motions, settlement discussions, trial and trial preparation, and shall have the authority and responsibility to direct counsel with respect to each of these events after receiving the benefit of counsel's advice. To the extent necessary, either I or other members of the Boards of Trustee, representatives of the City Attorney's office or others as may be designated by the Omaha

3

may be designated by the Omaha Funds will attend major hearings and trial.

11. As lead plaintiff in this Action, the Omaha Funds understand that they owe a duty to all members of the proposed class to provide fair and adequate representation and to work diligently with class counsel to maximize the recovery for the Class.

12. I respectfully request that the court approve the Omaha Funds' choice of counsel to represent the class in this Action.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 7 day of April, 2008.


Carol Ebdon
Finance Director
City of Omaha, Nebraska

4

**EXHIBIT 3**

## CERTIFICATION OF PROPOSED LEAD PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

THE CITY OF OMAHA CIVILIAN EMPLOYEES' RETIREMENT SYSTEM BOARD OF TRUSTEES declare the following as to the claims asserted, or to be asserted, under the federal securities laws:

1. I, Carol Ebdon am the Finance Director of the City of Omaha, Nebraska. Among my many statutory duties as Finance Director for the City of Omaha, Nebraska is to serve as a member of the Board of Trustees of the City of Omaha Civilian Employees' Retirement System. The City of Omaha Civilian Employees' Retirement System Board of Trustees has designated Cauley Bowman Carney & Williams, PLLC as its securities counsel in this Action for all purposes.

2. I have reviewed the complaint against SIRF Technology Holdings, Inc.

3. The City of Omaha Civilian Employees' Retirement System Board did not acquire SIRF Technology Holdings, Inc. stock at the direction of plaintiff's counsel or in order to participate in any private action under the federal securities laws.

4. The City of Omaha Civilian Employees' Retirement System Board is willing to serve as a lead plaintiff either individually or as part of a group. A lead plaintiff is a representative party who acts on behalf of other class members in directing the action, and whose duties may include testifying at deposition and trial.

5. The City of Omaha Civilian Employees' Retirement System Board will not accept any payment for serving as a representative party beyond its pro rata share of any recovery, except reasonable costs and expenses, such as lost wages and travel expenses, directly related to the class representation, as ordered or approved by the court pursuant to law.

6. The City of Omaha Civilian Employees' Retirement System Board has not been appointed to serve as a representative party for a class in any action under the federal securities laws within the past three years.

7. City of Omaha Civilian Employees' Retirement System Board understands that this is not a claim form, and that its ability to share in any recovery as a member of the class is unaffected by its decision to serve as a representative party.

8. City of Omaha Civilian Employees' Retirement System Board's transactions in SIRF Technology Holdings, Inc. that are the subject to this action are set forth at Appendix A.

**I declare under penalty of perjury that the foregoing is true and correct.**


Executed this ___ day of April, 2008

The City of Omaha Civilian Employees' Retirement System


By: _____
Carol Ebdon, Finance Director
City of Omaha, Nebraska

## APPENDIX A

## OMAHA FUNDS' TRANSACTIONS IN
## SIRF TECHNOLOGY HOLDING, INC

*Omaha Civilian Employees' Retirement System*

| Date Purchased | Amount Purchased | Purchase Price |
|---|---|---|
| 10/31/2007 | 7,700 shares | $28.2900 |

*Omaha Police and Fire Retirement System*

| Date Purchased | Amount Purchased | Purchase Price |
|---|---|---|
| 10/31/2007 | 25,900 shares | $28.2679 |

# Sirf Technology Holdings Omaha FNB-OCE Damages.xls

$6.9133

| Avg. closing price for shares held 90 days after the class period: | Class Period: 10/30/2007 - 02/04/2008   Avg closing price: 02/05/08 - 03/05/08 (90 Day Max = 05/04/08) | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| $6.9133 | Lead Plaintiff Deadline: | 4/8/2008 | | | | | | |

| Account No. | Account Name | Shares Bought | | | Shares Sold | | | Total Gain/Loss |
|---|---|---|---|---|---|---|---|---|
| | | Date | # of Shares | $ Per Share | Date | # of Shares | $ Per Share | |
| 25070900 | OMAHAFNB-OCE FULLER & THALER | 10/31/2007 | 7,700 | $28.2900 | Held | 7,700 | $6.9133 | ($217,833.00) |
| 25070900 | OMAHAFNB-OCE FULLER & THALER | | | | | | | $53,232.41 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| TOTALS | | | 7,700 | | | 7,700 | | ($164,600.59) |

Sirf Technology Holdings Omaha FNB-OCE Damages.xls

4/8/2008 11:46 AM

## CERTIFICATION OF PROPOSED LEAD PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

THE CITY OF OMAHA POLICE AND FIRE RETIREMENT SYSTEM BOARD OF TRUSTEES declare the following as to the claims asserted, or to be asserted, under the federal securities laws:

1. I, Carol Ebdon am the Finance Director of the City of Omaha, Nebraska. Among my many statutory duties as Finance Director for the City of Omaha, Nebraska is to serve as a member of the Board of Trustees of the City of Omaha Police and Fire Retirement System. The City of Omaha Police and Fire Retirement System Board of Trustees has designated Cauley Bowman Carney & Williams, PLLC as its securities counsel in this action for all purposes.

2. I have reviewed the complaint against SIRF Technology Holdings, Inc.

3. The City of Omaha Police and Fire Retirement System Board did not acquire SIRF Technology Holdings, Inc. stock at the direction of plaintiff's counsel or in order to participate in any private action under the federal securities laws.

4. The City of Omaha Police and Fire Retirement System Board is willing to serve as a lead plaintiff either individually or as part of a group. A lead plaintiff is a representative party who acts on behalf of other class members in directing the action, and whose duties may include testifying at deposition and trial.

5. The City of Omaha Police and Fire Retirement System Board will not accept any payment for serving as a representative party beyond its pro rata share of any recovery, except reasonable costs and expenses, such as lost wages and travel expenses, directly related to the class representation, as ordered or approved by the court pursuant to law.

6. The City of Omaha Police and Fire Retirement System Board has not been appointed to serve as a representative party for a class in any action under the federal securities laws within the past three years.

7. City of Omaha Retirement Sys Police and Fire System Board understands that this is not a claim form, and that its ability to share in any recovery as a member of the class is unaffected by its decision to serve as a representative party.

8. City of Omaha Police and Fire Retirement System Board's transactions in SIRF Technology Holdings, Inc. that are the subject to this action are set forth at Appendix A.

**I declare under penalty of perjury that the foregoing is true and correct.**


Executed this ⟍ day of April, 2008

The City of Omaha Police and Fire Retirement System


By: _Carol Ebdon_____
Carol Ebdon, Finance Director
City of Omaha, Nebraska

# Sirf Technology Holdings Omaha Police & Fire Damages.xls

$6.9133

Class Period: 10/30/2007 - 02/04/2008   Avg. closing price: 02/05/08 - 03/05/08 (90 Day Max = 05/04/08)
Lead Plaintiff Deadline:   4/8/2008

Avg. closing price for shares held 90 days after the class period:

| Account No. | Account Name | Shares Bought | | | Shares Sold | | | Total Gain/Loss |
|---|---|---|---|---|---|---|---|---|
| | | Date | # of Shares | $ Per Share | Date | # of Shares | $ Per Share | |
| 58022989 | OMAHA POL & FIRE FULLER THALER | 10/31/2007 | 25,900 | $28.2679 | | | | ($732,138.61) |
| 58022989 | OMAHA POL & FIRE FULLER THALER | | | | Held | 25,900 | $6.9133 | $179,054.47 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| TOTALS | | | 25,900 | | | 25,900 | | ($553,084.14) |

Page 1 DAMAGE CHART

4/8/2008  11:46 AM

Sirf Technology Holdings Omaha Police & Fire Damages.xls

**EXHIBIT 4**

## Omaha FNB-Police & Fire
### Class period trades - Sirf Technology

| Date | Shares Bought | Price | Date | Shares Sold | Price |
|------|------|------|------|------|------|
| 10/31/2007 | 25,900 | $28.2679 | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

## Omaha FNB-OCE
### Class period trades - Sirf Technology

| Date | Shares Bought | Price | Date | Shares Sold | Price |
|------|---------------|-------|------|-------------|-------|
| 10/31/2007 | 7,700 | $28.2900 | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**EXHIBIT 5**

5                                                              Equity**CN**

| Search | ▓▓▓▓▓▓▓▓▓ ▒▒▒ | Options ▾ | Related Info ▾ | BUS Feb 8 2008 19:00:01 |

**Coughlin Stoia Geller Rudman & Robbins LLP Files Class Action**     Page 1/5
Suit against SiRF Technology Holdings, Inc.


SAN DIEGO--(BUSINESS WIRE)--February 09, 2008
Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin Stoia")
(http://www.csgrr.com/cases/sirf/) today announced that a class action
has been commenced in the United States District Court for the
Northern District of California on behalf of purchasers of SiRF
Technology Holdings, Inc. ("SiRF") (NASDAQ:SIRF) publicly traded
securities during the period between October 30, 2007 and February 4,
2008 (the "Class Period").

     If you wish to serve as lead plaintiff, you must move the Court no
later than 60 days from today. If you wish to discuss this action or
have any questions concerning this notice or your rights or interests,
please contact plaintiff's counsel, Darren Robbins of Coughlin Stoia
at 800/449-4900 or 619/231-1058, or via e-mail at djr@csgrr.com. If
you are a member of this class, you can view a copy of the complaint
as filed or join this class action online at

Australia 61 2 9777 8600 Brazil 5511 3048 4500 Europe 44 20 7330 7500 Germany 49 69 9204 1210 Hong Kong 852 2977 6000
Japan 81 3 3201 8900       Singapore 65 6212 1000       U.S. 1 212 318 2000       Copyright 2008 Bloomberg Finance L.P.
                                                                           H195-865-0 08-Apr-2008 12:40:07

<MENU> to return to headlines.                                                  Equity**CN**

Coughlin Stoia Geller Rudman & Robbins LLP Files Class Action          Page 2/5

http://www.csgrr.com/cases/sirf/. Any member of the purported class
may move the Court to serve as lead plaintiff through counsel of their
choice, or may choose to do nothing and remain an absent class member.

   The complaint charges SiRF and certain of its officers and
directors with violations of the Securities Exchange Act of 1934.
SiRF, through its subsidiaries, engages in the development and
marketing of semiconductor and software products that are designed to
enable location-awareness utilizing global positioning system and
other location technologies worldwide.

   The complaint alleges that during the Class Period, defendants
issued materially false and misleading statements regarding the
Company's business and prospects. As a result of defendants' false
statements, SiRF stock traded at artificially inflated prices during
the Class Period, permitting one of the defendants to sell $9.6
million worth of his SiRF stock at $24.18-$24.29 per share.

   On February 4, 2008, after the market closed, the Company
announced disappointing financial results for its fourth quarter and
fiscal 2007. On February 5, 2008, SiRF's stock collapsed $8.91 per

Australia 61 2 9777 8600 Brazil 5511 3048 4500 Europe 44 20 7330 7500 Germany 49 69 9204 1210 Hong Kong 852 2977 6000
Japan 81 3 3201 8900      Singapore 65 6212 1000      U.S. 1 212 318 2000      Copyright 2008 Bloomberg Finance L.P.
H195-865-0 08-Apr-2008 12:40:07

<MENU> to return to headlines.                              Equity**CN**

| Search | | Options | Related Info | BUS Feb 8 2008 19:00:01 |
|---|---|---|---|---|

Coughlin Stoia Geller Rudman & Robbins LLP Files Class Action          Page 3/5
share to close at $7.36 per share, a one-day decline of 54%.

    According to the complaint, the true facts, which were known by
the defendants but concealed from the investing public during the
Class Period, were as follows: (a) SiRF's acquisition of Centrality
Communications, Inc. was having an adverse impact on SiRF's results
due to the similar products sold by Centrality which were
cannibalizing SiRF's sales; (b) SiRF's major customers were not
placing orders at sufficient quantities for SiRF to meet the
aggressive targets set by and for the Company; (c) Centrality's
System-on-Chip ("SoC") product line had lower gross margins than
SiRF's products and defendants knew that although the Centrality
acquisition would increase revenues in the fourth quarter (as it did),
it would also significantly lower SiRF's gross margins (as it also
did); (d) competitive pressures were having much more of an adverse
impact on the Company than acknowledged by defendants, as SiRF's
customers were moving to cellular-enabled products which SiRF could
not adequately compete with; (e) as of October 30, 2007, one month
into the fourth quarter, fourth quarter gross margins would be down
significantly because of the lower SoC product line margins; and (f)
downward pricing pressures were accelerating and would lead to lower

Australia 61 2 9777 8600 Brazil 5511 3048 4500 Europe 44 20 7330 7500 Germany 49 69 9204 1210 Hong Kong 852 2977 6000
Japan 81 3 3201 8900      Singapore 65 6212 1000      U.S. 1 212 318 2000      Copyright 2008 Bloomberg Finance L.P.
H195-865-0 08-Apr-2008 12:40:08

<MENU> to return to headlines.                                    Equity**CN**

| Search | | Options | Related Info | BUS Feb 8 2008 19:00:01 |

Coughlin Stoia Geller Rudman & Robbins LLP Files Class Action          Page  4/5
margins and earnings in future quarters.

    Plaintiff seeks to recover damages on behalf of all purchasers of
SiRF publicly traded securities during the Class Period (the "Class").
The plaintiff is represented by Coughlin Stoia, which has expertise in
prosecuting investor class actions and extensive experience in actions
involving financial fraud.

    Coughlin Stoia, a 190-lawyer firm with offices in San Diego, San
Francisco, Los Angeles, New York, Boca Raton, Washington, D.C.,
Philadelphia and Atlanta, is active in major litigations pending in
federal and state courts throughout the United States and has taken a
leading role in many important actions on behalf of defrauded
investors, consumers, and companies, as well as victims of human
rights violations. The Coughlin Stoia Web site (http://www.csgrr.com)
has more information about the firm.


CONTACT:
Coughlin Stoia Geller Rudman & Robbins LLP
Darren Robbins, 800-449-4900 or 619-231-1058
Australia 61 2 9777 8600 Brazil 5511 3048 4500 Europe 44 20 7330 7500 Germany 49 69 9204 1210 Hong Kong 852 2977 6000
Japan 81 3 3201 8900      Singapore 65 6212 1000      U.S. 1 212 318 2000      Copyright 2008 Bloomberg Finance L.P.
                                                                        H195-865-0 08-Apr-2008 12:40:08

<MENU> to return to headlines.                                      Equity**CN**

| Search | | | Options | Related Info | BUS Feb 8 2008 19:00:01 |

Coughlin Stoia Geller Rudman & Robbins LLP Files Class Action          Page 5/5
djr@csgrr.com

-0- Feb/09/2008  0:00 GMT

**EXHIBIT 6**



**Cauley Bowman Carney & Williams, PLLC**

www.cauleybowman.com



# Table of Contents

**The Firm's Practice and Achievements** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**Professional Biographies** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-10

       **Partners**

           S. Gene Cauley . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
           Curtis L. Bowman . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
           J. Allen Carney . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
           Darrin L. Williams . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
           Hank Bates . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
           Marcus N. Bozeman . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
           Randall K. Pulliam . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

       **Associates**

           James L. Kauffman . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
           Tiffany Wyatt Oldham . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
           Deborah Sallings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
           T. Brent Walker . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

       **Litigation Consultants**

           Eugene J. Brandao . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**Leadership Positions** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11 - 19

      **Appendix**
           Sample List of Institutional Clients
           Cornerstone Research *"Post Reform Act Securities Settlements*
                *2005 Review & Analysis,"*
           New York Times, *"Dominating the Competition,"* February 22, 2006
           National Law Journal, *"40 Under 40,"* May 2, 2005



# The Firm's Practice and Achievements

Cauley Bowman Carney & Williams, PLLC ("Cauley Bowman") is a national law firm that represents investors and consumers in class action and corporate governance litigation. It is one of the country's premiere firms in the area of securities fraud, with in-house finance and forensic accounting specialists and extensive trial experience. Since its founding, Cauley Bowman has recovered in excess of two billion dollars on behalf of aggrieved shareholders and consumers.

The attorneys at Cauley Bowman are uniquely qualified to prosecute complex accounting and financial fraud cases. Several of the firm's attorneys are CPAs, including one with Big Four auditing experience. The firm's reputation for excellence in accounting fraud and other complex class actions has been recognized on repeated occasions by federal and state court judges who have appointed the firm to serve as lead or co-lead counsel in numerous cases pending throughout the country.

In addition to its strong personnel, Cauley Bowman is well-capitalized, allowing it to dedicate considerable resources and to advance expenses on a contingency fee basis to the fullest extent necessary to achieve the best possible result for class members. As a result of its successful track record and strong capitalization, the firm enjoys a high level of respect and credibility with the defense bar and insurance carriers that often defend and insure corporations and their officers and directors.

As a firm, Cauley Bowman values practicing in a small environment where professional and personal interaction among the partners, associates, paralegals, accounting staff and other personnel allow for a true "team approach" to litigation strategy that fosters an energetic exchange of ideas. The firm believes its size allows for a greater degree of independence, flexibility and satisfaction than a large firm environment, without sacrificing the quality of representation necessary to achieve successful results for its clients.

# The Firm's Partners

**S. GENE CAULEY** is a partner of the firm.

Mr. Cauley is a graduate of Vanderbilt University School of Law where he was an oralist on the Jessup International Moot Court Team and represented Vanderbilt in appellate argument competitions. Mr. Cauley graduated *summa cum laude* from the University of Arkansas, where he was named the Outstanding Student in Finance and received the Presidential Scholar Award as the top third-year student in the entire College of Business Administration.

Mr. Cauley has substantial jury trial and arbitration experience representing both plaintiffs and defendants. Mr. Cauley is a recognized authority on class action procedure and often serves as a guest lecturer on class actions. Mr. Cauley has published an article on class action procedure entitled "Life After *Baker v. Wyeth Aherst* and *Arthur v. Zearley*: What Is The Landscape For Class Actions In Arkansas State Court?" The



ATLA Docket, Summer 1999.  Additionally, Mr. Cauley is a regularly quoted expert in the financial press, most recently providing expert commentary on the CBS Morning Show.  Recently, The National Law Journal named Mr. Cauley one of the top litigators in the country.  The National Law Journal cited his exceptional work in *In re Lernout & Hauspie Securities Litigation*, (No. 00-11589-PBS Co. Mass), where Mr. Cauley obtained a $115 million settlement against KPMG USA and KPMG Belgium.  This settlement ranks as one of the largest single settlements against an accounting firm.

Mr. Cauley is licensed to practice in the State of Arkansas, the Eastern and Western Districts of Arkansas, the District Court of Arizona and the United States Court of Appeals for the Third, Sixth, Eighth and Eleventh Circuits.  In addition to these courts and jurisdictions, Mr. Cauley regularly works on cases with local counsel throughout the country.

Since 1994, Mr. Cauley has concentrated his practice in the area of complex commercial litigation, with a particular emphasis on securities and consumer fraud litigation.  Mr. Cauley currently serves as Lead Counsel, Co-Lead Counsel or on the Executive Committee of Counsel in multiple  pending class actions and shareholder derivative litigations throughout the United States.  A representative  sample of these actions includes:  *In re NewPower Holdings Securities Litigation*, U.S.D.C., Southern District of New York, No. 02Civ1550 (CLB) ($41 million settlement); and *Paul L. Ruble, et al. v. Rural Metro Corp., et al.*, U.S.D.C., District of Arizona,  No. CIV-99-822-PHX-RGS ($15 million settlement).

Examples of recent class actions in which Mr. Cauley played a lead role in achieving a substantial settlement include:  *Martin Fogel v. Information Management Associates, Inc.*, U.S.D.C., District of Connecticut,  No. 3:00-CV-135 (AWT) ($4.1 million settlement); *Lynne H. Sinay, et al., v. Boron Lepore & Associates, Inc., et al.*, U.S.D.C., District of New Jersey, No. 99-2231 ($4.7 million settlement); *Isabel J. Griffin v. Medpartners, Inc.*, Cir. Ct. of Jefferson Cty., Alabama No.: 98-00297 (a case arising out of an initial public offering of securities which settled for $65 million, of which $25 million was allocated to the class of shareholders represented specifically by Mr. Cauley); *State of Wisconsin Investment Board, et al. v. Harold Ruttenberg, et al.* (Just For Feet), U.S.D.C., Northern District of Alabama, Southern Division, No. CV 99-BU-3097-S (Court Appointed Special Counsel; $34 million settlement); *Trinity Holdings Corp. v. Sirrom Capital Corporation, et al.*, U.S.D.C., Middle Dist. of Tennessee, Nashville Div. No. 3-98-0643 (a case which settled for $15 million and in which Mr. Cauley was on the Executive Committee of plaintiffs' lawyers); *Bill Koplovitz, et al. v. Plains Resources, Inc., et al.*, U.S.D.C., Southern District of Texas, Houston Division, No. H–99-4212 (Lead Counsel; $5.4 million settlement); *In re PaineWebber Limited Partnerships Litigation*, U.S.D.C. Southern District of New York, No. 94 CIV 8546 (CSH) (a case involving the sale of limited partnerships by PaineWebber which resulted in a settlement of $200 million); *Nasdaq Market-Makers Antitrust Litigation*, U.S.D.C. Southern District of New York, No. CIV-94-3996 (an antitrust case against several market-makers which settled for over $1 billion); *Dasburg, S.A. v. Corrections Corporation of America, et al.*, Court of the Chancery for the State of Tennessee, 20th Judicial Dist., Davidson Cty., No. 98-2391-III (settlement of $11.5 million in cash and stock); and *John Neiger v. Doctor Crants, et al.* (Prison Realty), U.S.D.C., Middle District of Tennessee, Nashville Division, No. 3-99-1205 (settlement of $11.5 million in cash and stock.)

Mr. Cauley is or has been a member of the Pulaski County, Arkansas and American Bar Associations, and the Arkansas Trial Lawyers Association.



**CURTIS L. BOWMAN** is a partner of the firm.

Mr. Bowman earned his Bachelor of Science degree in Accounting from the University of Arkansas in May 1981, where he was recognized as the Outstanding Accounting Student in his class.  Mr. Bowman is a Certified Public Accountant having worked for several years with Price Waterhouse. Mr. Bowman earned his *juris doctorate* with Highest Honors from the University of Arkansas at Little Rock, School of Law, where he was an Editor of the Law Review and received multiple American Jurisprudence Book Awards for earning the highest grade in the school in several courses.

Mr. Bowman began his legal career in 1986, with the Department of Justice Honors Program, a program created by Attorney General Robert Kennedy.  Mr. Bowman worked for the Tax Division of the Department of Justice, in Washington, D.C. until October 1990.  During his tenure with the DOJ, Mr. Bowman tried dozens of cases involving  diverse and complex issues including tax fraud, amortization of core deposit intangibles, "Bivens" actions and judicial review ability of governmental action.  While at the Justice Department, Mr. Bowman litigated a matter making it clear that certain action or inaction on the part of the Internal Revenue Service Commissioner is not subject to judicial review.  See *Horton Homes, Inc. v. United States of America,* 727 F. Supp. 1450 (1990), affirmed by the Eleventh Circuit Court of Appeals and subsequently overturned prospectively by Congress.  During his tenure at the Justice Department, Mr. Bowman was recognized as the "Outstanding Attorney" of the Tax Division (nationwide).

In 1990, Mr. Bowman returned to Little Rock, Arkansas, where he began his private practice of law with the firm of Jack, Lyon & Jones, P.A.  In 1993, Mr. Bowman became a partner of Jack, Lyon & Jones and was head of the firm's complex commercial and white collar defense litigation sections.  Mr. Bowman has been involved in a number of high profile cases, including the criminal defense of a complex "Whitewater" matter wherein the former governor of Arkansas and his attorney were indicted by the Whitewater prosecutor, Kenneth Starr.  In that case, *United States of America v. John H. Haley,*  898 F. Supp. 654 (1995), Haley and Tucker successfully argued to the District Court that Kenneth Starr had exceeded his jurisdiction in prosecuting citizens of the State of Arkansas as opposed to officers of the Executive Branch with whom Attorney General Reno had a conflict of interest.  That case was subsequently reversed by the Eighth Circuit Court of Appeals.

Mr. Bowman's litigation experience is broad and includes both the prosecution and defense of cases on behalf of individuals and classes involving death penalty matters; common law civil fraud; securities fraud; RTC savings and loan litigation; general commercial litigation; white collar crime; and tax matters. Mr. Bowman's class action experience includes the successful defense of a string of related class actions brought against Rapid Acceptance Corporation alleging that Rapid had charged consumers an amount of interest in excess of the amount allowed by law.

Mr. Bowman is also actively involved in many of the firm's securities class actions, particularly those involving accounting fraud, and is taking the lead role for the firm in such cases as *Rosa E. Garza v. J.D. Edwards & Co.*, U.S.D.C. District of Colorado, No. 99-1744, ( $15 million settlement); *Betty M. Lynch v. JDN Realty Corp., et al.*, U.S.D.C. Northern District of Georgia, Atlanta Division, No. 1:00-CV-2539 ( settled for more than $40 million in cash and stock with 11% of the total settlement allocated to Mr. Bowman's clients); *In re Phycor Shareholder Litigation*, U.S.D.C., Middle District of Tennessee, Nashville Division,



No. 3-99-0807 ($11.2 million cash settlement); and *In re Vision America Securities Litigation*, U.S.D.C., Middle District of Tennessee, Nashville Division, No. 3-00-0279 ($5.9 million settlement).

Mr. Bowman is currently working on one of the most significant securities cases to be brought in recent history, *In re Initial Public Offering Securities Litigation*, 21 MC 92 (SAS) (S.D.N.Y.), which alleges that more than 50 investment banking firms, and over 300 companies and certain officers and directors manipulated the high tech initial public offering markets.

**J. ALLEN CARNEY** is a partner of the firm.

Mr. Carney is a graduate of the University of Arkansas, earning a degree in Finance. Subsequently, Mr. Carney graduated from the University of Arkansas at Little Rock School of Law.

Prior to joining the firm, Mr. Carney was a partner with Jack, Lyon & Jones, P.A. in the Little Rock, Arkansas office, where he practiced extensively in the areas of complex commercial litigation, labor and employment litigation, and business transactions. While at Jack, Lyon & Jones, Mr. Carney had the privilege of representing some of the State's and the nation's largest employers, including Southwestern Bell Telephone Company, American Standard, Inc., and Babcock & Wilcox.

Mr. Carney has been involved in a number of high-profile cases, including the successful defense of Capital Cities/ABC News in an action brought by Tyson Foods regarding the secret videotaping of chicken processing plants; representing a joint venture comprised of two Fortune 100 companies, during an energy shortage, involving the lease and alleged damage of several large electrical generators; and the successful defense before the Eighth Circuit Court of Appeals of an issue of first impression under the Family and Medical Leave Act. Mr. Carney is a frequent lecturer to human resources professionals and attorneys regarding litigation and employment matters. For approximately six years, he was a frequent contributor to Arkansas Employment Law Newsletter, a monthly publication with more than seven hundred (700) subscribers. Additionally, Mr. Carney co-authored and edited a twenty-seven chapter <u>Employment Law Desk Book for Arkansas Employers</u> (1997). The book highlights federal and state labor and employment laws, rules and regulations.

Mr. Carney is actively involved in the firm's securities practice, having held leadership positions in numerous cases: *In re Lernout & Hauspie Securities Litigation,* No. 00-11589-PBS (D. Mass.) ($115 million settlement); *In re NewPower Securities Litigation,* No. 2-CV-1550 (S.D.N.Y.) ($41 million settlement); *In re DQE, Inc. Securities Litigation,* No. 01-1851 (W.D. Pa.); *In re Ashanti Goldfields Securities Litigation,* No. CV-00-9717 (DGT) (RML) (E.D.N.Y.); *In re Central Parking Corporation Securities Litigation,* No. 03-CV-0546 M.D. Tenn.); *In re Keyspan Securities Litigation,* No. CV-01-5852 (ARR) (MDG) (E.D.N.Y.); *Paul Ruble, et. al. v. Rural Metro Corp., et. al.,* No. CV-99-822-PHX-RGS (D. Ariz.).

Mr. Carney is licensed to practice law in Arkansas state courts, the United States District Courts for the Eastern and Western Districts of Arkansas, and the United States Court of Appeals for the Third and Eighth Circuits. Mr. Carney has argued before the Arkansas Supreme Court. Additionally, Mr. Carney has appeared in numerous federal and state courts across the nation via admission *pro hac vice*.



**DARRIN L. WILLIAMS** is a partner of the firm.

Mr. Williams received his Bachelor of Arts degree in History from Hendrix College in Conway, Arkansas. Mr. Williams earned his *juris doctorate* degree from Vanderbilt University School of Law. While at Vanderbilt, Mr. Williams served as the Chief Justice of the Moot Court Board, received the American Jurisprudence Book Award for earning the highest grade in Torts, and was an Earl Warren Scholar, NAACP Legal Defense Fund. Mr. Williams also earned his Master of Law in Securities and Financial Regulation from Georgetown University Law Center. While working on his Master of Law, he worked in the General Counsel's Office of the United States Securities and Exchange Commission.

Mr. Williams, a principal institutional investor contact for the firm, devotes a substantial portion of his practice to representing institutional investors seeking financial recovery for losses suffered as a result of securities fraud. Mr. Williams heads up the Institutional Monitoring Department for the firm, handling all asset monitoring and case start-ups, including Lead Plaintiff motions. Most recently Mr. Williams has obtained Leadership positions in *In re Bisys Group Inc. Securities Litigation*, 04-CV3840 (LTS) (S.D.N.Y.); *In re Cardinal Health Securities Litigation*, No. C2-04-575 (E.D. Ohio). Mr. Williams is a member of several institutional investor organizations, including: the Council of Institutional Investors, the National Association of Public Pension Fund Attorneys, the National Conference of Public Employee Retirement Systems and the National Association of Securities Professionals.

Immediately prior to joining the firm, Mr. Williams was the Chief Deputy Attorney General for the State of Arkansas, where he directed all of the legal work of the office, including the representation of the state's constitutional offices, agencies, boards and commissions. During his time in the Office of the Arkansas Attorney General, Mr. Williams' legal skill and leadership resulted in the office recovering millions of dollars on behalf of Arkansas consumers. Because of Mr. Williams' work to protect senior consumers from fraud, he was invited to testify before the United States House of Representatives Committee on Ways and Means. Mr. Williams has also served as an aide to a United States Senator and the United States Senate Sergeant at Arms, as well as general counsel to a business consulting corporation.

Mr. Williams' professional associations include membership in the American Bar Association, the National Bar Association, the Arkansas Trial Lawyers Association and the Arkansas Bar Association, where he is a member of the Jurisprudence and Law Reform and the Legal Services Committees. Mr. Williams was named Outstanding Government Lawyer by the W. Harold Flowers Law Society, Distinguished Alumnus at Hendrix College, and to Arkansas Business' "Forty under Forty." Mr. Williams is licensed to practice in the State of Arkansas, the Eastern and Western Districts of Arkansas, as well as the United States Supreme Court.

Mr. Williams is also active in community, civic and political matters. Presently, Mr. Williams serves as a commissioner on the Little Rock Planning Commission, Chairman of the First Tee of Arkansas - Jack Stephens Youth Golf Academy, on the Board of Governors for Hendrix College, as a board member for the Little Rock Central High 50th Anniversary Commission, and as a member of the American Council of Young Political Leaders.



**HANK BATES** is a partner of the firm.

Mr. Bates received his Bachelor of Arts degree in History and Literature from Harvard University in 1987 where he was a National Merit Scholar and graduated with honors.  After college, Mr. Bates was awarded a Rotary International Fellowship to the University of Manchester, Manchester, Great Britain.

Mr. Bates received his *juris doctorate* from Vanderbilt University School of Law in 1992, where he was awarded the Andrew Ewing Scholarship, graduated Order of the Coif, served as Articles Editor of the *Vanderbilt Law Review* and on the Moot Court Board, received American Jurisprudence Awards or "top paper" in five classes, authored Note, "Out of Focus: The Misapplication of Equitable Remedies in the Nontraditional Arena of School Desegregation," 44 Vanderbilt Law Review 1315, 1991; and served as Symposium Editor and authored the Introduction for the 1992 Symposium Issue of the *Review*,  "A Reevaluation of the Canons of Statutory Interpretation," 45 Vanderbilt Law Review No. 3, 1992.

Following graduation from law school, Mr. Bates served as a law clerk for the Honorable Danny J. Boggs, Circuit Judge for the United States Court of Appeals for the Sixth Circuit in 1992 and 1993.  Following his clerkship, Mr. Bates moved to California where he focused his practice on public interest environmental law and worked as an Associate Attorney with EarthJustice Legal Defense Fund.  Mr. Bates was involved in high-profile and significant litigation involving, among other issues, preservation of western streams that provide habitat for endangered salmon and steelhead trout, remediation of contamination at decommissioned military bases, preservation of old-growth forest habitat for the Spotted Owl and other endangered species, protection of California coastal lands from over-development and oil exploration, and the establishment of emissions trading programs for industries in southern California.

In 1998, Mr. Bates returned home to Little Rock, Arkansas where his practice has included a broad spectrum of environmental litigation, including industrial pollution, groundwater pollution from underground storage tanks and other facilities, air pollution, toxic exposures, oil and gas exploration and production waste, crop damage and personal injury from pesticides, as well as claims against federal and local governmental agencies that have not fulfilled statutory mandates to protect the environment.  Mr. Bates has represented numerous individuals and entire communities (numbering hundreds of households) in complex and high-profile litigation involving air pollution, groundwater pollution and toxic exposures resulting in multi-million dollar recoveries and agreements and court orders requiring remediation of contamination and compliance with applicable environmental laws and regulations in the future. Mr. Bates is a frequent lecturer on subjects related to environmental law and toxic torts.  In addition, Mr. Bates is involved in the firm's consumer protection class action litigation.

Mr. Bates is an active member of the bar, serving as Vice-Chairman of the American Bar Association's Committee on Pesticides, Chemical Regulation, and Right-to-Know; on the Governing Board of the Environmental Law Section of the Arkansas Bar Association; and as Arkansas State Coordinator for Trial Lawyers for Public Justice.  In addition, he is a member of the Arkansas Trial Lawyers Association, the Association of Trial Lawyers of America, and the California Bar Association.



Mr. Bates is licensed to practice in the State of Arkansas, the State of California, the U.S. Court of Federal Claims, the U.S. Circuit Court of Appeals for the Eight and Ninth Circuits, the U.S. District Courts for the Eastern and Western Districts of Arkansas, and the U.S. District Courts for the Northern and Southern Districts of California.

**MARCUS N. BOZEMAN** is a partner of the firm.

After earning a Bachelor of Arts degree in Political Science from the University of Arkansas, Mr. Bozeman attended law school at the University of Arkansas at Little Rock (UALR) School of Law. Mr. Bozeman graduated first in his law school class and was also selected as Editor-in-Chief for the University of Arkansas at Little Rock Law Journal. The recipient of American Jurisprudence Awards or "top paper" designations in eight of his law school classes, Mr. Bozeman additionally authored the Note, "Miranda Comes Out from under a Stone," 16 U. Ark. Little Rock L.J. 259 (1994).

Following law school, Mr. Bozeman served for two years as a law clerk for the Honorable Floyd R. Gibson, Circuit Judge from the United States Court of Appeals for the Eighth Circuit. Mr. Bozeman subsequently entered private practice at the Kansas City, Missouri defense firm of Rouse Hendricks German May. Mr. Bozeman then moved to Memphis, Tennessee, where he practiced at Baker, Donelson, Bearman, Caldwell, and Berkowitz before joining Cauley Bowman. In addition to participating in multiple jury trials, Mr. Bozeman has extensive experience in litigating complex commercial and class action cases.

Mr. Bozeman is currently representing individual and institutional investors seeking recovery for losses suffered as a result of securities fraud. Mr. Bozeman has held a leadership position in the following securities fraud class settlements: *Valuepoint Partners, Inc. v. ICN Pharmaceuticals, Inc.*, No. 03-989 (C.D. Ca.); *In re National Golf Properties, Inc. Securities Litigation,* 92-1383-GHK (RZx) (W.D. Ca.) ($4.175 million settlement); *In re Interpublic Securities Litigation,* 02-CV-6527 (DLC) (S.D.N.Y.) ($115 million total settlement package of cash and stock); *In re Fleming Companies, Inc. Securities and Derivative Litigation,* 5-030MD-1530 (TJW) (E.D. Tex.); *In re Loral Space & Communications Ltd. Securities Litigation,* No. 01-CV-1388 (JGK) (S.D.N.Y.).

Mr. Bozeman is licensed to practice in the state courts of Arkansas, Kansas, Missouri, and Tennessee. He is also admitted to appear before the United States District Courts for the Eastern and Western Districts of Arkansas, the District of Kansas, the Western District of Missouri, and the Western District of Tennessee, as well as the United States Courts of Appeals for the Third, Sixth, Eighth, Tenth, and Federal Circuits. Included among Mr. Bozeman's reported cases are: S.W.3d 805 (Ark. Ct. App. 2001); *W. Tenn. Chapter of Associated Builders & Contractors v. City of Memphis,* 138 F. Supp. 2d 1015 (W.D. Tenn., 2000); *KCJ Corp. v. Kinetic Concepts, Inc.,* 39 F. Supp. 2d 1286 (D. An., 1999); *KCJ Corp. v. Kinetic Concepts, Inc.,* 30 F. Supp. 2d 1319 (D. An., 1998); *KCJ Corp. v. Kinetic Concepts, Inc.,* 18F. Supp. 2d 1212 (D. An. 1998); *New Hampshire Ins. Co. v. Westlock Hardware, Inc.,* 11 F. Supp. 2d 1298 (D. An. 1998).



***RANDALL K. PULLIAM*** is a Partner of the firm.

Mr. Pulliam graduated from the University of Central Arkansas with a Bachelor of Business Administration degree, where he was nominated for Outstanding Management Student in the university's School of Business. Mr. Pulliam later earned his Master of Business Administration degree from the University of Arkansas, with an emphasis in Finance. Mr. Pulliam earned his juris doctorate from the University of Arkansas at Little Rock (UALR) School of Law where he received multiple American Jurisprudence Awards.

Mr. Pulliam has substantial experience in many areas of the securities industry, holding his Series 7 General Securities Representative license. Mr. Pulliam worked for Stephens, Inc. as an Equity Trader for four years, where he executed in excess of $2 billion in securities transactions each year and participated in the firm's underwriting and Initial Public Offering allocation decisions. Prior to working at Stephens, Mr. Pulliam worked as an investment banker for Crews and Associates, Inc., where he was responsible for buying municipal bonds for both individual and institutional investors.

Prior to joining the firm, Mr. Pulliam had a successful law practice in a variety of legal areas, including commercial litigation, where he gained extensive courtroom experience, successfully trying several jury trials.

Mr. Pulliam's practice focuses primarily upon representing investors seeking financial recovery for losses suffered as a result of securities fraud, including derivative lawsuits filed against corporate boards, seeking to impose corporate governance reforms aimed at protecting shareholders and eliminating corporate waste and abuse. Mr. Pulliam has been appointed lead or co-lead counsel in dozens of cases throughout the country. Additionally, Mr. Pulliam is one of the firm's principal individual investor client contacts and serves as a liaison to the firm's institutional clients.

## The Firm's Associates

***JAMES L. KAUFFMAN*** is an associate of the firm.

Mr. Kauffman earned his Bachelor of Science from the University of Florida, receiving a dual degree in Financial Management and Insurance. Subsequently, Mr. Kauffman graduated with Honors from the University of Florida Levin College of Law. During his law school career, Mr. Kauffman practiced as a certified legal intern within the Virgil C. Hawkins Civil Clinic, assisting indigent clients file *pro se* lawsuits. Additionally, Mr. Kauffman was distinguished as the top student in Trial Practice.

Prior to joining the firm, Mr. Kauffman worked as a financial advisor for Morgan Stanley Dean Witter.



While at Morgan Stanley, Mr. Kauffman underwent comprehensive Series 7 training, which included option strategies, margin accounts, and underwriting of initial public offerings. Mr. Kauffman left Morgan Stanley Dean Witter in Fall of 1999 to pursue his law degree.

Mr. Kauffman is licensed to practice in the State of Arkansas and the Eastern and Western Districts of the United States District Court in Arkansas and in Florida. He is a member of the American and Arkansas Bar Associations. Mr. Kauffman's areas of expertise include securities law, corporate law, mediation, and arbitration. His practice with the firm focuses primarily upon representing investors seeking financial recovery for losses suffered as a result of securities fraud.

Mr. Kauffman is one of the firm's principal attorneys working on what has been called one of the nation's largest and most significant securities fraud cases. *In re Initial Public Offering Securities Litigation,* 21MC 92(SAS)(S.D.N.Y.).

**TIFFANY WYATT OLDHAM** is an associate of the firm.

Ms. Oldham graduated *cum laude* from the University of Arkansas at Fayetteville School of Law in 2001. She served as a member of the Board of Advocates and the W.B. Putman Inns of Court. In addition, Ms. Oldham served as President of Phi Delta Phi honors fraternity. During her law school career, Ms. Oldham participated in various trial competitions and moot court, where she was selected as a semi-finalist in the spring rounds. Ms. Oldham has a Bachelors of Arts in English from the University of Arkansas at Fayetteville.

Prior to joining the firm, Ms. Oldham worked for the Japanese municipal government in Urasoe City, Okinawa, Japan. While abroad, Ms. Oldham's primary focus was on international relations. In addition, Ms. Oldham worked as an intern for the U.S. Bankruptcy Court, Western Division of Arkansas, where she assisted in researching bankruptcy issues and administrating bankruptcy proceedings.

Ms. Oldham is licensed to practice in the Arkansas state courts and the United States District Courts for the Eastern and Western Districts of Arkansas, and the United States Courts of Appeals for the Third Circuit. She is currently a member of the American, Arkansas and Pulaski County Bar Associations. Ms. Oldham has experience in a multitude of legal fields including securities law, corporate law, business litigation, real estate transactions, and insurance regulation. Ms. Oldham has had significant involvement: *In re Fleming Companies, Inc. Securities and Derivative Litigation,* 5-030MD-1530 (TJW) (E.D. Tex.); *In re Keyspan Securities Litigation,* No. CV-01-5852 (ARR) (MDG) (E.D.N.Y.); *Freidman v. Rayovac Corporation,* No. 02-CV-0308 (W.D. WI); *In re IXL Enterprises, Inc. Securities Litigation,* No. 1:00-CV-2347-CC (N.D. Ga.); *Asher v. Baxter International, Inc., et. al.,* No. 02-CV-5608 (N.D. Il).



**T. BRENT WALKER** is an associate of the firm.

Mr. Walker earned his Bachelor of Business Administration degree in Accounting from the University of Mississippi. He earned his Master's degree in business from Mississippi State University and completed his *juris doctorate* from the University of Arkansas at Little Rock. While in law school, Mr. Walker earned the Top Paper in several courses.

Mr. Walker is a CPA with substantial experience in public accounting and business management. Prior to joining the firm, Mr. Walker obtained over seven years of public accounting experience in taxation, audit and management advisory services. In addition, Mr. Walker worked for a division of Prudential Financial primarily acquiring and managing real estate investment properties for institutional clients.

Mr. Walker is licensed to practice law in the state of Arkansas. He is also a member of the American and Arkansas Bar Associations as well as the American Institute of Certified Public Accountants. His practice with the firm focuses primarily upon representing investors seeking financial recovery for losses suffered as a result of securities fraud. Mr. Walker has had significant involvement in: *In re Lernout & Hauspie Securities Litigation,* No. 00-11589-PBS (D. Mass.) ($115 million settlement); *In re Vision America, Inc. Securities Litigation,* No. 3-00-279 (M.D. Tenn.); *State of Wisconsin Investment Board, et.al. V. Ruttenberg, et.al.,* No. CV 99-B4-3129-S (N.D. Ala.); *In re DQE, Inc. Securities Litigation*, No. 01-1851 (W.D. PA.).

## Of Counsel to the Firm

**BART DALTON** is of counsel to the firm.

Mr. Dalton received his Bachelor of Arts degree, *cum laude*, in 1991 from Occidental College and his Juris Doctrate, *cum laude*, from the Pepperdine University School of Law in 1997, where he was included on the Dean's List and received the American Jurisprudence Award. After law school, Mr. Dalton served as a Deputy County Counsel for the County of Los Angeles from 1997 to 2000.

Mr. Dalton has extensive civil and criminal jury trial experience in state and federal courts throughout the United States. Mr. Dalton has successfully tried cases in the areas of civil rights, toxic tort, antitrust and unfair competition, wrongful death, labor and employment, dangerous conditions of public property, personal injury, breach of contract, intellectual property, First Amendment, and business and regulatory crimes. More recently, Mr. Dalton has focused his practice on representing plaintiffs in class action and mass tort litigation.

Mr. Dalton is admitted to the state bars of California and Texas. He is also admitted to practice in the Central, Southern, and Northern District of California, the Northern and Southern District of Texas, and

-10-



the Ninth Circuit Court of Appeals. Reported cases in which he has been involved include *City of Hawthorne ex rel. Wohlner v. H&C Disposal Co.* (2003) 109 Cal.App. 4th 1668, a case of first impression regarding the California False Claims Act.

Mr. Dalton is a member of the American Bar Association, the Federal Bar Association, the Association of Trial Lawyers of America, and the Texas Trial Lawyers Association. Mr. Dalton was recently named one of the "Best Lawyers Under 40" in Dallas by D Magazine for 2006-2007.

## Litigation Consultant

***EUGENE J. BRANDAO*** is a forensic accountant of the firm.

Mr. Brandao has performed accounting, auditing and forensic analysis since 1988. His experience includes a Big Five accounting firm background providing auditing and tax services. Mr. Brandao served as controller for a Houston law firm, and has performed forensic accounting analysis for law firms nationwide.

Mr. Brandao has been a Certified Public Accountant since May 1989, licensed in the state of Texas. He is currently a member of the American Institute of Certified Public Accountants. His responsibilities have included audit engagements for brokers and dealers in securities, banks, bank holding companies, savings and loan organizations, energy companies and not-for-profit organizations.

Prior to joining Cauley Bowman, Mr. Brandao provided litigation consulting services with Moore, Tyler & Company from March 1992 through March 2002. Among Mr. Brandao's assignments were engagements involving breach of contract and dispute settlement, auditing malpractice, and assessment of officer and director fraud and mismanagement. He has provided consultation and analysis on securities fraud as well as lost profits and business valuation engagements in multiple industries, and has also performed services for various businesses to calculate damages sustained as a result of embezzlement and other types of fraud and mismanagement. In addition, Mr. Brandao served as controller for Moore, Tyler & Company, handling accounting, payroll, accounts payable, accounts receivable, billing, budgeting and tax reporting.

Mr. Brandao received his Bachelor of Arts in Pre-Law from Louisiana Tech University. After eight years as a field service representative in the petroleum and natural gas industry, Mr. Brandao earned a Masters of Science in Accountancy from the University of Houston.



# Leadership Positions

Cases where Cauley Bowman has held a leadership position of Lead or Co-Lead Plaintiffs' Counsel or as a member of the Executive Committee of Counsels:

*In re Abercrombie & Fitch Company Securities Litigation*, United States District Court for the Southern District of New York, Civil No. M21-83 (TPG) (Executive Committee; $6 million settlement)

*In re Acclaim Entertainment Inc. Securities Litigation*, United States District Court for the Eastern District of New York, No. 03-CV-1270 (JS) (ETB) (Co-Lead Counsel)

*William J. Stoddard v. Advanta Nat'l Bank USA*, Delaware Superior Court, New Castle County, No. 97C-08-206 (VAB) (Co-Lead Counsel; $11 million settlement)

*Article Four Trust v. Amerco, et al.*, United States District Court for the District of Nevada, No. CV-N-03-0050-DWH VPC (Co-Lead Counsel)

*Desert Orchid Partners, LLC v. Transaction Systems Architects, Inc.*, United States District Court for the District of Nebraska, Case No. 02-CV-553 (Co-Lead Counsel; $24.5 million settlement)

*In re American Educational Products, Inc. Shareholder Litigation*, District Court for Boulder County, Colorado, No. 00-CV-1122, Div. 5 (Co-Lead Counsel)

*In re Arcadia Financial Ltd. Shareholder Litigation*, District Court for Hennepin County, Minnesota, No. 99-15992 (Co-Lead Counsel)

*Richard Bell, et al. v. Ascendant Solutions, Inc., et al.*, United States District Court for the Northern District of Texas, Dallas Division, No. 3-01-CV-0166-P (Co-Lead Counsel)

*In re Ashanti Goldfields Securities Litigation*, United States District Court for the Eastern District of New York, No. CV-00-0717 (DGT) (RML) (Co-Lead Counsel; $15 million settlement)

*J.D. Perkins, et al. v. Christopher T. Sortwell, et* al. (Aurora Foods), Superior Court of California, San Francisco County, No. 311498 (Lead Derivative Counsel)

*Brian Asher v. Baxter International, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Case No. 02 C 5608 (Co-Lead Counsel)



*Herbert Huppert v. Robert Martini* (Bergen Brunswig), United States District Court for the Central District of California,  No. SA-CV-00-364-AHS (Lead Derivative Counsel)

*In re Black Box Corporation Securities Litigation*, United States Court for the Western District of Pennsylvania, No. 03 CV 412 (Co-Lead Counsel)

*In re Beverly Enterprises, Inc. Derivative Litigation*, United States District Court for the Eastern District of Arkansas, Western Division, No. LR-C-99-826 (Co-Lead Counsel)

*In re BISYS Securities Litigation, Inc.*, United States District Court Southern District of New York, Civil Action No. 04-CV-3840 (Lead Counsel; $66.8 million settlement)

*In re Blockbuster, Inc. Securities Litigation*, United States District Court for the Northern District of Texas, Dallas Division, No. 3:03-CV-03098-M LEAD (Co-Lead Counsel)

*Lynne H. Sinay, et al. v. Boron LePore & Assocs., Inc.*, et al., United States District Court for the District of New Jersey, No. 99-2231 (DRD) (Co-Lead Counsel; $4.7 million settlement)

*In re Central Parking Corporation Securities Litigation*, United States District Court for the Middle District of Tennessee, Nashville Division, No. 03-CV-0546 (Co-Lead Counsel; $4.85 million)

*In re Cherry Corp. Shareholders Litigation*, Delaware Chancery Court, New Castle County, C.A. No. 18007 NC (Co-Lead Counsel)

*In re Chromcraft Shareholders Litigation*, Delaware Chancery Court, New Castle County, C.A. No. 18571 (Co-Lead Counsel)

*H. Carl McCall, etc. v. Richard L. Scott, et al.*, United States District Court for the Middle District of Tennessee, Nashville Division, No. 3:97-0838 (Derivative Litigation Executive Committee, $14 million settlement with extensive corporate governance measures adopted)

*Dasburg, S.A. et al. v. Corrections Corporation of America, et al.*, Court of Chancery for Tennessee, 20th Judicial District, Davidson County, No. 98-2391-III (Lead Counsel; $11.5 million settlement in cash and stock)

*In Re Covad Securities Litigation*, United States District Court for the Northern District of California, No. C-00-3891-PJH (Co-Lead Counsel; $16.5 million in cash and stock)

*Nat Orme v. Michael R. Cunningham, et al.*, Superior Court of New Jersey, Chancery Division, Hudson County, No. C-69-00 (Co-Lead Counsel)

*In re Del Webb Corporation Shareholders Litigation*, Delaware Chancery Court, New Castle County, C.A. No. 18357 NC (Co-Lead Counsel)

*In re DQE, Inc. Securities Litigation*, United States District Court, Western District of Pennsylvania, No. 01-1851 (Co-Lead Counsel; $12 million settlement)

*In re Dynacq International, Inc. Securities Litigation*, United States District Court for the Southern District of Texas, Houston Division, No. H-02-0377 (Co-Lead Counsel)

*In re Eaton Vance Corporation Securities Litigation*, United States District Court for the District of Massachusetts, Civil Action No. 01-10911-EFH (Co-Lead Counsel; $5 million settlement)

*Edward Steele, et al. v. Welch, et al.* (FAO, Inc.), United States District Court for the Eastern District of Pennsylvania, No. 03-942-MMB (Co-Lead Counsel)

*Harry Amsterdam et al. v. FleetBoston Financial Corporation et al.*, United States District Court for the District of New Jersey, No. 02-CIV-4561 (WGB) (Co-Lead Counsel)

*Earl Culp, et al. v. Gainsco, Inc., et al.*, United States District Court for the Southern District of Florida, No. 03-20854-CIV-LENARD/SIMONTON (Co-Lead Counsel)

*Andris Indriksons, et al. v. Hamilton Bancorp Inc., et al.*, United States District Court for the Southern District of Florida, Miami Division, No. 01-CV-0056-GOLD (Co-Lead Counsel; $9 million settlement)

*Beverly Verga, et al. v. Hammerhead's Sea Grille of Juno Beach, Inc.*, Circuit Court for Palm Beach County, Florida, No. CL 98-6663 AN (Lead Counsel)

*In re HealthSouth Corp. Securities Litigation*, United States District Court for the Northern District of Alabama, Southern Division, No. CV-98-J-2634-S (Executive Committee)

-14-



*In re Il Fornaio America Corporation, et al.*, Shareholders Litigation, Delaware Chancery Court, New Castle County, C.A. No. 18506 (Co-Lead Counsel)

*Boris Pozniak v. Imperial Chemical Industries PLC, et al.*, United States District Court for the Southern District of New York, No. 1:03cv2457 (NRB) (Co-Lead Counsel)

*In re Independent Energy Holdings PLC Securities Litigation*, United States District Court for the Southern District of New York, No. 00 Civ. 6689 (Executive Committee; $48 million settlement)

*Martin Fogel v. Information Management Associates, Inc.*, United States District Court for the District of Connecticut,  No. 3:00-CV-135 (AWT) (Co-Lead Counsel; $4.1 million settlement)

*In re Initial Public Offering Securities Litigation*, United States District Court, Southern District of New York, 21 MC 92 (SAS) (Steering Committee Member; $ 1 billion partial settlement reached with a one group of defendants)

*Walter E. Smith v. Interstate Bakeries Corp. et al.*, United States District Court for the Western District of Missouri, No. 4:03-cv-00142-FJG (Co-Lead Counsel; $18 million settlement)

*Jerome Deckler, et al. v. Ionics, Inc., et al.*, United States District Court for the District of Massachusetts, No. 03-CV-10393 (WGY) (Lead Counsel)

*In re IXL Enterprises, Inc. Securities Litigation*, United States District Court for the Northern District of Georgia, Atlanta Division, No. 1:00-CV-2347-CC (Co-Lead Counsel; $2.5 million settlement)

*In re J. Jill Group, Inc. Securities Litigation*, United States District Court for the District of Massachusetts, No. 03-CV-10918 - WGY (Co-Lead Counsel)

*Rosa A. Garza, et al. v. J.D. Edwards & Company, et al.*, United States District Court for the District of Colorado, No. 99-–1744 (Co-Lead Counsel; $15 million settlement)

*State of Wisconsin Investment Board, et al. v. Harold Ruttenberg, et al.* (Just For Feet), United States District Court for the Northern District of Alabama, Southern Division, No. CV-99-BU-3097-S (Court Appointed Special Counsel; $34 million settlement)

*In re JWGenesis Financial Corporation Shareholder Litigation*, Circuit Court for Palm Beach County, Florida, No. CL 00-8661 AG (Co-Lead Counsel)



*In re Keyspan Securities Litigation*, United States District Court for the Eastern District of New York, No. CV-01-5852 (ARR) (MDG) (Co-Lead Counsel; $13.75 million settlement)

*Todd Holley, et al. v. Kitty Hawk Inc., et al.*, United States District Court for the Northern District of Texas, Dallas Div., No. 3-00-CV-0828-P (Co-Lead Counsel; $2.75 million settlement)

*In re Lernout & Hauspie Securities Litigation*, United States District Court for the District of Massachusetts, No. 00-CV-11589-PBS (Co-Lead Counsel; $115 million settlement)

*In re Loral Space & Communication Ltd. Securities Litigation*, United State District Court for the Southern District of New York, Master File No. 01-CV-1388 (JGK) (Co-Lead Counsel)

*In re MCG Capital Corporation Securities Litigation*, United States District Court for the Eastern District of Virginia, Alexandria Division, No. 1:03cv0114-A (Co-Lead Counsel)

*Isabel J. Griffin, et al. v. MedPartners, Inc., et al.*, Circuit Court of Jefferson County, Alabama, No. CV-98-00297 (Lead Counsel for purchasers of TAPS Securities; $25 million settlement for TAPS purchasers, $65 million total settlement)

*Douglas A. Wilson, et al. v. MicroFinancial Incorporated, et al.*, United States District Court for the District of Massachusetts, No. 03-CV-11883 (RGS) (Co-Lead Counsel)

*In re Midway Games, Inc. Securities Litigation*,  United States District Court for the Northern District of Illinois, Eastern Division, No. 03 C 6821

*In re Mikasa Inc. Shareholders Litigation*, Delaware Chancery Court, New Castle County, C.A. No. 18300 NC (Co-Lead Counsel)

*Robert O. Neibert v. Monarch Dental Corp.*, United States District Court for the Northern District of Texas, Dallas Division, No. 3:99-CV-762-X (Co-Lead Counsel; $3.5 million settlement)

*In re Monterey Pasta Company Securities Litigation*, United States District Court for the Northern District of California, No. 3:03 CV 00632 MJJ (Co-Lead Counsel)

*Harold Hicks v. Morgan Stanley & Co., et al.*, United States District Court for the Southern District of New York, Civil Action No. 01 CV 10071 (Co-Lead Counsel; $10 million settlement)

-16-



*E. Paul Larett, et al. v. Michael L. Robertson, et al.* (MP3.com), Superior Court of California, County of San Diego, No. GIC-754696 (Co-Lead Derivative Counsel)

*Michael Rocco v. Nam Tai Electronics, Inc. et al.*, United States District Court for the Southern District of New York, No. 03-CV-1148 (Lead Counsel)

*In re National Golf Properties, Inc. Securities Litigation*, United States District Court for the Central District of California, Western Division, No. 02-1383-GHK(RZx; $4.175 million settlement)

*In re NewPower Holdings Securities Litigation*, United States District Court for the Southern District of New York, Civil Action No. 01civ1550 (CLB) (Co-Lead Counsel; $41 million settlement)

*In re Oneok Derivative Litigation*, District Court of Tulsa County, Oklahoma, No. CJ-2000-00593 (Co-Lead Derivative Counsel)

*In re Orbital Sciences Corporation Securities Litigation*, United States District Court for the Eastern District of Virginia, Alexandria Division, No. 99-197-A (Co-Lead Counsel for Section 11 Claims; $23.5 million settlement)

*In re Parametric Technology Corp. Securities Litigation*, United States District Court for the District of Massachusetts, No. 03 CV 10290 (Co-Lead Counsel)

*In re Pcom, Inc. Securities Litigation*, Superior Court of California, County of Santa Clara, No. CV-776853 (Co-Lead Counsel; $16 million settlement)

*Jason Adelman, et al., v. PEC Solutions, Inc., et al.*, United States District Court for the Eastern District of Virginia, Alexandria Division, Civil Action No. 03-331-A (Co-Lead Counsel)

*In re Phycor Shareholder Litigation*, United States District Court for the Middle District Tennessee,  No. 3:990807 (Co-Lead Counsel; $11.2 million settlement)

*In re Pinnacle Systems Securities Litigation*, United States District Court for the Northern District of California, No. C-00-2596-MM (Co-Lead Counsel)

*Bill Koplovitz v. Plains Resources, Inc., et al.*, United States District Court for the Southern District of Texas, Houston Division, No. H-99-4212 (Lead Counsel; $5.4 million settlement)



    *Citiline Holdings, Inc. v. Printcafe Software, Inc. et al.*, United States District Court for the Western District of Pennsylvania, Civil Action No. 03-0959 (Co-Lead Counsel)

    *John Neiger, et al. v. Doctor Crants, et al. Prison Realty Securities Litigation*, United States District Court for the Middle District of Tennessee, Nashville Division, No. 3-99-1205 (Lead Counsel; $11.5 million settlement, cash and stock)

    *In re Bernstein v. Prison Realty Trust, Inc., et al.*, Chancery Court for the State of Tennessee, 20th Judicial District, Davidson County, No. 99-3794-III (Lead Counsel)

    *Samuel Brand v. Colleen Conway Welch, et al.* (Quorum Health Group), Circuit Court for Davidson County, Tennessee, No. 00C-3066 (Co-Lead Counsel)

    *Richard Slatten v. Rayovac Corporation, et al.*, United States District Court for the Western District of Wisconsin, Case No. 02 C 0325 C (Co-Lead Counsel; $4 million settlement)

    *Yvon DuPaul v. H. Edwin Trusheim, et al.* (Rehabcare Group), Circuit Court of the county of St. Louis, Missouri, No. 02 CC 3039 (Lead Derivative Counsel)

    *Edward J. Vranizan v. William E. Morgenstern, et al.* (Rent-Way Derivative Litigation), United States District Court for the Western District of Pennsylvania, C.A. No. 01-46, Erie (Lead Derivative Counsel)

    *Paul L. Ruble, et al. v. Rural Metro Corp., et al.*, United States District Court for the District of Arizona,  No. CIV-99-822-PHX-RGS (Co-Lead Counsel; $15 million settlement)

    *Lone Star Ladies Investment Club v. Schlotzskys, Inc.*, United States District Court for the Western District of Texas,  No. A-98-CA-550-JN (Co-Lead Counsel; $2 million settlement)

    *In re Service Corporation International*, United States District Court for the Southern District of Texas, Houston Division, No. H-99-280 (Executive Committee)

    *Trinity Holdings Corp. v. Sirrom Capital Corp., et al.*, United States District Court for the Middle District of Tennessee, No. 3-98-0643 (Executive Committee; $15 million settlement)

    *William Straub v. The Solomon-Page Group Ltd.*, Delaware Chancery Court, New Castle County, C.A. No. 17977 NC (Co-Lead Counsel)



*Lloyd Bahr, et al. v. Springs Industries, Inc., et al.*, State of South Carolina in the Court of Common Pleas, County of York, No. 2001-CP-46–374 (Co-Lead Counsel)

*In re Stone & Webster Inc. Securities Litigation*, United States District Court for the District of Massachusetts, No. 00-CV-10874-RCL (Executive Committee)

*In re Sunburst Hospitality Corporation Shareholders Litigation*, Delaware Chancery Court, New Castle County, C.A. No. 18343 NC (Co-Lead Counsel)

*Frank Rogers v. Sunrise Medical, Inc., et al.*, Superior Court of California, County of San Diego, Case No. GIC 756421 (Co-Lead Counsel)

*In re Sunstar Healthcare Securities Litigation*, United States District Court for the Middle District of Florida, Orlando Division, No. 6:00-CV-172-ORL-28C (Executive Committee)

*In re Supervalu, Inc. Securities Litigation,* United States District Court for the District of Minnesota, No. 02-CV-1738 (JEL/JGL) (Co-Lead Counsel; $4 million settlement)

*George Lehocky v. Tidel Technologies, Inc. et al.*, United States District Court for the Southern District of Texas, Houston Division, No. H-01-3741 (Executive Committee)

*David Montalvo v. Tripos, Inc. et al.*, United States District Court for the Eastern District of Missouri, Eastern Division, No. 4:03CV995SNL (Co-Lead)

*Richard R. Reina v. Tropical Sportswear International Corporation, et al.*, United States District Court for the Middle District of Florida, Tampa Division, No. 8:03-CV-1958-T23TGW (Co-Lead Counsel)

*In re U.S. Franchise Systems, Inc. Securities Litigation*, United States District Court for the Northern District of Georgia, Atlanta Division, No. 1:00-CV-1244-RLV (Co-Lead Counsel)

*In re U.S. Liquids Securities Litigation*, United States District Court for the Southern District of Texas, Houston Division, No. H-99-2785 (Co-Lead Counsel)

*In re United Television, Inc. Shareholders Litigation*, Delaware Chancery Court, New Castle County, C.A. No. 18218 NC (Co-Lead Counsel)



*Irene Abrams v. VanKampen Funds, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, No. 01 C 7538 (Co-Lead Counsel; $30 million settlement)

*David T. O'Neal Trust v. Vanstar Corp. et al.*, Superior Court of the State of California, County of Alameda, No. V-014193-6 (Co-Lead Counsel; $5 million settlement)

*John F. Ritter v. Joseph H. Kiser* (Vari-L), District Court of Denver, Colorado, No. 00-CV-6001 (Lead Derivative Counsel)

*In re Vertex Pharmaceuticals, Inc. Securities Litigation*, United States District Court for the District of Massachusetts, No. 03-11852-PBS (Co-Lead Counsel)

*In re Vision America Securities Litigation*, United States District Court for the Middle District of Tennessee, Nashville Division, No. 3-00-0279 (Co-Lead Counsel; $5.9 million settlement)

*Lawrence Feldman v. Walden Residential Properties, Inc., et al.*, County Court at Law #1, Dallas County, Texas, No. CC-99-11645-A (Lead Counsel for holders of common stock)

*Dorothy Coven v. World Fuel Services Corporation*, United States District Court for the Southern District of Florida, Miami Division, No. 00-0541-CIV-MORENO (Co-Lead Counsel)

*In re Fleming Corporation Securities Litigation,* United States District Court for the Eastern District of Texas, Texarkana Division, No. 5-02-CV-178 (Co-Lead Counsel for 33 Act Claims; $93.75 million settlement)

*David Slone, et.al. v. Fifth Third*, United States District Court for the Southern District of Ohio, No. 03-CV-00211 ($15 million settlement)