PETER BINKOW #173848
MICHAEL GOLDBERG #188669
GLANCY BINKOW & GOLDBERG LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email:info@glancylaw.com

SUSAN G. KUPFER (#141724)
GLANCY BINKOW & GOLDBERG LLP
One Embarcadero Center, Suite 760
San Francisco, California 94111
Telephone:    (415) 972-8160
Facsimile:    (415) 972-8166
Email: skupfer@kmllp.com

*Liaison Attorneys for Proposed Lead Plaintiff*

IRA M. PRESS
PETER S. LINDEN
SARAH G. LOPEZ
KIRBY MCINERNEY LLP
830 Third Avenue, 10th Floor
New York, New York 10022
Telephone:    (212) 317-2300
Facsimile:    (212) 751-2540
Email: ipress@kmllp.com
*Attorneys for Proposed Lead Plaintiff*

---

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re SiRF TECHNOLOGY HOLDINGS, INC. SECURITIES LITIGATION | Master File No. C 08 00856 |
| _____ This Document Related To: All Actions | **MEMORANDUM OF POINTS AND AUTHORITIES OF THE POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT IN OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL** Date: May 16, 2008 Time: 9:00 a.m. Courtroom 7, 19th Floor Hon. Maxine M. Chesney |

1

2

## TABLE OF CONTENTS

3

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     THE COMPETING LEAD PLAINTIFF MOVANTS  . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        A.      Detroit PFRS Clearly Merits the PSLRA's "Most Adequate"
                Plaintiff Presumption . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        B.      The Lead Plaintiff Applications of the Weiss/Iron Workers Aggregation and
                Meruelo Suffer from Significant Infirmities . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

                1.      The Weiss/Iron Workers Aggregation . . . . . . . . . . . . . . . . . . . . . . . . . . 4

                        a.      The Weiss/Iron Workers Aggregation is an Improper
                                Lawyer-Created Entity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

                        b.      Iron Workers Submitted Inaccurate Trade Data  . . . . . . . . . . . . 6

                2.      Meruelo's Application Must be Denied . . . . . . . . . . . . . . . . . . . . . . . . . . 7

                        a.      Meruelo is Subject to Unique Defenses  . . . . . . . . . . . . . . . . . . . 7

                        b.      Meruelo Appears to Have Overstated His Claimed Loss  . . . . . . 9

IV.     CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES OF THE POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT
IN OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

i

1

2
# TABLE OF AUTHORITIES

3
## *Cases*

4
*Aronson v. McKesson HBOC, Inc.,*
    79 F.Supp.2d 1146 (N.D.Cal. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
5

6
*Bowman v. Legato Sys., Inc.,*
    195 F.R.D. 655 (N.D.Cal. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

7
*In re Cavanaugh*
    306 F.3d 726 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
8

9
*In re COMMTOUCH SOFTWARE LTD. Sec. Litig.,*
    No. C 01-00719, 2001 WL 34131835 (N.D.Cal. June 27, 2001) . . . . . . . . . . . . . . . . . . 1

10
*In re Critical Path, Inc. Securities Litigation,*
    156 F.Supp.2d 1102 (N.D.Cal. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
11

12
*In re Donnkenny Inc. Sec. Litig.,*
    171 F.R.D. 156 (S.D.N.Y.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

13
*In re Enron Corp. Sec. Litig.,*
    206 F.R.D. 427 (S.D. Tex. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
14

15
*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
    903 F.2d 176 (2d. Cir. 1990), *cert. denied,* 498 U.S. 1025, 111 S.Ct. 675, 112 L.Ed.2d 667
(1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
16

17
*In re Gemstar-TV Guide Intern., Inc. Sec. Litig.,*
    209 F.R.D. 447 (C.D.Cal. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

18
*Kline v. Wolf,*
    702 F.2d 400 (2d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
19

20
*In re MicroStrategy Inc. Sec. Litig.,*
    110 F.Supp.2d 427 (E.D.Va.. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

21
*Mohanty v. BigBand Networks, Inc.,*
    No. C 07-5101 2008 WL 426250 (N.D.Cal. Feb. 14, 2008) . . . . . . . . . . . . . . . . . . . . . 7
22

23
*Naiditch v. Applied Micro Circuits Corp.,*
    No. 01-CV-0649, 2001 WL 1659115 (S.D.Cal. Nov. 5, 2001) . . . . . . . . . . . . . . . . . . . . 1

24
*In re Network Assocs., Inc. Sec. Litig.,*
    76 F.Supp.2d 1017 (N.D.Cal. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9
25

26
*In re Pfizer Inc. Sec. Litig.,*
    233 F.R.D. 334 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

27

28

MEMORANDUM OF POINTS AND AUTHORITIES OF THE POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT
IN OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

ii

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Labranche & Co.*,
    229 F.R.D. 395 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Razorfish, Inc. Sec. Litig.*,
    143 F.Supp.2d 304 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Safeguard Scientifics*,
    216 F.R.D. 577 (E.D.Pa. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Shiring v. Tier Technologies, Inc.*,
    244 F.R.D. 307 (E.D.Va. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Swack v. Credit Suisse First Boston*,
    230 F.R.D. 250 (D.Mass., 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Tarragon Corp. Sec. Litig.*,
    No. 07-7972, 2007 WL 4302732 (S.D.N.Y. Dec. 6, 2007) . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Waste Mgmt., Inc. Sec. Litig.*,
    128 F.Supp.2d 401 (S.D. Tex. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Wenderhold v. Cylink Corp.*,
    188 F.R.D. 577 (N.D.Cal. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Wireless Facilities, Inc. Securities Litigation II*,
    No. 07-482, 2007 WL 2300861 (S.D.Cal., August 8, 2007) . . . . . . . . . . . . . . . . . . . . . . 5

*Z-Seven Fund, Inc. v. Motorcar Parts & Accessories*,
    231 F.3d 1215 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**_Statutes_**

15 U.S.C. 78u-4(a)(3)(B)(iii)(II)(bb) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

15 U.S.C. §78y-4(a)3(b)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Private Securities Litigation Reform Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3-4, 7

**_Other Authorities_**

7A Charles A. Wright, Arthur R. Miller & Mary Kay Kane,
    Federal Practice and Procedure § 1766 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

MEMORANDUM OF POINTS AND AUTHORITIES OF THE POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT
IN OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

iii

## I.    INTRODUCTION

The Police & Fire Retirement System of the City of Detroit ("Detroit PFRS") submits this memorandum in opposition to the various motions for lead plaintiff appointment.

Detroit PFRS is entitled to lead plaintiff appointment because it clearly has the largest financial interest among all timely movants in the relief sought by the class.  Detroit PFRS therefore merits the PSLRA's "most adequate" lead plaintiff presumption.  Many of the competing movants improperly seek to boost their claimed financial interests by aggregating with otherwise - unrelated investors.  Even if the Court were to overlook the improper aggregations, the movant group with the next largest class period loss after Detroit PFRS has a financial interest that is nearly 40% less than that of Detroit PFRS.  Furthermore, when improperly-aggregated movants are uncoupled, Detroit PFRS' financial loss is more than double that of the next largest movant.

Detroit PFRS is also an institutional investor - the investor type preferred for lead plaintiff appointment under the PSLRA.  "In the PSLRA, Congress expressed a preference that an institutional investor with large losses would serve as lead plaintiff." *In re Commtouch Software Ltd. Sec. Litig.*, No. C 01-00719, 2001 WL 34131835 at *3 (N.D.Cal. June 27, 2001); *Naiditch v. Applied Micro Circuits Corp.*, No. 01-CV-0649, 2001 WL 1659115 at *5 (S.D.Cal. Nov. 5, 2001) (recognizing "the PSLRA's preference for institutional investors").  The movants claiming the next largest losses (Messrs. Weiss and Meruelo) are not institutional investors.

In addition to lacking the largest financial interest in this class action, movants Meruelo and the Weiss/Iron Workers aggregation suffer from additional infirmities.  The Weiss/Iron Workers aggregation is not a proper aggregation.  Instead, it is a lawyer-driven amalgamation that combines an individual's loss of $712,123.21 with an institutional investor's loss that is less than $295,000 (less than one-fifth of Detroit PFRS' loss).  In addition, inaccuracies in the Iron Workers' trade data renders uncertain the amount of its true financial stake in the litigation.

Mr. Meruelo appears to have materially inflated his claimed loss by omitting proceeds from a sale of artificially inflated SiRF stock.  When all of Meruelo's relevant trades are considered and counted, Meruelo's claimed loss is largely, if not entirely, eliminated.  Moreover, Meruelo's adequacy

MEMORANDUM OF POINTS AND AUTHORITIES OF THE POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT IN OPPOSITION TO COMPETING MOTIONS FOR  APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

1

to serve in a representative fiduciary capacity may be subject to attack. A little more than two years ago, Meruelo was named as a defendant in several lawsuits brought by shareholders of a public company of which he was a director. These lawsuits charged that Meruelo breached his fiduciary duty to shareholders, a charge that threatens his ability to serve in a fiduciary capacity here.

## II.    THE COMPETING LEAD PLAINTIFF MOVANTS

A total of nine motions for lead plaintiff appointment were filed by putative class members. Detroit PFRS clearly has the largest financial interest among the movants in the relief sought by the proposed class.

1.    Detroit PFRS suffered a class period trading loss totaling $1,615,946.76. *See* April 8, 2008 Declaration of Ira M. Press ("Press Decl.") Ex. B and C (Docket Entry # 48). During the class period, Detroit PFRS purchased 94,060 SiRF Technology Holdings, Inc. ("SiRF") shares and sold just 900 shares. *Id.* Detroit PFRS' net class period expenditures on SiRF shares totaled $2,210,866.86. *Id.*

2.    Two apparently-unrelated investors, Kenneth L. Weiss and Iron Workers Local No. 25 Pension Fund ("Iron Workers")  (collectively, "the Weiss/Iron Workers aggregation") claim to have suffered a combined loss totaling $1,006,775.36. *See* April 8, 2008 Declaration of Darren J. Robins ("Robbins Decl."), Ex. A and B (Docket Entry # 52). Mr. Weiss individually claims damages totaling $712,123.21. *Id.* The Iron Workers individually claim $294,652.15 in damages. *Id.* However, as discussed below, the  accuracy of Iron Workers' stated damage figure is questionable.

3.    Alex Meruelo claims class period damages totaling  $734,000. *See* April 8, 2008, Declaration of Vahn Alexander ("Alexander Decl."), Ex. A (Docket Entry # 21). For reasons discussed below, Mr. Meruelo's claimed damages appear to have been inflated materially.

4.    The City of Omaha, Nebraska Civilian Employees' Retirement System and the City of Omaha Police and Fire Retirement System (collectively "the Omaha Funds") claims class period damages totaling $717,684.73 in the aggregate. *See* April 8, 2008 Declaration of Adrian J. Sawyer ("Sawyer Decl."), Ex. 2-4 (Docket Entry # 36). The Civilian Employees' Retirement System claims class period losses totaling $164,600.59, and the Police and Fire Retirement System claim class period

MEMORANDUM OF POINTS AND AUTHORITIES OF  THE POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT
IN OPPOSITION TO COMPETING MOTIONS FOR  APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

2

1  losses totaling $553,084.14. *Id.*

2      5.      Matthew Delaney claims class period damages totaling $141,844.74. *See* April 8, 2008

3  Declaration of Michael F. Ram ("Ram Decl."), Ex. B (Docket Entry # 24).

4      6.      Christopher Collins claims class period damages totaling $87,685.23. *See* April 8, 2008

5  Declaration of Reed R. Kathrein ("Kathrein Decl."), Ex. A (Docket Entry # 43).

6      7.      Alan Nussbaum claims class period damages totaling $76,187.50. *See* April 8, 2008

7  Declaration of Patrice L. Bishop ("Bishop Decl."), Ex. 2 and 3 (Docket Entry # 14).

8      8.      James Van Atten claims class period damages totaling $34,864.62. *See* April 8, 2008

9  Declaration of Alan R. Plutzik ("Plutzik Decl."), Ex. A and C (Docket Entry # 30).

10     9.      Gary Mitchell Schorr Rev. Trust U/A DTD 3-20-98 claims class period damages

11 totaling $8710.00. *See* April 8, 2008 Declaration of Leigh A Parker ("Parker Decl."), Ex. 2 and 3

12 (Docket Entry # 35).

13

14 **III.    ARGUMENT**

15     **A.      Detroit PFRS Clearly Merits the PSLRA's "Most Adequate" Plaintiff**

16             **Presumption**

17     In their respective moving papers, all of the competing movants claimed entitlement to the

18 PSLRA's "most adequate" lead plaintiff presumption, based on each movant's assertion that it or he

19 suffered the largest class period loss.[1]  Obviously, all the movants can't be right. Examination of the

20 competing movants' submissions confirms that Detroit PFRS has the largest loss, by far.  As such,

21

22

23     [1] See Weiss' and Iron Workers' Memorandum of Points and Authorities, April 8, 2008 , p.
24 4 (Docket Entry # 51); Meruelo's Memorandum of Points and Authorities, April 8, 2008, p.5
   (Docket Entry # 20); Omaha Funds' Memorandum of Points and Authorities, April 8, 2008, p.4
25 (Docket Entry # 34); Delaney's Memorandum of Points and Authorities, April 8, 2008, p.4 (Docket
   Entry # 22); Collins' Memorandum of Points and Authorities, April 8, 2008, p.4 (Docket Entry #
26 42); Nussbaum's Memorandum of Points and Authorities, April 8, 2008, p.5 (Docket Entry # 13);
   Van Atten's Memorandum of Points and Authorities, April 8, 2008, p.5 (Docket Entry # 29; Gary
27 Mitchell Schorr Rev. Trust's Memorandum of Points and Authorities, April 8, 2008, p.6 (Docket
   Entry # 33).

28

MEMORANDUM OF POINTS AND AUTHORITIES OF  THE POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT
IN OPPOSITION TO COMPETING MOTIONS FOR  APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

3

1  Detroit PFRS is entitled to the PSLRA's "most adequate" plaintiff presumption. *See* 15 U.S.C. §78u-

2  4(a)(3)(b)(ii).

3      The Ninth Circuit has affirmed the "straightforward application of the statutory scheme" set

4  forth in the PSLRA when appointing a lead plaintiff. *In re Cavanaugh* 306 F.3d 726, 732 (9th Cir.

5  2002).  The Ninth Circuit confirmed that the PSLRA:

6

7          provides no occasion for comparing plaintiffs with each other on any basis
           other than their financial stake in the case. Once that comparison is made and
8          the court identifies the plaintiff with the largest stake in the litigation, further
           inquiry must focus on that plaintiff alone and be limited to determining
9          whether he satisfies the other statutory requirements. That the district court
           believes another plaintiff may be "more typical" or "more adequate" is of no
10         consequence. So long as the plaintiff with the largest losses satisfies the
           typicality and adequacy requirements, he is entitled to lead plaintiff status,
11         even if the district court is convinced that some other plaintiff would do a
           better job.
12

13  *Id.*  Accordingly, the Court should only consider the adequacy of the lead plaintiff movant with the

14  largest class period loss.  Detroit PFRS clearly has the largest financial stake in this action among

15  the competing movants.  Thus, Detroit PFRS is the presumed lead plaintiff.

16

17      **B.    The Lead Plaintiff Applications of the Weiss/Iron Workers Aggregation and**

18          **Meruelo Suffer from Significant Infirmities**

19      In addition to lacking the largest financial interest in this action, the lead plaintiff

20  applications of the Weiss/Iron Workers aggregation and Meruelo suffer from significant infirmities.

21  As such, the Court must in any event deny these movants' applications for lead plaintiff.

22          **1.    The Weiss/Iron Workers Aggregation**

23              a.    The Weiss/Iron Workers Aggregation is an Improper Lawyer-Created

24                  Entity

25      Courts in this district and elsewhere have held that the PSLRA's reference to a "group" of

26  lead plaintiffs is limited to investors who had a relationship concerning the investment in question

27  that predates the lawsuit.  Thus, many courts have rejected lead plaintiff "groups"comprised of

28

MEMORANDUM OF POINTS AND AUTHORITIES OF THE POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT
IN OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

4

otherwise-unrelated investors who are cobbled together by counsel for the sole purpose of combining their loss numbers. That institutions may be involved is of no moment.[2] "The Court considers the existence of a preexisting relationship to be paramount in determining whether to accept a group." *In re Critical Path, Inc. Securities Litigation*, 156 F.Supp.2d 1102, 1111 (N.D.Cal. 2001). "A group is not a proper group unless its members have a relationship that predates the litigation." *Id.*; *In re Wireless Facilities, Inc. Securities Litigation II*, No. 07-CV-482, 2007 WL 2300861, at *2 (S.D.Cal., August 8, 2007) (refusing to treat as a group three individual class members with no real preexisting relationship). "Artificially created" entities are routinely spurned, *In re Enron Corp. Sec. Litig.,* 206 F.R.D. 427, 457 (S.D. Tex. 2002). "[C]ourts have uniformly refused to appoint as lead plaintiff groups of unrelated individuals, brought together for the sole purpose of aggregating their claims in an effort to become the presumptive lead plaintiff." *In re Gemstar-TV Guide Intern., Inc. Sec. Litig.*, 209 F.R.D. 447, 451-52 (C.D.Cal. 2002) *citing In re Razorfish, Inc. Sec. Litig.,* 143 F.Supp.2d 304, 308-09 (S.D.N.Y. 2001) (court refused to appoint "artifice" of four unrelated institutional and individual investors "cobbled together by cooperating counsel for the obvious purpose of creating a large enough grouping of investors to qualify as 'lead plaintiff' "); *Bowman v. Legato Sys., Inc.,* 195 F.R.D. 655, 657 (N.D.Cal. 2000) (rejecting motion by six unrelated institutional and individual investors to be appointed lead counsel); *Aronson v. McKesson HBOC, Inc.,* 79 F.Supp.2d 1146, 1154 (N.D.Cal. 1999) ("lead plaintiff must be an individual person or entity, or at most, a close-knit 'group of persons' "); *In re Network Assocs., Inc. Sec. Litig.,* 76 F.Supp.2d 1017, 1019-31 (N.D.Cal. 1999) (aggregated unrelated investors could not serve as group entitled to lead plaintiff status); *Wenderhold v. Cylink Corp.,* 188 F.R.D. 577, 583-87

---

[2]    *In re Tarragon Corp. Sec. Litig*., No. 07-7972, 2007 WL 4302732, at *1-2 (S.D.N.Y. Dec. 6, 2007) (quoting *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157-58 (S.D.N.Y. 1997) (rejecting the aggregation of "unrelated institutional and individual investors"); *In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 337 (S.D.N.Y. 2005) (declining to consider groups of institutional investors); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Labranche & Co.*, 229 F.R.D. 395, 411 (S.D.N.Y. 2004) (CalPERS could not aggregate its shares with other class members); *In re Waste Mgmt., Inc. Sec. Litig.*, 128 F.Supp.2d 401, 432 (S.D. Tex. 2000) (court rejects two groups of institutional plaintiffs because each did not act "as a single investor").

MEMORANDUM OF POINTS AND AUTHORITIES OF THE POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT IN OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

5

1    (N.D.Cal. 1999) (refusing to allow the unrelated proposed lead plaintiffs to aggregate their claims

2    in order to obtain the presumption of most adequate plaintiff); *In re Donnkenny,* 171 F.R.D. at 157-

3    58 (court refused to appoint six unrelated institutional and individuals investors as lead plaintiffs).

4          The Weiss/Iron Workers Aggregation appears to be an artificially-created entity.  The

5    submission by this group includes no evidence that Weiss or the Iron Workers had any relationship

6    predating this lawsuit.  Moreover, the connection between Iron Workers and Weiss is otherwise not

7    readily apparent. Instead, it appears that their relationship formed after the lawsuit was commenced

8    and this group combined for the *sole* purpose of aggregating their members' claimed financial

9    interest.  When disaggregated, this "movant" is actually two separate entities.  The first entity is an

10   individual (non-institutional) investor  (Mr. Weiss) who claims a loss of $712,123.21.  This loss is

11   less than one half of the loss incurred by Detroit PFRS. The second entity is an institutional investor

12   (Iron Workers), which claims a loss of only $294,652.15.  This loss is less than one-fifth of the loss

13   incurred by Detroit PFRS. Moreover, as discussed immediately below, the Iron Workers' claimed

14   loss is clearly incorrect because it is predicated on inaccurate trade information.

15                  b.    Iron Workers Submitted Inaccurate Trade Data

16          The submission of false information in a sworn certification has been held to constitute

17   sufficient basis to disqualify a proposed lead plaintiff's application. *See e.g. Shiring v. Tier*

18   *Technologies, Inc.*, 244 F.R.D. 307, 317 (E.D.Va. 2007) (finding lead plaintiff applicant inadequate

19   when he "filed sworn certifications in this action falsely stating that he had purchased 3,000 Tier

20   shares on June 15, 2005 at a stock price of $8.50 per share when, in fact, he had purchased his Tier

21   stock on May 25, 2005, at a price of $8.46 per share."); *In re Safeguard Scientifics*,  216 F.R.D. 577,

22   582 -83 (E.D.Pa. 2003) (Lead plaintiff applicant not appointed when applicant omitted trades in his

23   sworn statement in a Certification Pursuant to the Federal Securities Laws); *In re MicroStrategy Inc.*

24   *Sec. Litig.*, 110 F.Supp.2d 427, 436 (E.D.Va. 2000) (Although investor's loss was apparently very

25   large, the evidence it submitted did not permit a confident conclusion that its loss was as large as

26   it averred").  Moreover, even if an applicant inadvertently includes incorrect information in a lead

27   plaintiff application, such an oversight is sufficient to disqualify him from consideration as lead

28

MEMORANDUM OF POINTS AND AUTHORITIES OF  THE POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT
IN OPPOSITION TO COMPETING MOTIONS FOR  APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

6

1    plaintiff. *See Shiring*, 244 F.R.D. at 317 ("Plaintiff's inadvertence or his indifference to the

2    PSLRA's certification requirements demonstrates a lack of diligence and candor that, in conjunction

3    with his other deficiencies, counsel against a finding of adequacy."). "[T]o be appointed class

4    representative, a plaintiff must demonstrate that he exhibits 'honesty, conscientiousness, and other

5    affirmative personal qualities.'" *Id. quoting* 7A Charles A. Wright, Arthur R. Miller & Mary Kay

6    Kane, Federal Practice and Procedure § 1766 (2007).

7           The Iron Workers' trade data is clearly inaccurate.  The certification, sworn to under

8    penalty of perjury, and loss chart, claim that 17,740 shares (nearly 85% of the shares bought by the

9    Iron Workers) were sold on February 4 and 5, 2008 at prices that are below the low or above the

10   high that SiRF traded that day.[3]  We do not know what the Iron Workers' true loss was.  What we

11   do know is that the data it filed is materially inaccurate.  In light of the foregoing, there is little basis

12   to consider the Weiss/Iron Workers aggregation's lead plaintiff application – given that a movant's

13   claimed financial interest is central to any lead plaintiff application. As such, their application should

14   be denied.

                            **2.    Meruelo's Application Must be Denied**

                            a.    Meruelo is Subject to Unique Defenses

17          Even if Meruelo had the largest financial interest in this action, he could not be appointed

18   lead plaintiff, as he  "is subject to unique defenses that render [him] incapable of adequately

19   representing the class." 15 U.S.C. 78u-4(a)(3)(B)(iii)(II)(bb). *See Mohanty v. BigBand Networks,

20   Inc.*, No. C 07-5101, 2008 WL 426250 at * 7 (N.D.Cal., Feb. 14, 2008).  The presence of even an

21   arguable defense against the named plaintiff is enough to destroy typicality and call into question

22   the adequacy of representation.  *See Kline v. Wolf*, 702 F.2d 400, 403 (2d Cir. 1983) ( upholding

23   denial of class certification based on unique defenses where class representative is merely

---

[3]The Iron Workers claim to have sold shares on February 4, 2008 for $11.29 per share. *See* Robbins Decl., Ex. A and B.  However, SiRF shares did not trade below $16.10 that day.  *See* April 24, 2008 Declaration of Sarah G. Lopez ("Lopez Decl."), Ex A. Similarly, on February 5, 2008 the Iron Workers claim to have sold their SiRF shares for $11.81 per share. Robbins Decl., Ex A and B.  However, SiRF shares did not trade above $8.50 that day. Lopez Decl. Ex., A.

1  "vulnerable to attack," noting district court need not resolve whether defense would prevail); *see*

2  *also Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 260-61 (D.Mass., 2005) ("class

3  certification is inappropriate where a putative class representative is subject to unique defenses

4  *which threaten to become the focus of the litigation...*") *citing Gary Plastic Packaging Corp. v.*

5  *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d. Cir. 1990) (emphasis supplied)

6  (internal citations omitted), *cert. denied*, 498 U.S. 1025, 111 S.Ct. 675, 112 L.Ed.2d 667 (1991).

7      In 2006, Meruelo was sued by shareholders of William Lyon Homes, Inc., a public company

8  of which Meruelo was a director. (Lopez Decl., Ex. B-D). These lawsuits, which were filed in

9  Delaware and California state courts, charged that Meruelo breached his fiduciary duty to the public

10  shareholders by accepting a tender offer for outstanding shares of William Lyon Homes, Inc.'s stock

11  for an unfair and inadequate price. (Lopez Decl., Ex. B and D). While it appears the parties have

12  agreed to settle the claims in these lawsuits, the final settlement has not been approved yet.[4]

13  Moreover, the settlement was only reached after the agreed-to tender offer price was raised $16 a

14  share above the original tender offer price of $93. (Lopez Decl., Ex. C, p. 5-7).  This subsequent

15  increase in the tender offer price of more than 17% strongly suggests that Meruelo did in fact

16  originally approve a tender offer at an unfair and inadequate price.  Accordingly, the shareholders'

17  charge of breach of fiduciary duty and the subsequent increase in the tender offer price for

18  outstanding shares of William Lyon Homes, Inc. raises serious concerns about Meruelo's ability to

19  serve as fiduciary lead plaintiff on behalf of SiRF investors in this case.

20      Courts have been hesitant to appoint lead plaintiffs accused of improper conduct.  For

21  example, the Central District of California District Court's decision to reject the lead plaintiff

22  application of a movant who had been sued for breach of fiduciary duty in an unrelated shareholder

23  action was left undisturbed on an interlocutory appeal. *See e.g. Z-Seven Fund, Inc. v. Motorcar Parts*

24  *& Accessories*, 231 F.3d 1215, 1216-17 (9th Cir. 2000) (detailing the district court's rejection of

25

26

27      [4]The Supreme Court of the State of Delaware rejected and remanded the Chancery's Court
   initial approval of the settlement based on an issue related to attorneys fees. *See* Lopez Decl., Ex.
28  C,  p.12.

MEMORANDUM OF POINTS AND AUTHORITIES OF THE POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT
IN OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

8

1  movant's application even when the breach of fiduciary duty claim had been voluntarily dismissed).

2  Similarly, in *In re Network Assoc., Inc. Sec. Lit.*, 76 F.Supp.2d at 1029, a fraud investigation of a

3  proposed lead plaintiff's subsidiary was a "major negative" to entity's appointment as lead plaintiff.

4  The proposed lead plaintiff was a fund that owned two banks that were under investigation for

5  criminal fraud, and the CEO of one bank had been arrested for tax evasion, fraud, money laundering

6  conspiracy and consorting with criminal elements. *Id*. Based on these facts, "the Court [was]

7  unwilling to install an enterprise under such a cloud in a position of trust and confidence." *Id*.

8  The breach of fiduciary duty allegations call into question Meruelo's ability to serve as a

9  fiduciary for the class in this action. The Court should reject Meruelo's lead plaintiff application

10  because Meruelo's status as a defendant in the aforementioned shareholders action subjects him to

11  unique defenses that could imperil class certification.

12  b.    Meruelo Appears to Have Overstated His Claimed Loss

13  Alternatively, Meruelo's lead plaintiff application should be denied because it appears that

14  Meruelo has grossly overstated his claimed class period loss. Meruelo did not supply a loss chart

15  in his supporting papers, which is, itself troubling, as it is impossible to determine exactly how

16  Meruelo arrived at his claimed loss figure. It appears that Meruelo's sworn certification omits sales

17  of SiRF shares at artificially-inflated class period prices. When the errors are corrected, Meruelo's

18  loss largely, if not entirely, disappears.

19  Meruelo's largest purported SiRF investment was a purchase of 44,800 shares at $22.50 per

20  shares on February 6, 2008. *See* Alexander Decl., Ex. A.    Presumably, Meruelo's rationale for

21  including this post-class period purchase in his calculation of class period losses is that, pursuant

22  to the put option transaction during the class period, the price of this purchase was set at the

23  artificially-inflated class period price (which was more than triple the market price of February 6,

24  2008, the day the shares were put to him). Under this rationale, Meruelo should also count any

25  shares he sold post-class period at $25.00 per share (i.e., 44,800 shares for $1,120,000), pursuant

26

27

28

1  to a put option that he purchased during the class period on January 30, 2008.[5]  Inclusion of this

2  trade and the $1.12 million in proceeds therefrom would materially reduce, or even eliminate,

3  Meruelo's claimed loss.[6]

4  **IV.    CONCLUSION**

5         For the foregoing reasons, Detroit PFRS respectfully asks the Court to deny the various

6  competing motions for lead plaintiff appointment, and enter an Order (a) appointing the Police &

7  Fire Retirement System of the City of Detroit as Lead Plaintiff, and (b) approving its choice of Kirby

8  McInerney LLP as Lead Counsel and Glancy Binkow & Goldberg LLP as Liaison Counsel for the

9  Class.

10        Dated:  April 25, 2008

11

12                                          Respectfully Submitted,

13                                          GLANCY BINKOW & GOLDBERG LLP

14                                          By:        s/ Peter Binkow

15                                                 Peter Binkow #173848
                                                 Michael Goldberg #188669
16                                                 1801 Avenue of the Stars, Suite 311
                                                 Los Angeles, California  90067
17                                                 (310) 201-9150
                                                 Email:info@glancylaw.com
18
                                                 Susan G. Kupfer #141724
19                                                 One Embarcadero Center, Suite 760
                                                 San Francisco, California  94111
20                                                 Telephone:     (415) 972-8160
                                                 Email: Skupfer@glancylaw.com
21

22   _____

23        [5] On January 30, 2008, Meruelo bought 448 put options.  As SiRF's share price fell below
     $5.00 a share (*see* Lopez Decl., Ex. A), it is likely that Meruelo exercised the option for $25 (i.e. 3-4
     times the open market selling price)thereby yielding $1.12 million in proceeds.

24

25        [6]It does not appear possible that Meruelo sold the put option before he had a chance to
     exercise it.  While Meruelo's Certification lists a sale of 448 puts on January 31, 2008 (the day after
26   he purchased 448 put options), the January 31 sale could not have been a sale of the  put options
     purchased on January 30 because the January 30 purchase of put options has a different exercise date
27   and strike price than the January 31, 2008 sale of put options (March '08 $25 puts vs. Sept. '08
     $22.50 puts). *See* Alexander Decl.,  Ex. A.
28
     ────────────────────────────────────────────────────────────────────
MEMORANDUM OF POINTS AND AUTHORITIES OF  THE POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT
IN OPPOSITION TO COMPETING MOTIONS FOR  APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

10

*Proposed Liaison Counsel*

Ira M. Press
Peter S. Linden
Sarah G. Lopez
KIRBY McINERNEY & SQUIRE, LLP
830 Third Avenue, 10th Floor
New York, New York  10022
(212) 371-6600
Email: ipress@kmllp.com

*Proposed Lead Counsel*

ALLEN BROTHERS, PLLC
James P. Allen, Sr.
400 Monroe Street, Suite 220
Detroit, MI 48226
Tel: (313) 962-7777
Fax: (313) 962-0581

*Additional Counsel for Movant Detroit PFRS*