RANDALL K. PULLIAM (*Pro Hac Vice* Application Forthcoming)
JOSEPH HENRY (HANK) BATES (167688)
BART DALTON (187930)
CAULEY BOWMAN CARNEY & WILLIAMS, PLLC
11311 Arcade Drive, Suite 200
Little Rock, Arkansas 72212
Telephone: (501) 312-8500
Facsimile: (501)312-8505
rpulliam@cauleybowman.com

Proposed Lead Counsel

JAMES M. WAGSTAFFE (95535)
ADRIAN J. SAWYER (203712)
KERR & WAGSTAFFE LLP
100 Spear Street, Suite 1800
San Francisco, California 94105-1528
Telephone: (415) 371-8500
Facsimile: (415)371-0500
sawyer@kerrwagstaffe.com

Proposed Liaison Counsel

Attorneys for Plaintiffs
The City of Omaha Nebraska Civilian Employees'
Retirement System and the City of Omaha Police
and Fire Retirement System

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN re SiRF TECHNOLOGY HOLDINGS, INC., SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>   All Actions | Case No. C 08-0856 MMC<br><u>CLASS ACTION</u><br><br>**OMAHA FUNDS' RESPONSE TO MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF**<br><br>Date:         May 16, 2008<br>Time:         9 a.m.<br>Courtroom:   7, 19th Floor<br><br>Hon. Maxine M. Chesney |

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ........................................................................................ 1

II. ARGUMENT ..................................................................................................................... 3

    A. Detroit Police & Fire and the Iron Workers are Professional Plaintiffs under the PSLRA ................................................................................................. 3

    B. Alex Meruelo is Subject to Unique Defenses Making Him Inadequate to Serve as Lead Plaintiff ......................................................................................... 5

III. CONCLUSION .................................................................................................................. 7

i

The City of Omaha, Nebraska Civilian Employees' Retirement System and the City of Omaha Police and Fire Retirement System (the "Omaha Funds") submit this response to the various motions pending before this Court seeking the appointment of a Lead Plaintiff to direct this securities class action pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B). As detailed in the succeeding portions of this memorandum, and upon due consideration of the materials submitted by the separate individuals and entities wishing to serve as Lead Plaintiff in this lawsuit, the Omaha Funds respectfully submit that this Court should enter its order (1) appointing the Omaha Funds as Lead Plaintiff in these actions and any subsequently-filed related actions and (2) approving the Omaha Funds' selection of the law firms of Cauley Bowman Carney & Williams, LLP as Lead Counsel and Kerr & Wagstaffe LLP as Liaison Counsel for the proposed Class.

## I. PRELIMINARY STATEMENT

By now, this Court is well aware of the losses allegedly sustained by the different parties presently volunteering for the Lead Plaintiff position as a result of their purchases of securities of SiRF Technology Holdings, Inc. ("SiRF") from October 30, 2007 through February 4, 2008 (the "Class Period"). To recapitulate, the Omaha Funds suffered $717,684.73 in losses due to the fraudulent misstatements and omissions summarized in the underlying pleadings. This is no small sum, to be sure, but it is somewhat less than the amounts claimed to have been lost during the same time frame by (1) the Police & Fire Retirement System of the City of Detroit ("Detroit Police & Fire"), (2) the Iron Workers Local No. 25 Pension Fund ("Iron Workers") and Kenneth L. Weiss (collectively, the "Iron Workers Group"), and (3) Alex Meruelo. Of course, the PSLRA creates a presumption that the "most adequate plaintiff" to spearhead securities litigation is, among other things, the person or group of persons with "the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). Significantly, however, this is a *rebuttable* presumption, and it is defeated on proof that a seemingly "most adequate plaintiff" is unable to "fairly and adequately protect the interests of the class," *id.* § 78u-

4(a)(3)(B)(iii)(II)(aa), or is "subject to unique defenses that render such plaintiff incapable of adequately representing the class," *id.* § 78u-4(a)(3)(B)(iii)(II)(bb).

This memorandum amply demonstrates that this Court should deem the operative presumption rebutted with respect to the Lead Plaintiff applicants who claim greater losses than the Omaha Funds. Specifically, in stark contrast to the Omaha Funds – which have never before sought a leadership role in any securities litigation – both the Iron Workers and Detroit Police & Fire are currently serving as lead plaintiffs in numerous other actions under the Securities Exchange Act of 1934 (the "Exchange Act"). Unlike the Omaha Funds, who are capable of focusing their energy upon the recovery of losses attributable to the wrongdoing here, the Iron Workers and Detroit Police & Fire will unavoidably be distracted by occurrences in the other complex securities matters they are directing. Against this backdrop, it is questionable whether these other funds have the capacity to devote to this lawsuit the resources and energy it will demand. Of greater importance, though, is that both of these entities run afoul of the "professional plaintiff" prohibitions of the PSLRA, which caution against allowing a party to serve as a lead plaintiff in "more than 5 securities class actions . . . during any 3-year period." 15 U.S.C. § 78u-4(a)(3)(B)(vi).

In similar fashion, the remaining Lead Plaintiff aspirant who trumpets losses exceeding those suffered by the Omaha Funds, Alex Meruelo, has presented the Court with documents revealing him to be "subject to unique defenses" making him "incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb). Along these lines, Mr. Meruelo's transactions reveal that he acquired the majority of his shares as a result of being assigned shares after purchasing a stock option "put." Thus, as will be discussed in more detail herein, Mr. Meruelo sought to profit by a *decline* in the stock price of SiRF Technology, putting him on the other side of the transaction as compared to a typical SiRF Technology shareholder. In light of all this, it is apparent that Mr. Meruelo was anything but a typical securities trader, and he will therefore be "subject to unique defenses" which disqualify him from Lead Plaintiff consideration in this matter.

1  Consequently, because neither Detroit Police & Fire, the Iron Workers Group, nor Alex Meruelo pass muster under the PSLRA, the Omaha Funds emerge as the movant "most capable of adequately representing the interests of class members" in this litigation. That being so, this Court should enter its order (1) appointing the Omaha Funds as Lead Plaintiff in these actions and any subsequently-filed related actions and (2) approving the Omaha Fund's selection of the law firms of Cauley Bowman Carney & Williams, LLP as Lead Counsel and Kerr & Wagstaffe LLP as Liaison Counsel for the proposed Class.

## II.   ARGUMENT

### A.   DETROIT POLICE & FIRE AND THE IRON WORKERS ARE PROFESSIONAL PLAINTIFFS UNDER THE PSLRA

With the passage of the PSLRA, Congress placed express "[r]estrictions on professional plaintiffs." 15 U.S.C. § 78u-4(a)(3)(B)(vi). In particular, and "[e]xcept as [a] court may otherwise permit" in a given case, the national legislature instructed that generally a particular party should serve as a lead plaintiff "in no more than 5 securities class actions . . . during any 3-year period." *Id.* Due regard for this provision exposes both Detroit Police & Fire and the Iron Workers as the type of professional plaintiff Congress deemed so undesirable.[1] Accordingly,

---

[1] The certification filed by Detroit Police & Fire unabashedly reveals that the fund has been appointed as a lead plaintiff in six other securities actions during the past three years, so it is undeniably subject to the PSLRA's prohibition on professional plaintiffs. This conclusion is not so clear with respect to Iron Workers, but it is no less certain. Namely, and in addition to the three cases listed in Iron Workers' certification in which it has been appointed as a lead plaintiff over the preceding 3 years, it has also filed an unopposed motion to be the lead plaintiff in *Eastriver Partners, Inc. v. Focus Media Holding Limited et al*, No. 1:07-cv-10617-LTS (S.D.N.Y). Moreover, since filing its certification in this proceeding, Iron Workers has sought to be the lead plaintiff in *Orion Energy Systems, Inc.*, No. 1:08-cv-01328-RJS (S.D.N.Y.). *Cf. In re: Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 822 (N.D. Ohio 1999) ("A lessened ability to monitor the conduct of [the] attorneys [for a proposed lead plaintiff] . . . could be revealed by the number of actions in which it is currently *seeking* appointment as lead plaintiff. In [this] situation, lifting the bar would be inconsistent with the PSLRA[] . . . ." (emphases in original) (footnote omitted)). Notably, Iron Workers' losses in the *Orion* litigation total $128,151.77, which is over $100,000 more than the losses sustained by any other lead plaintiff applicant in that affair. Obviously, then, Iron Workers will likely prevail in its attempts to serve as the lead plaintiff in both *Eastriver* and *Orion*, meaning that it will have assumed that role in 5 separate matters during the past 3 years. *Cf.* 15 U.S.C. § 78u-4(a)(3)(B)(vi).

adherence to the objectives of the PSLRA demands that this Court reject the efforts of these two funds to again serve as lead plaintiffs in this lawsuit.

It is certainly true that, when it comes to institutional investors such as Detroit Police & Fire and Iron Workers, the PSLRA's professional plaintiff restriction applies with somewhat different force. When this type of entity falls within the purview of the provision, this Court has specifically observed that it retains the discretion to "lift the presumptive bar with respect to institutional plaintiffs." *Casden v. HPL Techs., Inc.*, No. C-02-3510 VRW, 2003 U.S. Dist LEXIS 19606, at *34 (N.D. Cal. Sept. 29, 2003). Whether it is appropriate to relax the prohibition is clearly a decision made on a case by case basis, and it is apparent that there is "no flat exemption for institutional investors." *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1156 (N.D. Cal. 1999); *accord In re: Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 822 (N.D. Ohio 1999) ("[A]n exemption from the presumptive bar of 78u-4(a)(3)(vi) for institutional investors solely on accounts of their status is not supported by the language of the statute, or by its purposes and underlying theoretical premise."). Instead, a court should consider such things as whether the professional plaintiff is the only movant before it, whether the other potential lead plaintiffs have an even greater level of participation in securities litigation, and whether any other institutional investors have offered to act as lead plaintiff. *Aronson*, 79 F. Supp. 2d at 1156-57; *see also In re Critical Path, Inc., Sec. Litig.*, 156 F. Supp. 2d 1102, 1112 (N.D. Cal. 2001) (emphasizing that the "main reason" the Court was appointing a professional as lead plaintiff was because it was "the only acceptable institutional investor, and, indeed, the only acceptable large shareholder").

In the dispute at bar, there is nothing to suggest that the court should lift the professional plaintiff restriction as to Detroit Police & Fire or the Iron Workers, as there is another institutional investor willing to serve who is anything but a professional plaintiff. As mentioned above, this is the one and only proceeding in which the Omaha Funds have sought to be lead plaintiff, and it is therefore evident that they will be able to devote their undivided time and resources to this litigation. That is anything but so with respect to Detroit Police & Fire and the

4

Iron Workers. *Cf., e.g., In re: Telxon Corp.*, 67 F. Supp. 2d at 822 ("[A]n institutional investor that is *simultaneously* involved in one or more other securities class actions would have fewer resources available and be less able to police its attorney's conduct."). Because the Omaha Funds are ready to fill the institutional void left with the departure of these other funds, this Court should have no hesitation in faithfully applying in this litigation the professional plaintiff restriction of the PSLRA. In so doing, this Court should deem Detroit Police & Fire and the Iron Workers unworthy to serve as lead plaintiffs in this action.[2]

### B.  ALEX MERUELO IS SUBJECT TO UNIQUE DEFENSES MAKING HIM INADEQUATE TO SERVE AS LEAD PLAINTIFF

Alex Meruelo claims to have sustained $734,000 in losses as a result of Defendants' fraud during the Class Period, just a little more than the losses of $717,684.73 suffered by the Omaha Funds. Like Detroit Police & Fire and the Iron Workers, however, any presumption that he is the "most adequate plaintiff" in this matter has been rebutted. In Mr. Meruelo's case, this is because he is subject to "unique defenses" rendering him "incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb).

That Mr. Meruelo is an atypical investor, subject to unique defenses, is apparent from the briefest perusal of the certification he has filed in this action. In that document, Mr. Meruelo cryptically represents that he obtained the bulk of his shares in SiRF "on assignment." The reason for these assignments is that Mr. Meruelo engaged in a number of what are described as "put" or "call" transactions. In these transactions, Mr. Meruelo bought "puts" and sold "calls." Each of these acts are inconsistent with those of a typical shareholder that sought to have the

---

[2] Although an individual investor, Kenneth L. Weiss, would remain in Iron Workers Group following the rejection of Iron Workers, it would be improper for this Court at that point to evaluate whether Weiss could serve as lead plaintiff on his own. On similar facts, this Court has previously declined to assess whether a single member of a group could serve as lead plaintiff following the disqualification of all others within the association, reasoning that the remaining candidate "was not presented as a prospective lead plaintiff on its own . . . and its moving papers do not demonstrate why it would be a suitable lead plaintiff even if its group were to be rejected." *In re Critical Path, Inc., Sec. Litig.*, 156 F. Supp. 2d 1102, 1111 (N.D. Cal. 2001). This same analysis applies here.

stock price of SiRF Technology increase.  The seller of the call option expects the share price to remain relatively stable or to decline modestly.[3]  Likewise, the buyer of the put option believes share prices will decline.[4]  Unlike the Omaha Funds and the vast majority of all SiRF Technology shareholders, Mr. Meruelo profited by a decline in the stock price of SiRF Technology, and thus is an inadequate class representative.  *Critical Path*, 156 F. Supp. 2d at 1109 ("It is a poor choice to appoint a class representative who engaged in a trading practice premised on the belief the stock would fall.")  With this much established, it is patent that Mr. Meruelo was something other than an average investor.[5]

When determining whether a potential lead plaintiff is a "typical" class member, the court "look[s] to any marked differences in the circumstances of the presumptive lead plaintiff or legal theories on which it, as opposed to the other class members, will rely."  *Casden v. HPL Tech., Inc.*, 2003 U.S. Dist LEXIS 19606, at *16 (Sept. 29, 2003).  By acquiring the bulk of his SiRF shares "on assignment" and through his utilization of the "put" and "call" transactions as a short-seller, Mr. Meruelo shows himself to be very different from the vast majority of class members.  There is little doubt that Defendants would stress this point were Mr. Meruelo ever offered as a potential class representative.  *See, e.g., Crossen v. CV Therapeutics*, No. C 03-03709 SI, 2005 U.S. Dist. LEXIS 41396, at *15 (Aug. 9, 2005) (explaining that the defendants objected to class certification because of proposed representative's sale of "uncovered call options").  Without belaboring the obvious, suffice it to say that Mr. Meruelo is an unsuitable candidate for the Lead

---

[3]  *See* Yahoo! Options Glossary, http://biz.yahoo.com/opt/glossary4.html; TDS Stocks and Finance Resource, http://www2.barchart.com/cbjump.asp?page=%2Fsupport%2Fopts101.asp%3Fcode%3DXTDS.

[4]  *Id.*

[5]  Indeed, an internet search of the name "Alex Meruelo" reveals that to be the identity of an individual who is the president and CEO of a "diversified investment holding company."  *See* http://www.exadigm.com/AlexMeruelo.html.  It is unclear whether that is the same Alex Meruelo that is a proposed lead plaintiff here, but it does raise questions about the strategy and purchases of SiRF Technology stock and options that need to be addressed.

Plaintiff position. At the very least, his certification raises enough questions about his SiRF holdings that the court should require his submission of supplemental information detailing the nature of his ownership of SiRF stock and the types of transactions in which he engaged. *Cf. Casden*, 2003 U.S. Dist. LEXIS 19606, at *16-*17 (explaining that due to dearth of information in party's certification, court required the submission of supplemental information).

### III. CONCLUSION

For the foregoing reasons, movant respectfully requests that this Court (1) appoint the Omaha Funds as lead plaintiff in these actions and any subsequently-filed related actions; and (2) approve their selection of the law firms of Cauley Bowman Carney & Williams, PLLC as Lead Counsel and Kerr & Wagstaffe LLP as Liaison Counsel for the class.

DATED: April 25, 2008                **KERR & WAGSTAFFE LLP**

By _____s/_____
ADRIAN J. SAWYER
Proposed Liaison Counsel

CAULEY BOWMAN CARNEY & WILLIAMS, PLLC

Proposed Lead Counsel