1   Michael L. Kelly (82063)
    Behram V. Parekh (180361)
2   KIRTLAND & PACKARD LLP
    2361 Rosecrans Avenue, Fourth Floor
3   El Segundo, CA  90245
    Tel: (310) 536-1000
4   Fax: (310) 536-1001
    mlk@kirtlandpackard.com
5   bvp@kirtlandpackard.com

6   *Counsel for Proposed*
    *Lead Plaintiff Alex Meruelo*
7

8

9                    **UNITED STATES DISTRICT COURT**

10                   **NORTHERN DISTRICT CALIFORNIA**

11

12  In re SiRF Technology Holdings, Inc.        )   Master File No.: C08-00856 MMC
    Securities Litigation                       )
13                                              )   **REPLY MEMORANDUM IN FURTHER**
    _____         )   **SUPPORT OF MOTION FOR**
14                                              )   **APPOINTMENT OF ALEX MERUELO**
    This Document Related to:                   )   **AS LEAD  PLAINTIFF PURSUANT TO**
15                                              )   **§21D OF THE SECURITIES EXCHANGE**
             ALL ACTIONS                        )   **ACT OF 1934 AND FOR APPROVAL OF**
16                                              )   **LEAD PLAINTIFF'S CHOICE OF LEAD**
                                                )   **COUNSEL**
17                                              )
                                                )   CLASS ACTION
18                                              )
                                                )   Date:   May 16, 2008
19                                              )   Time:   9:00 a.m.
                                                )   Ctrm.:  Hon. Maxine M. Chesney
20  _____         )

21

22

23

24

25

26

27

28

1         Plaintiff Alex Meruelo ("Meruelo" or "Movant") respectfully submits his reply

2   memorandum in further support of his "Motion for Appointment of Alex Meruelo as Lead

3   Plaintiff Pursuant to §21d of the Securities Exchange Act of 1934 and for Approval of Lead

4   Plaintiff's Choice of Lead Counsel" (hereinafter the "Motion").

5   **MEMORANDUM OF POINTS AND AUTHORITIES**

6   **I.    INTRODUCTION**

7         On April 8, 2008, Alex Meruelo ("Meruelo" or "Movant") moved this Court pursuant to

8   §21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §78u-

9   4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA") for

10  an Order: (i) appointing Movant as Lead Plaintiff of the proposed class (the "Class") of

11  purchasers of the securities of SiRF Technology Holdings, Inc. ("SiRF" or the "Company") who

12  acquired SiRF securities between October 30, 2007 and February 4, 2008 (the "Class Period");

13  and (ii) approving Meruelo's selection of Kirtland & Packard LLP as Lead Counsel.[1]

14        On the same day, eight other competing motions for appointment of Lead Plaintiff and

15  Lead Counsel were filed before this Court.[2]  However, in addition to Meruelo, only Detroit P&F,

16  Omaha Funds, and the Weiss Group have filed opposition papers to the competing motions (the

17  "Competing Movants").  It appears that the remaining movants, who have suffered losses which

18  are significantly less than the foregoing, have abandoned their motions.  *See* Civil Local Rule 7-

19  3 ("Any opposition to a motion must be served and filed not less than 21 days before the hearing

20  date.").

21

22

23  ─────────────────────

24       [1]  The original motion also requested that Faruqi & Faruqi LLP be appointed as co-lead

25  counsel, however, due to a recently discovered potential conflict, that firm has withdrawn from
    representing Meruelo in this litigation.

26       [2]  In addition to Movant, the additional applicants for Lead Plaintiff were: Alan
    Nussbaum ("Nussbaum"); Matthew Delaney ("Delaney"); James Van Atten ("Van Atten"); Gary

27  Mitchell Schorr Rev. Trust U/A DTD 3-20-98 ("Schorr Trust"); Omaha Funds ("Omaha
    Funds"); Christopher Collins ("Collins"); Police and Fire Retirement System of the City of

28  Detroit ("Detroit P&F"); and Iron Workers Local No. 25 Pension Fund and Kenneth L. Weiss
    (the "Weiss Group").

1    While Meruelo has suffered losses of approximately $734,000.00, the Competing

2    Movants claim that his Motion should be denied.  In sum, the Competing Movants claim that

3    Meruelo has not suffered the losses he claims, that he is subject to unique defenses which may

4    render him atypical as compared with the rest of the class, and that he is otherwise not qualified

5    to fulfill the fiduciary duties associated with being appointed lead plaintiff.  As discussed below,

6    each of these arguments should be rejected.  Movant's Motion should be granted because each of

7    the Competing Movants does not satisfy the requirements of the Private Securities Litigation

8    Reform Act ("PSLRA").  *See, e.g.*, "Memorandum of Points and Authorities in Further Support

9    of Motion for Appointment of Alex Meruelo as Lead  Plaintiff and for Approval of Lead

10    Plaintiff's Choice of Lead Counsel and in Opposition to the Competing Motions." (the

11    "Opposition").

12    With losses of $717,684.73, Omaha Funds does not satisfy the largest financial loss

13    requirement under the PSLRA.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb); Meruelo Opposition

14    at 1-3.  As for Detroit P&F, it has attained professional plaintiff status because the PSLRA

15    restricts a plaintiff from serving as Lead Plaintiff more than five times in any three year period.

16    *See* 15 U.S.C. §78u-4(a)(3)(B)(vi); Meruelo Opposition at 3-4.  Detroit P&F has disclosed in its

17    certification that in the three years prior to its motion it has been appointed Lead Plaintiff in six

18    actions filed under the federal securities laws.  This means that if Detroit P&F's Lead Plaintiff

19    motion is granted, it will be the seventh time that it has been appointed Lead Plaintiff during the

20    statutory time period.  Hence, pursuant to the PSLRA, Detroit P&F's motion for appointment as

21    Lead Plaintiff in the Action should be denied.  *See also* "Iron Workers' & Weiss' Omnibus

22    Opposition to All other Motions for Appointment as Lead Plaintiff" ("Weiss Group Opposition")

23    at 3-8.

24    As for the Weiss Group, these are unrelated investors which should not be allowed to

25    aggregate their losses in order to claim that they have the largest financial interest in the

26    litigation.  *See* Opposition at 5-7; "Memorandum of Points and Authorities of the Police and Fire

27    Retirement System of the City of Detroit in Opposition to Competing Motions for Appointment

28    of Lead Plaintiff and Approval of Lead Counsel" ("Detroit P&F Opposition") at 4-6.

1   Individually, neither movant in the Weiss Group has a larger financial loss than Meruelo.

2   Pursuant to the PSLRA's intent to curtail lawyer-driven litigation, the Weiss Group may not

3   aggregate the losses suffered by unrelated parties, and the Weiss Group's motion for

4   appointment as Lead Plaintiff must be denied.  With Detroit P&F and the Weiss Group

5   demonstrably inadequate due to their failures to comply with the PSRLA, and because Omaha

6   Funds has suffered financial losses which are less than Movant, Meruelo is the movant who best

7   satisfies the requirements of the PSLRA and Rule 23 of the *Federal Rules of Civil Procedure.*

8   Accordingly, Movant's Motion for Lead Plaintiff and Lead Counsel should be granted over all

9   competing motions.

10  **II.     ARGUMENT**

11          Generally, the movant who timely files a motion to serve as Lead Plaintiff, possesses the

12  largest financial stake in the action and who otherwise satisfies the typicality and adequacy

13  requirements of *Federal Rule of Civil Procedure* Rule 23(a) is the presumptive Lead Plaintiff.

14  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I); *In re Cavanaugh,* 306 F.3d 726, 729-730 (9th Cir. 2002);

15  *Apple v. LJ Intl. Inc.*, No. 07-6076, 2008 U.S. Dist. LEXIS 12618, at *5-6 (C.D. Cal. February 8,

16  2008); *Casden v. HPL Tech. Inc.,* No. 02-3510, 2003 U.S. Dist. LEXIS 19606, at *10-11 (N.D.

17  Cal. September 29, 2003).  However, this is a rebuttable presumption.  *Mohanty v. BigBand*

18  *Networks, Inc.*, No. 07-5101, 2008 U.S. Dist. LEXIS 32764, at *11 (N.D. Cal. Feb. 14, 2008).

19  For the reasons stated in Meruelo's Opposition, as well as in the Weiss Group and Detroit P&F

20  Oppositions, the Competing Movants do not satisfy the Lead Plaintiff requirements under the

21  federal securities laws.  While at first glance Movant does not appear to have the largest

22  financial losses in this instance, and despite the challenges made by the Competing Movants,

23  only Meruelo adequately satisfies all the Lead Plaintiff requirements of the PSLRA.

24          **A.     Meruelo Is Not Subject To Unique Defenses**

25          In Detroit P&F's Opposition, it claims that Meruelo is "subject to unique defenses that

26  render [him] incapable of adequately representing the class" because he was named as a director

27  defendant in a breach of fiduciary duty case.  *See, e.g.,* Detroit P&F Opposition at 7-9.  Detroit

28  P&F is mistaken.  As the two complaints cited by Detroit P&F make clear, although Meruelo is

1    named as a director defendant in those breach of fiduciary duty actions, it is obvious that naming

2    him as a defendant was simply *pro forma* and that Meruelo's role in that litigation does not

3    subject him to such unique defenses that may threaten to become the focus of the litigation.  *See,*

4    *e.g., Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 260 (D. Mass. 2005) ("class

5    certification is inappropriate where a putative class representative is subject to unique defenses

6    *which threaten to become the focus of the litigation*...").[3]

7         The breach of fiduciary duty complaints cited by Detroit P&F allege no actual

8    wrongdoing on the part of Meruelo.  *See*, Lopez Declaration in Support of Detroit P&F

9    Opposition, *Exhibits B* and *D*.  Further, not only is no wrongdoing alleged to have been done by

10   Meruelo, but the complaints cited by Detroit P&F do not even allege that Meruelo approved the

11   underlying transaction as a member of the board of directors, or, in fact, that there was ***any***

12   approval by the board of directors.  *Id.*  In fact, the complaints allege that the underlying

13   transaction in question was a ***public tender offer*** made by General Lyons and William Lyons,

14   who already collectively owned ***72%*** of the target company, William Lyons Homes, not a

15   merger or sale transaction requiring board of director approval.  *Id.*  Thus, naming Meruelo as a

16   defendant, simply because he was a member of the board of directors of William Lyons Homes,

17   was completely ancillary to the matter.  Such inclusion does not rise to the level of a unique

18   defense which would threaten to become the focus of this litigation.  *See*, *Swack*, 230 F.R.D. at

19   260.

20        Furthermore, Meruelo has qualified to serve as a lead plaintiff in past litigation.  As noted

21   in his certification, Movant was appointed lead plaintiff in *In re Williams Securities Litigation,*

22   Case No. 02-cv-72-SPF-FHM, Northern District of Oklahoma and *In re Mastec Inc. Securities*

23   *Litigation*, Case No. 04-20886-FAM, Southern District of Florida.  Thus, Meruelo has the

24   sophistication required "in the realms of securities and securities litigation."  *Casden v. HPL*

25   *Techs., Inc.,* No. C-02-3510, 2003 U.S. Dist. LEXIS 19606, at *25 (N.D. Cal. Sept. 29, 2003).

26

27

28

---

[3]  At all times, emphasis is added unless otherwise indicated.

1    As for the cases relied upon by Detroit P&F, they are inapposite.  In *Z-Seven Fund, Inc.*

2    *v. Motorcar Parts & Accessories,* 231 F.3d 1215 (9th Cir. 2000), the Ninth Circuit granted

3    appellees motion to dismiss the appeal, concerning the lower court's lead plaintiff order, for lack

4    of jurisdiction.  Moreover, the opinion suggests that Z-Seven Fund (appellant) was not appointed

5    lead plaintiff due to "shrill allegations of unethical conduct" between counsel for two competing

6    groups of movants, rather than claims that it had been sued for breach of fiduciary duty.  As the

7    Ninth Circuit noted:

8    This was not the first time that Milberg Weiss and Weiss & Yourman have
     exchanged shrill allegations of unethical conduct.  Regardless of the truth or
9    falsity of those allegations, and whatever the situation was with Z-Seven's prior
     lawsuit, one thing was undisputed: No one contended that Francine Ehrlich could
10   not adequately represent the class as lead plaintiff.  In the face of that record,
     Judge Real rejected the applications by the groups represented by Milberg Weiss
11   and Weiss & Yourman and instead appointed Francine Ehrlich as lead plaintiff.
     However, Judge Real declined to appoint Ms. Ehrlich's counsel as lead counsel
12   for the class, and instead selected Marc Seltzer, who represented the Louisiana
     State Employees' Retirement System.
13
     *Id.* at 1217.
14
15   As for Detroit P&F's reliance on *In re Network Assoc., Inc. Sec. Litig.,* 76 F. Supp. 2d

16   1017 (N.D. Cal. 1999), the facts of that matter are inapplicable to the case at bar.  In regard to

17   one of the movants in that case, the court denied the lead plaintiff application stating:

18   KBC has at least two major negatives. First, the record indicates that the two
     sister banks (the one in Luxembourg and the one in Belgium) are *under*
19   *investigation for criminal fraud violations of the laws in Belgium, that the*
     *authorities have conducted "raids" on the Belgium bank as part of its criminal*
20   *fraud investigation, and that the CEO of KB  Luxembourg has already been*
     *arrested for tax evasion, fraud, money laundering, conspiracy and consorting*
21   *with criminal elements* (Lema Dep. 69-71, 75). Even if this evidence were
     excluded at trial in this case (and it probably would be), the Court is unwilling to
22   install an enterprise under such a cloud in a position of trust and confidence. KBC
     is otherwise preoccupied with its own legal problems.

23   *Id.* at 1029.  Any challenges raised by Detroit P&F against Meruelo hardly compare to those in

24   *Network Associates*, especially since the claims have all but been resolved and there have been

25   no allegations, much less findings, of any wrongdoing against Movant, despite Detroit P&F's

26   innuendos and speculation to the contrary.[4]  In other words, as with prior litigation where

27

28   [4]  Even though the claims against Meruelo do not compare to those in *Network*
     *Associates*, courts have certified class representatives who have been subject to much more

Meruelo has been appointed lead plaintiff, he will not be subject to any "unique defenses" in this litigation.[5]

**B.    Meruelo Has Not Overstated His Losses and Options Trading Does Not Render Him Atypical**

Detroit P&F also claims that Movant has overstated his losses.  Detroit P&F Opposition at 9-10.  These claims are without merit.  Meruelo's sworn certification has been submitted with his Motion.  Movant has also submitted a detailed calculations chart with his Opposition.  While Meruelo's damages are the result of stock and options purchases, he has nevertheless sustained damages in excess of $734,000 and any arguments to the contrary are unfounded.  Nevertheless, if the Court requires supplemental information concerning Movant's transactions, it can certainly be submitted for review.

The Weiss Group claims that Meruelo's options trading renders him atypical.  Weiss Group Opposition at 11.  At the outset, it is important to note that the plaintiff who filed the first complaint in the litigation, Sammy Esses, submitted a certification with his complaint which details extensive options trading.  Yet the Weiss Group, who is represented by Mr. Esses' counsel, claims that a plaintiff who has traded in options is unfit to be lead plaintiff.  The Weiss Group's reliance on *Andrada v. Atherogenics, Inc.,* No. 05 Civ. 00061, No. 05 Civ. 1938, 2005 U.S. Dist. LEXIS 6777 (S.D.N.Y. 2005) is misplaced because in that case the court declined to appoint a lead plaintiff who had "***only*** purchased call options and not any of the underlying

---

serious challenges than Movant.  *See Randle v. SpecTran*, 129 F.R.D. 386,  392-393 (D. Mass. 1988) (granting class certification in securities case where defendants claimed that class representative had four indictments for arson ten or more years prior, a misdemeanor conviction for disturbing the peace, and testified at deposition that he did not file tax returns in 1985 and 1986); *Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 328 (S.D. Fl. 1996) (granting motion for class certification in securities class action and noting that persons indicted or convicted of crimes may still be adequate class representatives).

[5]  Detroit P&F's remaining citations are equally unavailing: *Mohanty v. BigBand Networks, Inc.*, Case No. C07-5101, 2008 U.S. Dist. LEXIS 32764 (N.D. Cal. Feb. 14, 2008) (only cited for general proposition, lead plaintiff motion granted); *Kline v. Wolf,* 702 F.2d 400, 401-402 (2d Cir. 1983) (appellate court affirmed lower court holding regarding denial of class certification motion where plaintiffs were vulnerable to ***serious*** attack as a result of reliance issues and that one of the plaintiffs had ***refused*** to answer "critical and relevant questions" during her deposition).

1    Atherogenics common stock that most putative class members purchased." (emphasis in

2    original)  *Id.* at *14.  In this case, Meruelo has over $300,000 in losses due to his common stock

3    purchases with his remaining losses attributable to options transactions.  Thus, Movant is

4    actually better suited to be appointed lead plaintiff because he can well represent not only a class

5    of stock purchasers, but options purchasers as well.

6           To the extent that Omaha Funds similarly claims that Meruelo is atypical due to his

7    options trading, its arguments are also without merit.  *See* "Omaha Funds' Response to Motions

8    for Appointment as Lead Plaintiff" ("Omaha Funds' Response") at 6-7.  As previously noted,

9    Movant did not profit by a decline in the stock price of SiRF, and he was not a short-seller.

10   Unlike a short-seller, or a seller of call options, Meruelo's options trading consisted of the ***sale***

11   of ***put options***.  A sale of put options is, essentially, the equivalent to the purchase of stock from

12   the perspective of market reliance.  The seller of put options is betting, as is the purchaser of

13   common stock, that the price of the common stock will go up, and is relying on the integrity of

14   the market to price such options and stock properly.  Thus, both the Weiss Group's and  Omaha

15   Funds' challenge to Meruelo's options trading is misplaced.  As for challenges defendants may

16   make concerning Meruelo's transactions, those will be addressed at the appropriate time, but as

17   courts have made clear, the investment strategy employed by a potential class representative is

18   simply irrelevant to their typicality or adequacy.  *See*, *e.g.*, *Kolin v. American Plan Corp.*, No.

19   CV-84-3183, 1986 U.S. Dist. LEXIS 27057, at *26-27 (E.D.N.Y. Apr. 8, 1986) (citation

20   omitted) ("a professional investor, the class members as amateurs, and indeed, those who choose

21   stock by means of ouija board or by throwing darts at the list, all believe as an article of faith that

22   the market is an honest market, representing the sum total of the effects on price, supply, and

23   demand of shares, of all public information.")

24          Under these circumstances, any challenge as to Meruelo's typicality based on his trading

25   practices is unlikely to prevail.  As stated above, Movant did not engage solely in options

26   trading, but traditional stock purchases as well, which should satisfy any class certification

27   inquiry.  As the Court noted in *Danis v. USN Communs., Inc.,* 189 F.R.D. 391 (N.D. Ill. 1999):

28

1
2
3
4

It can be stated without fear of gainsay that the roster of shareholders of every large, publicly traded corporation includes institutional investors, short-sellers, arbitragers, etc. *The fact that these traders have divergent motivations in purchasing shares should not defeat the fraud-on-the-market presumption absent convincing proof that price played no part whatsoever in their decision making.*

5
6
7

*Id.* at 396-397 (granting class certification as to plaintiff class, finding that lead plaintiff's unusual trading practices (short-selling) and timing of stock purchases did not make him atypical; plaintiff class was likely to include traders with divergent motivations).[6]

8
9
10
11
12

In fact, the case law cited by Omaha Funds actually *supports* Movant's Motion. In *Crossen v. CV Therapeutics,* 2005 U.S. Dist. LEXIS 41396 (N.D. Cal. Aug. 10, 2005), defendants objected to class certification based on the proposed representative's trading practices which included trading in options and "day trading." Nevertheless, the court granted class certification *despite* defendants' objections. Further, the court stated in pertinent part:

13
14
15
16
17
18
19
20

*First, the Court finds that Crossen's sale of uncovered call options does not, on its own, rebut the presumption of reliance.* Defendants rely on *Silverstein v. Digital Equip. Corp.*, 1990 U.S. Dist. LEXIS 6333, 1990 WL 71385, at *1 (D. Mass. May 22, 1990), where an investor who purchased stock and then sold covered call options two weeks later was deemed atypical by the district court. The Silverstein court did not explain its reasoning or supply sufficient facts for this Court to find it applicable here. There appears to be no direct authority regarding investors who sold uncovered call options, but defendants argue that Crossen's sale of these options makes him akin to a short seller. Short sellers have been rejected as adequate class representatives by several courts. *See, e.g., In re Critical Path, Inc.*, 156 F. Supp. 2d 1102, 1109-10 (N.D. Cal. 2001); *In re Terayon Coms. Sys., Inc.*, 2004 U.S. Dist. LEXIS 3131, 2004 WL 413277, at *7-8 (N.D. Cal. Feb. 23, 2004). According to defendants, sellers of uncovered call options are like short sellers because they face potentially limitless losses if the stock increases significantly in price, and reap profits if the stock decreases in value.

21

* * * * *

22
23
24
25

The Court does not reach the issue of whether sellers of uncovered call options are subject to the same potential defenses as short sellers, because even assuming arguendo that defendants' analogy is sound, Crossen's *sale of call options does not make him atypical. Short sales do not in and of themselves render a lead plaintiff's claims atypical*. Indeed, in *Danis v. USN Communs., Inc.*, 189 F.R.D. 391 (N.D. Ill. 1999), on which plaintiff relies, the Court found adequate a plaintiff

26
27
28

---

[6] The remaining case law cited by Omaha Funds offers little support for their position. *See In re Critical Path, Inc. Sec. Litig.,* 156 F. Supp. 2d 1102, 1109 (N.D. Cal. 2001) (not in favor of appointing a lead plaintiff who engaged in short-selling); *Casden v. HPL Techs., Inc.,* 2003 U.S. Dist. LEXIS 19606, at *22-23 (despite lacking beneficial ownership in shares at issue, movant not atypical).

1  who both engaged in short selling of stock and made ordinary purchases during
the class period. *See also In re Cirrus Logic Sec.*, 155 F.R.D. 654, 660 (N.D. Cal.
2  1994). Danis is factually similar to this case, and the Court is persuaded by it.
While the motivations behind short selling may be inconsistent with the
3  assumptions underlying the fraud on the market theory [...] a plaintiff may still be
entitled to the presumption of reliance if he makes ordinary purchases of common
4  stock and sustains losses on these holdings. In addition to his call options,
Crossen purchased CVT stock and suffered losses on that stock. These facts also
5  distinguish this case from Terayon where the putative lead plaintiff had engaged
in a "campaign[] devised to lower the price of the stock in question." 2004 U.S.
6  Dist. LEXIS 3131, 2004 WL 413277, at *8. Here, there has been no allegation
that Crossen's trading strategy was intended to adversely affect the stock price.
7  **Contrary to defendants' claim, therefore, Crossen's trading strategy itself does
not render him an atypical plaintiff.**

8  *Id.* at *14-17. *See also In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 158 (S.D.N.Y. 1997)

9  (movant not atypical and appointed lead plaintiff where trading included common stock

10  purchases and investments in call and put options); *Deutschman v. Beneficial Corp.*, 132 F.R.D.

11  359, 372-374 (D. Del. 1990) (options trading did not subject class representative to unique

12  defense which would render him atypical).

13  **III.    CONCLUSION**

14          For the foregoing reasons, Meruelo respectfully requests that the Court: (i) deny all

15  competing applications for Lead Plaintiff and Lead Counsel; (ii) appoint Alex Meruelo as Lead

16  Plaintiff in the consolidated action; and (iii) approve Meruelo's choice of Kirtland & Packard

17  LLP as Lead Counsel in the consolidated action.

18  DATED: May 2, 2008                              Michael L. Kelly (82063)
19                                                  Behram V. Parekh (180361)
                                                    KIRTLAND & PACKARD LLP
20

21                                                  _____
                                                    /s/ Behram V. Parekh
22                                                  Behram V. Parekh

23                                                  2361 Rosecrans Avenue, Fourth Floor
                                                    El Segundo, CA  90245
24                                                  Tel: (310) 536-1000
                                                    Fax: (310) 536-1001
25                                                  mlk@kirtlandpackard.com
                                                    bvp@kirtlandpackard.com
26
                                                    *Counsel for Proposed*
27                                                  *Lead Plaintiff Alex Meruelo*

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 2, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.


                                        /s/ Behram V. Parekh
                                        Behram V. Parekh