PETER BINKOW #173848
MICHAEL GOLDBERG #188669
GLANCY BINKOW & GOLDBERG LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email:info@glancylaw.com

SUSAN G. KUPFER (#141724)
GLANCY BINKOW & GOLDBERG LLP
One Embarcadero Center, Suite 760
San Francisco, California 94111
Telephone:    (415) 972-8160
Facsimile:    (415) 972-8166
Email: skupfer@kmllp.com
*Liaison Attorney for Proposed Lead Plaintiff*

IRA M. PRESS
SARAH G. LOPEZ
KIRBY MCINERNEY LLP
830 Third Avenue, 10th Floor
New York, New York 10022
Telephone:    (212) 317-2300
Facsimile:    (212) 751-2540
Email: ipress@kmllp.com
*Attorneys for Proposed Lead Plaintiff*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In Re SiRF TECHNOLOGY HOLDINGS, INC. SECURITIES LITIGATION<br><br>This Document Related To:<br><br>All Actions | Master File No.<br>C 08 00856<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT'S MOTION FOR APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL**<br><br>Date: May 16, 2008<br>Time: 9:00 a.m.<br>Courtroom 7, 19th Floor<br><br>Hon. Maxine M. Chesney |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................... ii

I.  INTRODUCTION ...................................................... 1

II. ARGUMENT .......................................................... 2

    A.  The PSLRA's Professional Plaintiff Ban Does Not Apply to Institutional Investors ............................................ 2

    B.  Challenges to the Adequacy of Detroit PFRS' Certification Are Meritless .......................................................... 8

    C.  Meruelo's Belated Transactional Information ..................... 10

III. CONCLUSION ....................................................... 11

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT'S MOTION FOR APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

i

1

# TABLE OF AUTHORITIES

*Cases*

*Armour v. Network Assocs., Inc.*,
    171 F.Supp.2d 1044 (N.D. Cal. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Aronson v. McKesson HBOC, Inc.*,
    79 F.Supp.2d 1146 (N.D.Cal.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Blaich v. Employee Solutions, Inc.*,
    No. 97-545-PHX-RGS, 1997 WL 842417 (D. Ariz. Nov. 21, 1997) . . . . . . . . . . . . . . . 3

*Brody v. Dot Hill Sys. Corp.*,
    06-228, slip op. (S.D. Cal. June 23, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 9

*Casden v. HPL Tech. Inc.*,
    No. 02-3510, 2003 U.S. Dist. LEXIS 19606 (N.D.Cal. September 29, 2003) . . . . . . . 4, 5

*In re Comverse Tech., Inc.*,
    No. 06-1825, 2006 WL 2792757 (E.D.N.Y. Sept. 27, 2006)
    *vacated  In re Comverse Tech., Inc. Sec. Litig.*, No. 06-1825,
    2007 WL 680779 (E.D.N.Y. Mar 02, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-5

*In re Critical Path, Inc.*,
    156 F.Supp.2d 1102 (N.D. Cal. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5

*In re DaimlerChlyslerAG Sec. Litig.*,
    216 F.R.D. 291 (D. Del. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Fannie Mae Sec. Litig.*,
    355 F.Supp.2d 261 (D.D.C. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In Re Focus Media Holding Limited Litigation*,
    07-10617, slip op. (S.D.N.Y. April 24, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Gemstar-TV Guide Int'l Inc. Sec. Litig.*,
    209 F.R.D. 447 (C.D. Cal. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 5, 7

*In re Impax Laboratories, Inc. Sec. Litig.*,
    No. 04-04802, 2008 WL 1766943 (N.D.Cal. April 17, 2008) . . . . . . . . . . . . . . . . . . 4, 5

*Meeuvenberg v. Best Buy Co., Inc.*,
    03-6193 ADM/AJB, 2004 WL 950362 (D. Minn. Apr. 29, 2004) . . . . . . . . . . . . . . . . 5

*Naiditch v. Applied Micro Circuits Corp.*,
    No. 01-CV-0649 K-AJB, 2001 WL 1659115 (S.D. Cal. Nov. 5, 2001) . . . . . . . . . . 3-5, 7

*In re Network Assoc., Inc. Sec. Litig.*,
    76 F.Supp.2d 1017 (N.D. Cal. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE POLICE AND FIRE RETIREMENT
SYSTEM OF THE CITY OF DETROIT'S MOTION FOR APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

ii

*In re Pfizer Inc. Sec. Litig.*,
    233 F.R.D. 334 (S.D.N.Y. 2005) ................................................... 5

*Piven v. Sykes Enterprises, Inc.*,
    137 F.Supp.2d 1295 (M.D.Fla. 2000) .......................................... 3

*Police & Fire Ret. Sys. of the City of Detroit v. Safenet*,
    06-5797, slip op. (S.D.N.Y. Feb. 21, 2007) ................................... 4

*In re Safeguard Scientifics*,
    216 F.R.D. 577 (E.D. Pa. 2003) ................................................. 11

*Shiring v. Tier Technologies, Inc.*,
    244 F.R.D. 307 (E.D. Va. 2007) ................................................ 11

*Smith v. Suprema Specialities, Inc.*,
    206 F. Supp. 2d 627 (D.N.J. 2002) ....................................... 3, 4, 8

### *Statutes*

15 U.S.C. § 78u-4 (a)(2)(A) ................................................................... 1, 9
15 U.S.C. §78u-4(a)(3)(B) ........................................................................ 1

### *Other Authorities*

H.R. Conf. Rep. No. 104-369, 104th Cong., 1st Sess (1995) ........................ 8

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT'S MOTION FOR APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

iii

## I. INTRODUCTION

The Police & Fire Retirement System of the City of Detroit ("Detroit PFRS") submits this memorandum in opposition to the various motions for lead plaintiff appointment.

None of the eight other competing movants disputes that Detroit PFRS has the largest financial interest in the claim among all timely lead plaintiff movants. In fact, five of the movants have submitted no opposition at all to the Detroit PFRS motion.[1] The other three movants (Alex Meruelo, the Weiss/Iron Workers aggregation, and the Omaha Funds) charge that despite having the largest financial stake, Detroit PFRS should not be appointed because it is serving as lead plaintiff in too many other securities lawsuits, and thus, runs afoul of the PSLRA's "professional plaintiff" or "5 in 3" ban. *See* 15 U.S.C. §78u-4(a)(3)(B)(vi).

In addition, Weiss/Iron Workers contend that the sworn certification submitted by Detroit PFRS included in its April 8, 2008 moving papers was materially defective because it omitted information about some other (non PSLRA) lawsuits in which the Detroit PFRS is involved, or PSLRA suits which Detroit PFRS is not a party but is considering joining.

These challenges do not defeat the "most adequate" lead plaintiff presumption that by law the Detroit PFRS merits. *See* 15 U.S.C.§78u-4(a)(3)(B)(iii). Courts in this District and within the Ninth Circuit have consistently declined to apply the 5 in 3 ban to bar institutional investors, such as Detroit PFRS. The Iron Workers must recognize this, because this case would be their sixth PSLRA lead plaintiff appointment within three years.

The Weiss/IronWorkers' challenges to the accuracy of Detroit PFRS' moving papers are meritless. Weiss/Iron Workers do not accuse Detroit PFRS of omitting any prior litigation information that the PSLRA requires movants to disclose – namely federal securities class actions commenced within the last three years in which the movant has sought to serve as a lead plaintiff. *See* 15 U.S.C.§78u-4(a)(2)(A)(v). Instead, Weiss/Iron Workers challenge Detroit PFRS' non-disclosure of information concerning lawsuits that are not federal securities class actions or lawsuits

---

[1] Those movants are Matthew Delaney, Christopher Collins, Alan Nussbaum, James Van Atten and Gary Mitchell Schorr Rev. Trust.

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT'S MOTION FOR APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

1

in which Detroit PFRS has not appeared – information whose disclosure is not required under the PSLRA.

In short, none of the competing movants have rebutted the Detroit PFRS' undisputed position as presumptive lead plaintiff.

On a final note, movant Alex Meruelo's April 25th opposition submission includes, for the first time, a calculation of his purported trades and losses. The absence of this calculation from Meruelo's April 8 moving papers was itself troubling. Moreover, Meruelo's untimely loss calculation lists purported trades that are different from those set forth in his initial moving papers. Meruelo's attempt at revisionist transactional history has not been accompanied by a sworn certification from Mr. Meruelo, let alone a sworn certification in which Mr. Meruelo explains the reason for the discrepancy between the transactional information he originally filed with the Court and his current claims regarding his class period transactions.

## II. ARGUMENT

### A. The PSLRA's Professional Plaintiff Ban Does Not Apply to Institutional Investors

Detroit PFRS is exactly the sort of lead plaintiff Congress had in mind when the PSLRA was enacted. As detailed on its previously-filed certification, Detroit PFRS has prior experience serving as lead plaintiff for an investor class. *See* April 8, 2008 Declaration of Ira Press in Support of the Policemen & Firemen Retirement System of the City of Detroit for Appointment of Lead Plaintiff, Ex B (Docket Entry #47). Many Detroit PFRS led class actions have resulted in important recoveries for the investor classes. *See e.g.*, *In re OM Group Sec. Litig.,* No. 02-2163 (N.D. Ohio) (settled for $92.4 million) ( May 2, 2008 Reply Declaration of Sarah Lopez ("Lopez Reply Decl."), Ex. A); *In re King Pharm. Sec. Litig.,* No. 03-77 (E.D. Tenn.) (settled for $38.25 million), *Id.* (Lopez Reply Decl., Ex. B); *In re Legato Sys. Sec. Litig.,* No. 00-2011 (N.D. Cal.) (settled for $85 million) (*Id.*, Ex. C); *In re KLA-Tencor Securities Litigation*, 06-04065 (N.D. Cal.) (settlement pending for $65 million) (*Id.*, Ex. D). This experience demonstrates Detroit PFRS' qualification and ability to serve as lead plaintiff here. *See e.g.*, *In re Gemstar-TV Guide Int'l Inc. Sec. Litig.*, 209 F.R.D. 447,

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT'S MOTION FOR APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

2

454 (C.D. Cal. 2002) ("The fact that other courts have allowed the [institutional movant'] to act as lead plaintiff in more than five securities class actions demonstrates that it is equipped to do so. Moreover the [movant's] experience acting as a lead plaintiff will benefit the class.").

There is no merit to the argument that Detroit PFRS is barred from serving as lead plaintiff here by the PSLRA's five-in-three limit. The PSLRA legislative history expresses a clear intent to exempt institutional investors from the bar. *See Smith v. Suprema Specialities, Inc.*, 206 F. Supp. 2d 627, 640 (D.N.J. 2002):

> The legislative history clearly indicates that Congress specifically sought to exempt from the limitation institutional investors...
>
> > The Conference Report seeks to restrict professional plaintiffs from serving as lead plaintiff by limiting a person from serving in that capacity more than five times in three years. *Institutional investors seeking to serve as lead plaintiff may need to exceed this limitation and do not represent the type of professional plaintiff this legislation seeks to restrict.* H.R. CONF. REP. NO. 104-369.

(Emphasis added). The court in *Smith* went on to note that:

> The majority of courts that have considered this issue have determined that the limitation does not apply to institutional investors. *See*, *e.g.*, *In re Critical Path, Inc.*, 156 F.Supp.2d 1102, 1112 (N.D. Cal. 2001) ('institutional investors do not represent the type of professional plaintiff [the Reform Act] seeks to restrict'); *Piven*, 137 F.Supp.2d at 1295 (permitting institutional investor to exceed limit). *In re Network Assoc., Inc. Sec. Litig.*, 76 F.Supp.2d 1017, 1030 (N.D. Cal. 1999) (same); *Blaich v. Employee Solutions, Inc.*, No. 97-545-PHX-RGS, 1997 WL 842417, at *2 (D. Ariz. Nov. 21, 1997) ('the general restriction of serving in more than five cases as a lead plaintiff was not intended to apply to institutional investors.'). As the Southern District of California noted:
>
> > when Congress determined to impose 'restrictions on professional plaintiffs,' it knew precisely whom it intended to restrict. The Conference Report for the [Reform Act] defines 'professional plaintiffs' as those who 'own a nominal number of shares in a wide array of public companies [and who] permit lawyers readily to file abusive class action lawsuits.' Clearly, these are not institutions. In fact, the Conference Report could not have been more explicit in stating that institutions, as opposed to professional plaintiffs, are not subject to the [Reform Act's] general limit on serving a [sic] lead plaintiff. *Naiditch v. Applied Micro Circuits Corp.*, No. 01-CV-0649 K-AJB, 2001 WL 1659115, at *7 (S.D. Cal. Nov. 5, 2001) (internal citations omitted).

*Smith*, 206 F. Supp. 2d at 641 (emphasis added).

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT'S MOTION FOR APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

3

Similarly, in *Gemstar*, the court noted that: "Courts have refused to apply the restriction to institutional investors, based on the PSLRA's legislative history." 209 F.R.D. at 454 (citations omitted).

Other courts in this District, and elsewhere within the Ninth Circuit, have, consistent with the *Gemsta*r/*Naiditch* rationale, declined to apply the limitation to institutional investors. *See In re Impax Laboratories, Inc. Sec. Litig.*, No. 04-04802, 2008 WL 1766943, at *9 (N.D.Cal. April 17, 2008) ("courts in this circuit have suggested that the professional plaintiff restrictions may not apply to institutional plaintiffs"); *Casden v. HPL Tech. Inc.,* No. 02-3510, 2003 U.S. Dist. LEXIS 19606, at *28 (N.D.Cal. September 29, 2003) ("the presumptive bar was not intended to apply to institutional plaintiffs or to thwart the purpose of the PSLRA."); *In re Critical Path, Inc. Sec. Litig.*, 156 F.Supp.2d 1102, 1112 (N.D. Cal. 2001) (appointing plaintiff that served in six class actions in the prior three years); *Naiditch v. Applied Micro Circuits Corp.*, No. 01-0649 K-AJB, 2001 WL 1659115, at *3 (S.D. Cal. Nov. 5, 2001) (appointing plaintiff that served in eleven other actions in the past three years); *In re Network Assoc., Inc. Sec. Litig.*, 76 F.Supp.2d 1017, 1030 (N.D. Cal. 1999).[2] In fact one court in the Ninth Circuit has already ruled that even if Detroit PFRS is a "professional plaintiff," the Court is well within its discretion, consistent with the PSLRA, to allow Detroit PFRS to serve anyway. *Brody v. Dot Hill Sys. Corp.*, 06-228, slip op. at 15-17 (S.D. Cal. June 23, 2006) (*See* Lopez Reply Decl., Ex. E).[3]

---

[2] There is no merit to the suggestion that the 5 in 3 ban is only lifted for institutional investors if no other institutional investors have moved. Courts in the Ninth Circuit have allowed appointment of an institution with more than five appointments when the competing lead plaintiff applicants included institutional investors. *See e.g. Casden,* 2003 U.S. Dist. LEXIS 19606 at *29; *Gemstar,* 209 F.R.D. at 454.

[3] Many Courts outside the Ninth Circuit have also declined to apply the restriction to institutional investors. For example, in *Police & Fire Ret. Sys. of the City of Detroit v. Safenet,* 06-5797, slip op. (S.D.N.Y. Feb. 21, 2007) at *7 (Lopez Reply Decl., Ex. F), the court, in appointing Detroit PFRS, noted that "it is clear that Congress did not intend to target institutional investors with this limitation." *See also In re Comverse Techn., Inc.*, No. 06-1825, 2006 WL 2792757 (E.D.N.Y. Sept. 27, 2006) ("the PSLRA's legislative history demonstrates a clear congressional preference to exept institutional investors [sic] from the 5-in-3 rule") *vacated on other grounds in In re Comverse Tech., Inc. Sec. Litig.*, No. 06-1825, 2007 WL 680779 (E.D.N.Y. Mar 02, 2007); *In re Pfizer Inc.*
(continued...)

   The competing movants' authorities purporting to hold otherwise are generally from other circuits, primarily the fifth and sixth circuits. Competing movants cite only one opinion from a court in the Ninth Circuit that applies the restriction to an institutional investor - - *Aronson v. McKesson HBOC, Inc.*, 79 F.Supp.2d 1146 (N.D.Cal.1999). However, in *Casden*, Judge Walker explained that, "*Aronson*, however, did not hold that institutional investors could *never* be exempt from the presumptive bar. Rather, Judge Whyte was unconvinced that he should exercise his discretion to exempt the particular plaintiff in question." *Casden,* 2003 U.S. Dist. LEXIS 19606 at *29. Insofar as *Aronson* cannot be distinguished, it is clearly a minority opinion that is contrary to the more recent trend in this District and in the Ninth Circuit. The opinions *Gemstar*; *Network Assocs.*; *Naiditch*; *Impax*; *Critical Path*; *Casden* and *Brody* all were issued subsequent to *Aronson.*

   Further, the Weiss/Iron Workers argument regarding Detroit PFRS' ineligibility rings hollow, as the Iron Workers themselves have been appointed as lead plaintiff or are seeking to be so appointed in six or seven actions commenced in the last three years. Iron Workers' sworn certification lists three cases where that fund now serves as lead plaintiff: *In re Harley-Davidson, Inc. Securities Litigation*, No. 2:05 00547-CNC (E.D.Wis.); *Beldoff v. Netlist, Inc., et al.*, 07-00677-DOC(MLGx) (C.D.Cal); *In Re Radian Securities Litigation*, No. 2:07-03375-MAM (E.D.Pa.), and two other cases in which the Iron Workers fund filed lead plaintiff motions and was awaiting the court's ruling: *Greenberg v. American Home Mortgage Invest Corp., et al.*, No. 2:07-3152-TCP-ETB (E.D.N.Y.); *In Re Focus Media Holding Limited Litigation*, No. 1:07-10617-LTS (S.D.N.Y.). In *Focus Media*, the Iron Workers have since been appointed lead plaintiff (*In Re Focus Media Holding Limited Litigation*, 07-10617, slip op. (S.D.N.Y. April 24, 2008) (Lopez Reply Decl., Ex G)), bringing their total to four cases. Moreover, three days after the Iron Workers moved for lead plaintiff appointment in this action, they moved in *Monsefi v. Orion Energy Systems, Inc. et al.*, No.

---

[3](...continued)
*Sec. Litig.*, 233 F.R.D. 334, 338 fn.4 (S.D.N.Y. 2005); *In re Fannie Mae Sec. Litig.*, 355 F.Supp.2d 261, 264 (D.D.C. 2005); *Meeuvenberg v. Best Buy Co., Inc.*, 03-6193 ADM/AJB, 2004 WL 950362, at *3 (D. Minn. Apr. 29, 2004); *In re DaimlerChlyslerAG Sec. Litig.*, 216 F.R.D. 291, 299 (D. Del. 2003).

1:08-01328-RJS (S.D.N.Y.). The Iron Workers have the largest loss of all competing movants in *Monsefi*. As a result, their application was not opposed by any other movants, although the deadline for opposition submission has passed. *See* Lopez Reply Decl., Ex H-K. Thus, the Iron Workers are now serving as lead plaintiff in four other cases and a fifth appointment is inevitable. So appointment in this case would be at least the sixth lead plaintiff appointment. Clearly, the Iron Workers understand that the PSLRA ban does not apply to institutional investors.

One or more of the competing movants has suggested that Detroit PFRS should be banned because the purpose of the PSLRA's restriction is to ensure that the Court does not appoint lead plaintiffs who are spread too thin as a result of their involvement in other class actions. This suggestion is wrong on the facts and the law. The Detroit PFRS' other pending actions do not impair its ability to serve as a lead plaintiff here. Moreover, the PSLRA "professional plaintiff" ban was not intended to address a concern that large sophisticated institutions will be "spread too thin" because their litigation activities include more than five PSLRA cases.

The Detroit PFRS has repeatedly demonstrated its ability to provide the highest caliber of representation to class members and proposed class members. *See, e.g., In re OM Group Sec. Litig.,* 02-2163 (N.D. Ohio) (settled for $92.4 million) (Lopez Reply Decl., Ex. A); *In re King Pharm. Sec. Litig.,* No. 03-77 (E.D. Tenn.) (settled for $38.25 million); *Id.*, Ex. B.; *In re Legato Sys. Sec. Litig.,* No. 00-2011 (N.D. Cal.) (settled for $85 million) (*Id.*, Ex. C); *In re KLA-Tencor Securities Litigation*, 06-cv-04065 (N.D. Cal.) (settlement pending for $65 million) *(Id.*, Ex.D). Like most pension funds, the Detroit PFRS has a board of trustees as well as a general counsel. They are assisted by additional personnel, in-house and outside, who are available to ensure that the Fund faithfully performs all of its investment and litigation duties. When pursuing securities and shareholder class actions, the Detroit PFRS regularly engages the services of several different approved outside law firms, including but not limited to Kirby McInerney LLP. *See* Lopez Reply Decl., Exs A-D, F and N. As a result, the Detroit PFRS is more than capable of handling this

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT'S MOTION FOR APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

6

securities fraud class action in the context of its overall universe of litigation matters.[4] *See Naiditch*, 2001 WL 1659115, at *9 (the suggestion that pension fund which had eleven other lead plaintiff appointments in the prior 3 years "lack[ed] the ability to properly supervise the prosecution of [that] action" was dismissed by the court as the pension fund had "a broad arsenal of resources available to assist in the prosecution of [all the] cases and actively supervise[d] and monitor[ed] the prosecution of [all] the cases in which it serve[ed] as a lead plaintiff."). Similarly, in *Gemstar*, the court noted:

> "The mere fact that the [movant] Fund has acted as lead plaintiff in seven cases over the past three years is unremarkable for an institutional investor in the business of managing $10 billion in assets. *See*, *e.g.*, *Naiditch*, 2001 WL 1659115, at *3...
>
> The record contains no evidence that the pension funds could not assume the duties of lead plaintiffs . . . and the [movant] represents that it is prepared to supervise this litigation, as well as the other cases in which it is or may become lead plaintiff.... The fact that other courts have allowed the [movant]... to act as lead plaintiff in more than five securities class actions demonstrates that it is equipped to do so. Moreover, the [movant's] experience acting as lead plaintiff will benefit the class. *See, e.g., Armour v. Network Assocs., Inc.*, 171 F.Supp.2d 1044, 1051 (N.D. Cal. 2001).

209 F.R.D. at 454. As the aforementioned courts have recognized it is not uncommon or problematic for a large pension fund to be involved in numerous legal matters at one time (securities or otherwise). One need look no further than Omaha, which is a named party in at least 9 other federal lawsuits in which there has been docket activity as recently as March 2008. *See* Lopez Reply Decl., Ex. L.[5] And as noted previously, the Iron Workers are currently leading multiple securities class actions.

---

[4] Incidently, in the *KLA Tencor* matter, which is one of the suits in which Detroit PFRS serves as lead plaintiff, the parties have agreed to settle the action. Lopez Reply Decl., Ex. D.

[5] The sworn certifications filed in this action on behalf of the Omaha Funds were both executed by Carol Ebdon who is "statutorily authorized" to act on behalf of the two Omaha Funds by reason of being "the Finance Director for the City of Omaha, Nebraska." (*See* Exs. 2 and 3 to Apr. 8, 2008 Declaration of Adrian J. Sawyer In Support of Omaha Funds' Motion) (Docket Entry#36).

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT'S MOTION FOR APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

7

In fact, the purpose of the PSLRA "professional plaintiff" restriction appears to be to limit the number of times that a non-institutional investor can serve as a lead plaintiff. Congress sought to limit individual investors "who own a nominal number of shares in a wide array of public companies [and who] permit lawyers readily to file abusive securities class action lawsuits." H.R. Conf. Rep. No. 104-369, at 32, 104th Cong., 1st Sess (1995). Those are the only "professional plaintiffs" discussed in the PSLRA's legislative history. The participation of institutional investors, on the other hand, is expressly encouraged. *See Id.* at 34 (explaining "[t]he Conference Committee seeks to increase the likelihood that institutional investors will serve as lead plaintiffs"). Institutional investors, such as Detroit PFRS "do not represent the type of professional plaintiff this legislation seeks to restrict." *Smith*, 206 F.Supp. 2d at 640. That is why time and again, courts in the Ninth Circuit have declined to apply the ban when institutional investors are involved.

As such, there is no reason why Detroit PFRS, which has, far and away, the largest loss among the competing movants, should not be appointed lead plaintiff here. In fact, Detroit PFRS' experience will benefit the class.

### B. Challenges to the Adequacy of Detroit PFRS' Certification Are Meritless

The Weiss/Iron Workers movants argue that Detroit PFRS is rendered inadequate because it "neglected" to disclose in its April 8 papers: a) that it was *considering* the possibility of filing a lead plaintiff motion more than a month later in a securities class action filed against Societe General; and b) its involvement in certain state court shareholder suits related to attempted corporate mergers or tender offers.[6] Iron Workers' & Weiss' 4/25/08 Opposition at p 7 (Docket Entry #71). This challenge is meritless. Detroit PFRS' presumption is not rebutted by non-disclosure of information that the PSLRA does not require movants to disclose.

---

[6] *Police & Fire Ret. Sys. of the City of Detroit et al. v. YAHOO! INC., et al.*, CA3561-CC (Del. Court of Chancery) (Lopez Reply Decl., Ex M) and *Police & Fire Ret. Sys. of the City of Detroit et al. v. The Bear Stearns Companies, Inc., et al.,* C.A. No.3638-VCP (Del. Court of Chancery) (Lopez Reply Decl., Ex. N).

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT'S MOTION FOR APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

8

The PSLRA clearly sets forth the information a lead plaintiff applicant is required to include in the certification. *See* 15 U.S.C. § 78u-4 (a)(2)(A) (i-vi). The required disclosures regarding previous litigation are limited to federal securities class actions filed in the last three years in which the movant has sought to serve as a representative party on behalf of a class. 15 U.S.C. § 78u-4 (a)(2)(A)(v). The PSLRA does not require the disclosure lawsuits, such as the *Societe Generale* matter, in which the applicant *may*, more than a month in the *future*, seek lead plaintiff appointment. Additionally, the PSLRA does not require disclosure of non-PSLRA, state court actions, such as the *Bear Stearns* and *Yahoo* matters. Non-disclosure of information that is not required to be disclosed does not evidence a movant's inadequacy. Thus, in *Brody, supra,* the Court rejected the argument that Detroit P&F was inadequate because its certification did not disclose certain prior lawsuits that are not required by the PSLRA to be disclosed. *Brody,* at 15-17. (Lopez Reply Decl., Ex. E).[7]

The Weiss/Iron Workers' challenges to Detroit PFRS' disclosures, in addition to being meritless, are curious given the source of the challenge. The Iron Workers' own certification and moving papers omit information about PSLRA federal securities class actions in which the Iron Workers have moved, or were about to move, for lead plaintiff appointment.

Specifically, the Iron Workers' certification, filed in this action on April 8, 2008, made no mention of the certification for lead plaintiff appointment the Iron Workers had executed that very day in *Monsefi*. *See* Lopez Reply Decl., Ex. H. The Iron Workers' second submission in this action, made on April 25, two weeks after their motion papers were filed in *Monsefi*, was silent about the fact that the Iron Workers moved in *Monsefi*.[8] Similarly, the Iron Workers' initial submission in this action did not disclose that the Iron Workers' prior lead plaintiff application in *Focus Media* was unopposed (and thus lead plaintiff appointment there was virtually guaranteed). Nor did the Iron

---

[7] The movant who charged Detroit PFRS with "inadequacy" by reason of those non-disclosures in *Brody* was represented by the same counsel as the Weiss/Iron Workers movants here.

[8] As noted above, the Iron Workers have the largest loss among competing movants in *Monsefi,* and no opposition was filed to their lead plaintiff motion. Lopez Reply Decl., Exs. H-K.

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT'S MOTION FOR APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

9

Workers' April 25 submission disclose that the Iron Workers had been appointed as lead plaintiff in that case. *See* Lopez Reply Decl., Ex. G. Clearly, the Iron Workers do not truly believe that information about other lawsuits, beyond that which is expressly called for by the PSLRA, is required on lead plaintiff motions.

### C.   Meruelo's Belated Transactional Information

Although challenges to Meruelo's claimed transactional information should, ordinarily, be raised in our opposition papers, Meruelo's improper and untimely submission leaves us with no choice but to raise the issue in this reply. Detroit PFRS' opposition brief (filed on April 25, 2008) noted that the transactional data supplied by Meruelo seemed lacking. Meruelo's April 8 moving papers did not include a loss calculation chart, and the transactional records appended to Mr. Meruelo's sworn certification did not add up. On April 25, 2008, more than two weeks after the initial motion papers were required to be filed in this case, Meruelo finally submitted a loss chart, that provided an explanation for some, but not all, of the concerns raised in Detroit PFRS' opposition brief. *See* Lopez Reply Decl., Ex. O. For the first time, Meruelo purports to explain which of his option purchases and sales opened positions, and which transactions merely closed out existing positions. Meruelo's decision to withhold this information until the day opposition papers were due unfairly deprived opposing movants of the opportunity to fully analyze the trade data and formulate a response in their opposition papers.

Moreover, the belated submission contradicts some of the information in Meruelo's prior sworn certification. Meruelo's sworn certification of April 4, 2008, reflects 167 put option contracts sold on January 11, 2008. *See* Lopez Reply Decl., Ex. P. The April 25, 2008 loss calculation chart submitted by his counsel only lists 98 puts sold on January 11. *Id.*, Ex. O. The new information is not accompanied by any sworn submission from Meruelo attesting to its accuracy or explaining the reason for the discrepancy between the two submissions.[9]

---

[9] Meruelo's April 25 submission is not a correction of prior calculation errors. His counsel now suggest that the records of the trades themselves in Meruelo's sworn certification was
(continued...)

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT'S MOTION FOR APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

10

Meruelo's belated submission also raises additional questions about his trades. In particular, Meruelo now claims to have been forced to purchase a total of 6,900 shares on January 18 and January 30, 2008, as a result of his prior sale of 448 put options. Yet, he also claims to have subsequently purchased 448 put options in order to cancel his put position. Lopez Reply Decl., Ex. O. If Meruelo had already been forced to purchase 6,900 shares pursuant to his sale of the puts, then 69 of those 448 put options had already been exercised, and there would have been no need to repurchase more than 379 options (i.e., 448 minus 379).

### III.   CONCLUSION

For the foregoing reasons, Detroit PFRS respectfully asks the Court to deny the various competing motions for lead plaintiff appointment, and enter an Order (a) appointing the Police & Fire Retirement System of the City of Detroit as Lead Plaintiff, and (b) approving its choice of Kirby McInerney LLP as Lead Counsel and Glancy Binkow & Goldberg LLP as Liaison Counsel for the Class.

Dated: May 2, 2008

                                                  Respectfully Submitted,

                                                  GLANCY BINKOW & GOLDBERG LLP

                                      By:   */s/ Peter Binkow*
                                              Peter Binkow # 173848
                                              Michael Goldberg # 188669
                                              1801 Avenue of the Stars, Suite 311
                                              Los Angeles, California 90067
                                              (310) 201-9150

---

[9](...continued)
inaccurate. Some courts have disqualified class representatives for filing PSLRA certifications that incorrectly described the class period trades. *See Shiring v. Tier Technologies, Inc.,* 244 F.R.D. 307, 317 (E.D. Va. 2007), *In re Safeguard Scientifics,* 216 F.R.D. 577, 582-583 (E.D. Pa. 2003).

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT'S MOTION FOR APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

11

|   |   |
|---|---|
| 1 | Susan G. Kupfer #141724 |
| 2 | One Embarcadero Center, Suite 760 |
|   | San Francisco, California  94111 |
| 3 | Telephone:     (415) 972-8160 |
|   | Facsimile:     (415) 972-8166 |
| 4 | Email: Skupfer@glancylaw.com |

*Proposed Liaison Counsel*

Ira M. Press
Sarah G. Lopez
KIRBY McINERNEY & SQUIRE, LLP
830 Third Avenue, 10th Floor
New York, New York  10022
(212) 371-6600
Email: ipress@kmllp.com

*Proposed Lead Counsel*

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT'S MOTION FOR APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

12