1  COUGHLIN STOIA GELLER
      RUDMAN & ROBBINS LLP
2  JEFFREY W. LAWRENCE (166806)
   100 Pine Street, Suite 2600
3  San Francisco, CA  94111
   Telephone:  415/288-4545
4  415/288-4534 (fax)                          LAW OFFICES BERNARD M.
   jeffreyl@csgrr.com                              GROSS, P.C.
5        – and –                                DEBORAH R. GROSS
   DARREN J. ROBBINS (168593)                   ROBERT P. FRUTKIN
6  RAMZI ABADOU (222567)                        Wanamaker Bldg., Suite 450
   655 West Broadway, Suite 1900                100 Penn Square East
7  San Diego, CA  92101                         Philadelphia, PA  19107
   Telephone:  619/231-1058                     Telephone:  215/561-3600
8  619/231-7423 (fax)                           215/561-3000 (fax)
   darrenr@csgrr.com                            debbie@bernardmgross.com
9  ramzia@csgrr.com                             rpf@bernardmgross.com

10  [Proposed] Co-Lead Counsel for Plaintiffs

11  [Additional counsel appear on signature page.]

12                    UNITED STATES DISTRICT COURT

13                  NORTHERN DISTRICT OF CALIFORNIA

14  In re SiRF TECHNOLOGY HOLDINGS, INC.)    Master File No. 3:08-cv-00856-MMC
    SECURITIES LITIGATION               )
15  _____ )    CLASS ACTION
                                        )
16  This Document Relates To:           )    IRON WORKERS' & WEISS' REPLY IN
                                        )    FURTHER SUPPORT OF THEIR MOTION
17        ALL ACTIONS.                  )    FOR APPOINTMENT AS LEAD
    _____ )    PLAINTIFF
18
                                             DATE:        May 16, 2008
19                                           TIME:        9:00 a.m.
                                             COURTROOM:      7
20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2
**Page**

3  I.    INTRODUCTION ................................................................................................1

4  II.   ARGUMENT ......................................................................................................1

5        A.    The Iron Workers and Weiss Are the Most Adequate Plaintiff...............................1

6        B.    Detroit P&F Failed to Justify Why the Court Should Lift the PSLRA's
               Presumptive Bar in Order to Grant Its Motion ...........................................6
7
8        C.    Detroit P&F's Prior Acts Also Weigh Against Lifting the Presumptive Bar
               Here..............................................................................................12

9        D.    Meruelo Is Neither Adequate Nor Typical ...............................................13

10 III.   CONCLUSION....................................................................................................15

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Page

## CASES

*Andrada v. Atherogenics, Inc.*,
  2005 U.S. Dist. LEXIS 6777 (S.D.N.Y. 2005) ................................................. 14

*Apple v. LJ Int'l, Inc.*,
  2008 U.S. Dist. LEXIS 12618 (C.D. Cal. 2008) ................................................. 3

*Aronson v. McKesson HBOC, Inc.*,
  79 F. Supp. 2d 1146 (N.D. Cal. 1999) ................................................. 3

*Blaich v. Employee Solutions, Inc.*,
  1997 WL 842417 (D. Ariz. 1997) ................................................. 11

*Bowman v. Legato Sys.*,
  195 F.R.D. 655 (N.D. Cal. 2000) ................................................. 3

*Ferrari v. Gisch*,
  225 F.R.D. 599 (C.D. Cal. 2004) ................................................. 4

*In re Advanced Tissue Scis. Sec. Litig.*,
  184 F.R.D. 346 (S.D. Cal. 1998) ................................................. 4

*In re Bank One S'holders Class Actions*,
  96 F. Supp. 2d 780 (N.D. Ill. 2000) ................................................. 14

*In re Cavanaugh*,
  306 F.3d 726 (9th Cir. 2002) ................................................. 1, 2, 6, 13

*In re Cendant Corp. Sec. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ................................................. 2

*In re Conseco, Inc. Sec. Litig.*,
  120 F. Supp. 2d 729 (S.D. Ind. 2000) ................................................. 3, 14

*In re Critical Path, Inc.*,
  156 F. Supp. 2d 1102 (N.D. Cal. 2001) ................................................. 11

*In re Flight Safety Techs., Inc. Sec. Litig.*,
  231 F.R.D. 124 (D. Conn. 2005) ................................................. 3

*In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*,
  209 F.R.D. 447 (C.D. Cal. 2002) ................................................. 3, 6, 11

*In re Network Assocs. Sec. Litig.*,
  76 F. Supp. 2d 1017 (N.D. Cal. 1999) ................................................. 3

*In re OfficeMax Inc., Sec. Litig.*,
  No. 1:00cv2432, slip op. (N.D. Ohio Mar. 2001) ................................................. 2

Page

*In re Party City Sec. Litig.*,
    189 F.R.D. 91 (D.N.J. 1999)...............................................................................3

*In re Razorfish, Inc. Sec. Litig.*,
    143 F. Supp. 2d 304 (S.D.N.Y. 2001)..................................................................3

*In re Tarragon Corp. Sec. Litig.*,
    2007 U.S. Dist. LEXIS 91418 (S.D.N.Y. 2007)..................................................3

*In re Telxon Corp. Sec. Litig.*,
    67 F. Supp. 2d 803 (N.D. Ohio 1999)..................................................................2

*In re Unumprovident Corp. Sec. Litig.*,
    2003 U.S. Dist. LEXIS 24633 (E.D. Tenn. 2003) ..............................................7

*In re Versata, Inc.*,
    2001 U.S. Dist. LEXIS 24270 (N.D. Cal. 2001) ........................................1, 2, 6

*Naiditch v. Applied Micro Circuits Corp.*,
    2001 U.S. Dist. LEXIS 21374 (S.D. Cal. 2001) ...............................................11

*Osher v. Guess?, Inc.*,
    2001 U.S. Dist. LEXIS 6057 (C.D. Cal. 2001)..................................................12

*Pivens v. Sykes Enters.*,
    137 F. Supp. 2d 1295 (M.D. Fla. 2000)..............................................................11

*Schriver v. Impac Mortgage Holdings, Inc.*,
    2006 U.S. Dist. LEXIS 40607 (C.D. Cal. 2006)..................................................2

*Smith v. Suprema Specialties, Inc.*,
    206 F. Supp. 2d 627 (D.N.J. 2002) ....................................................................11

*Thompson v. Shaw Group, Inc.*,
    2004 U.S. Dist. LEXIS 25641 (E.D. La. 2004) .......................................2, 6, 11

*Wenderhold v. Cylink Corp.*,
    188 F.R.D. 577 (N.D. Cal. 1999).........................................................................3

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78u-4(a)(3)(B)..............................................................................................1, 6
    §78u-4(a)(3)(B)(iii)(II) .......................................................................................5
    §78u-4(a)(3)(B)(vi)......................................................................................5, 6, 7
    §78u-4(a)(4) .......................................................................................................13
    §78u-4(e)..............................................................................................................4

**Page**

**RULES**

Federal Rules of Civil Procedure
        Rule 23 ....................................................................................................................1, 2, 5, 6
        Rule 23(e)(3) .....................................................................................................................13

1    **I.     INTRODUCTION**

2          Before the Court are four remaining motions for appointment as lead plaintiff filed by: (1)

3    Detroit P&F; (2) Iron Workers and Weiss; (3) Alex Meruelo; and (4) the Omaha Funds.[1]   The

4    Private Securities Litigation Reform Act of 1995's ("PSLRA") "simple three-step process for

5    identifying the lead plaintiff" yields an irrefutable result: the Iron Workers and Weiss should be

6    appointed lead plaintiff.  *See In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002).  The Iron Workers

7    and Weiss' motion was timely, they suffered the largest loss of any eligible applicant and, "based on

8    the information [they have] provided in [their] pleadings and declarations," otherwise satisfy the

9    requirements of Rule 23.  *Id.* at 729-30.  Finally, no applicant has – or can – provide the evidence

10   required to rebut the presumption that lies in favor of the Iron Workers and Weiss.  The Iron

11   Workers and Weiss should be appointed lead plaintiff.

12   **II.    ARGUMENT**

13        **A.     The Iron Workers and Weiss Are the Most Adequate Plaintiff**

14          Unlike the Iron Workers and Weiss, Detroit P&F and Meruelo have provided the Court no

15   meaningful information beyond bare certification forms to enable the Court to "make its initial

16   determination" of whether they satisfy the typicality and adequacy requirements of Rule 23.  *See*

17   *Cavanaugh*, 306 F.3d at 730 (explaining that at step two, court must determine, based on the

18   information provided in pleadings and declarations, whether applicant satisfies the requirements of

19   Rule 23).  Thus, it is the Iron Workers and Weiss who have amply "demonstrated the ability to

20   represent the class and direct the litigation without undue influence from counsel."  *In re Versata,*

21   *Inc.*, 2001 U.S. Dist. LEXIS 24270, at *21 (N.D. Cal. 2001) (Illston, J.).

22          Although the other movants argue otherwise, neither the PSLRA nor this Court requires a

23   pre-litigation relationship for a "group" to qualify as the "most adequate plaintiff."  *See* 15 U.S.C.

24   §78u-4(a)(3)(B); *Versata*, 2001 U.S. Dist. LEXIS 24270, at *19-*20 ("[r]equiring a pre-litigation

25

26   ---
     [1]     The other movants appear to have abandoned their motions either by failing to file an
     opposition or acknowledging that they did "not appear to have the largest financial interest in the
27   litigation."  *See* Movant Christopher Collins' Response to the Competing Motions for Appointment
     of Lead Plaintiff at 2 (Docket #65).

28

IRON WORKERS' & WEISS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR
APPOINTMENT AS LEAD PLAINTIFF - 3:08-cv-00856-MMC                              - 1 -

1  relationship . . . is too rigid").[2]  The courts in this district and across the country routinely appoint

2  small groups of investors that demonstrate an "ability to represent the class and direct the litigation

3  without undue influence from counsel." *Id.* at *21; *Schriver v. Impac Mortgage Holdings, Inc.*, 2006

4  U.S. Dist. LEXIS 40607, at *34-*35 (C.D. Cal. 2006) ("Based on the Jones Group's small number

5  of members [*i.e.*, two], the qualifications of its members and selected counsel, and its members'

6  stated ability and willingness to coordinate in the prosecution of this action, the Court concludes that

7  the Jones Group is the most adequate plaintiff and will appoint it as such."); *see also* Iron Workers'

8  & Weiss' Oppo. at 9 (citing additional cases).[3]

9        As Judge Illston previously determined in *Versata*, a small group such as the Iron Workers

10  and Weiss that "possesses both sophistication and business knowledge, as well as substantial

11  individual losses" has a "meaningful incentive for a vigorous prosecution of the action," particularly

12  when the "group also includes an institutional investor."  2001 U.S. Dist. LEXIS 24270, at *26

13  _____

14  [2]     Movant Meruelo, for example, relies on *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803
       (N.D. Ohio 1999), for the proposition that where more than one class member submits a joint lead

15  plaintiff motion, the movants must possess a relationship that pre-dates the litigation.  *See*
       Memorandum of Points and Authorities in Further Support of Motion for Appointment of Alex

16  Meruelo as Lead Plaintiff and for Approval of Lead Plaintiff's Choice of Lead Counsel and in
       Opposition to the Competing Motions ("Meruelo Oppo.") at 5 (Docket #59).  Unfortunately for

17  Meruelo, Judge O'Malley (the very judge who penned *Telxon*) herself rejected this unduly rigid
       misinterpretation of *Telxon* as overly broad.  *See In re OfficeMax Inc., Sec. Litig.*, No. 1:00cv2432,

18  slip op. (N.D. Ohio Mar. 2001), attached as Ex. A to the Declaration of Darren J. Robbins in Support
       of Iron Workers' & Weiss' Reply in Further Support of Their Motion for Appointment as Lead

19  Plaintiff ("Robbins Reply Decl.").  "*Telxon* does not stand for the proposition, however, that an
       investor whose financial stake in the litigation entitles he, she or it to presumptive lead plaintiff

20  status could never join forces with other investors in a lead plaintiff group."  *Id.* at 13-14.  Rather,
       the "Court must examine each proposed lead plaintiff group on a case by case basis, assessing the

21  size of the group, the purpose for adding any particular individual or entity to the group and the
       likelihood that the group, as constituted collectively, could serve the lead plaintiff function

22  contemplated by the PSLRA."  *Id.* at 14.  The Iron Workers and Weiss not only **could** function
       collectively as lead plaintiff, **they are already doing so**.  They have conferred prior to making the

23  motion, reviewed pleadings in the case and are actively directing the litigation.

24  [3]     Notably, the Ninth Circuit in *Cavanaugh* vacated the trial court's order appointing a lone
       individual as lead plaintiff and directed the district court on remand to "proceed based on the

25  presumption that the Cavanaugh **group** is the most adequate plaintiff and has made a prima facie
       showing of satisfying the requirements of Rule 23."  306 F.3d at 739; *see also In re Cendant Corp.*

26  *Sec. Litig.*, 264 F.3d 201, 268 (3d Cir. 2001) ("we believe that the District Court correctly identified
       the CalPERS **Group** as the presumptively most adequate plaintiff").

27        Unless otherwise noted, all emphasis is added and citations are omitted.

28

IRON WORKERS' & WEISS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR
APPOINTMENT AS LEAD PLAINTIFF - 3:08-cv-00856-MMC                                      - 2 -

1   (commenting that group was "eligible to serve as lead plaintiff" because it "exhibited a cooperative

2   spirit and awareness of the need to plan ahead"). The evidence provided by Iron Workers and Weiss

3   here amply illustrates their adequacy. *See* Declaration of Ramzi Abadou in Support of Iron

4   Workers' & Weiss' Omnibus Opposition to All Other Motions for Appointment as Lead Plaintiff

5   ("Abadou Oppo. Decl."), Exs. A-B.[4]

6           It is not surprising, then, that each of the authorities Detroit P&F and Meruelo rely upon in an

7   attempt to convince this Court that the Iron Workers and Weiss are somehow not the presumptively

8   most adequate plaintiff actually ***supports*** the appointment of the Iron Workers and Weiss. *See, e.g.,*

9   *In re Flight Safety Techs., Inc. Sec. Litig.*, 231 F.R.D. 124, 131 (D. Conn. 2005) (institution and

10  individual appointed lead plaintiff because they "'will enhance, rather than reduce, the efficiency of

11  the litigation'"); *In re Conseco, Inc. Sec. Litig.*, 120 F. Supp. 2d 729, 735 (S.D. Ind. 2000)

12  (appointing two previously unrelated investors lead plaintiff because they submitted affidavits

13  demonstrating they were capable of adequately representing the class); *Wenderhold v. Cylink Corp.*,

14  188 F.R.D. 577, 586 (N.D. Cal. 1999) (aggregation permissible when it "shift[s] control of the

15  litigation away from the lawyers and to the investors"); *In re Party City Sec. Litig.*, 189 F.R.D. 91,

16  111 (D.N.J. 1999) (two investors appointed lead plaintiff); *In re Gemstar-TV Guide Int'l, Inc. Sec.*

17  *Litig.*, 209 F.R.D. 447, 450 (C.D. Cal. 2002) (appointing two previously unrelated investors lead

18  plaintiff).[5]

19  _____

20  [4]     Mr. Kramer, the Iron Workers' administrator, has also submitted a supplemental declaration

21  to address the misguided attempts by the other movants to paint the Iron Workers and Weiss in a
    less-than-favorable light. *See* Supplemental Declaration of Dennis Kramer (Robbins Reply Decl.,

22  Ex. B).

23  [5]     The remaining cases cited by Detroit P&F and Meruelo are easily distinguished. Notably,
    the Iron Workers and Weiss suffer from ***none*** of the defects identified therein. *See, e.g., Apple v. LJ*

24  *Int'l, Inc.*, 2008 U.S. Dist. LEXIS 12618, at *12 (C.D. Cal. 2008) (declining to appoint group that
    failed to evidence their ability to direct the litigation); *In re Tarragon Corp. Sec. Litig.*, 2007 U.S.

25  Dist. LEXIS 91418, at *6 (S.D.N.Y. 2007) (declining to consider two groups because "evidence that
    the members of the group will act collectively and separately from their lawyers" was "wholly

26  lacking"); *Gemstar-TV Guide*, 209 F.R.D. at 450 (rejecting lawyer-driven *ex post* recombination of
    ***group of seven*** investors who attempted to leap-frog investor with largest financial interest to

27  achieve appointment); *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 308-09 (S.D.N.Y. 2001)
    (declining to consider motion by group comprised of a large financial institution, two "day-trading"

28  companies and an individual investor, largely due to counsel's concession at oral argument that they

1    Detroit P&F suggests that the Iron Workers' "trade data is clearly inaccurate."  *See*

2    Memorandum of Points and Authorities of the Police and Fire Retirement System of Detroit in

3    Opposition to Competing Motions for Appointment of Lead Plaintiff and Approval of Lead Counsel

4    ("Detroit P&F Oppo.") at 7 (Docket #17).  Detroit P&F is wrong.

5    With respect to the 2/5/08 sales, as indicated on the chart submitted with Iron Workers'

6    initial motion, "either the actual price or the mean price . . . will be used depending on which value is

7    *higher*."  *See* Declaration of Darren J. Robbins in Support of Iron Workers Local No. 25 Pension

8    Fund's and Kenneth L. Weiss' Motion for Appointment as Lead Plaintiff and for Approval of their

9    Selection of Lead Counsel ("Robbins Decl."), Ex. B.  The Iron Workers did not represent that SiRF

10   stock traded at $11.81 on 2/5/08 as Detroit P&F believes, but rather, this calculation is a

11   conservative estimate of recoverable losses presented in accord with the PSLRA's damage limitation

12   provision.  *See* 15 U.S.C. §78u-4(e).  The Iron Workers actually sold the stock on 2/5/08 at $8.045

13   and $8.2317 per share, which only *increases* its loss calculation if, in presenting its damages, the

14   Iron Workers had paid no deference to the express limitation provisions of 15 U.S.C. §78u-4(e).  *See*

15   Robbins Reply Decl., Ex. C.  And, while the Iron Workers' sales on 2/4/08 at $11.29 were below the

16   $16.10 closing price for the day, they were well within the *after-market* trading range for the day, as

17   they were sold in the after-market via Unx Inc.  *Id.*  Thus, Detroit P&F's assertion that "[w]e do not

18   know what the Iron Workers' true loss was," (Detroit P&F Oppo. at 7) is erroneous and should be

19   disregarded.[6]

20

21

22   "had only modest communication with their respective clients before bringing the instant motions"
     and there was "nothing to suggest that they will collectively ride herd on counsel"); *Bowman v.*

23   *Legato Sys.,*  195 F.R.D. 655, 658 (N.D. Cal. 2000) (refusing to appoint sub-group of *six investors*
     *"hand-picked" by lawyers* from group of more than 1,000 shareholders); *Aronson v. McKesson*

24   *HBOC, Inc.*, 79 F. Supp. 2d 1146, 1154 (N.D. Cal. 1999) (refusing to consider groups as large as
     *4,000 class members*  vying for appointment); *In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d

25   1017, 1018 (N.D. Cal. 1999) (declining to consider groups consisting of literally *thousands of*
     *investors* "with no decisionmaking structure" for appointment).

26   [6]    Even if the Iron Workers had made an error – and it assuredly did not – such "relatively

27   minor miscalculations do not serve as the basis for disqualif[ication]." *Ferrari v. Gisch*, 225 F.R.D.
     599, 605 (C.D. Cal. 2004); *see also In re Advanced Tissue Scis. Sec. Litig.*, 184 F.R.D. 346, 351 n.12

28   (S.D. Cal. 1998) (noting that court "does not find the McKitty Group's computational and

1    Finally, the Omaha Funds speculate that Iron Workers "will *likely* prevail in its attempts to

2    serve as the lead plaintiff in both *Eastriver* and *Orion*, meaning that it will have assumed that role in

3    5 separate matters during the past 3 years." Omaha Funds' Response to Motions for Appointment as

4    Lead Plaintiff ("Omaha Funds' Oppo.") at 3 n.1 (Docket #70). The Omaha Funds' conjecture may

5    (or may not) turn out to be true, but makes little difference as unlike Detroit P&F's fiduciaries which

6    have attempted to wrest control of no less than *nineteen* state and federal class action cases in the

7    last 2 years alone (in addition to their myriad of other litigation and non-litigation responsibilities),

8    the Iron Workers is only serving as lead plaintiff in *four* cases and has already taken steps to refrain

9    from making any additional lead plaintiff motions while its current cases are pending. It has also

10    confirmed it will first advise this Court in the event exceptional circumstances warrant its

11    involvement in another action. *See* Supplemental Declaration of Dennis Kramer, ¶4 (Robbins Reply

12    Decl., Ex. B). The Iron Workers has thoughtfully articulated that it will limit its involvement with

13    respect to future securities class action cases to ensure that it continues to offer active, engaged

14    oversight. *Id.*

15    On the date this motion was due, April 8, 2008, the Iron Workers' certification properly

16    indicated it had been appointed as lead plaintiff in only three cases and was seeking to serve as a

17    representative party in two more. *See* Robbins Decl., Ex. A. Thereafter, Iron Workers deemed it

18    appropriate to move for appointment in *Orion Energy Sys.*, and indeed, was the only institutional

19    investor to do so. On April 24, 2008, Iron Workers was appointed as lead plaintiff in *In re Focus*

20    *Media*, which brought Iron Workers' total caseload to four. After being appointed in *Focus Media*,

21    Iron Workers conferred with counsel and believes that, notwithstanding 15 U.S.C. §78u-

22    4(a)(3)(B)(vi), the facts and circumstances present here still warrant its appointment together with

23    Mr. Weiss as lead plaintiff.

24    The PSLRA provides that the presumption "may be rebutted only upon *proof* . . . that the

25    presumptively most adequate plaintiff" does not satisfy the requirements of Rule 23. 15 U.S.C.

26    _____

27    typographical errors to be so substantial as to overcome the statutory presumption in favor of the
McKitty Group").

28

§78u-4(a)(3)(B)(iii)(II); *see also Cavanaugh*, 306 F.3d at 729 n.2, 732 n.10.  No movant can – or has – provided any such proof.  And, unlike Detroit P&F, the "record contains no evidence that [Iron Workers] could not assume the duties of lead plaintiffs."  *Gemstar*, 209 F.R.D. at 454.  As such, the Iron Workers and Weiss should be appointed as lead plaintiff.

**B.    Detroit P&F Failed to Justify Why the Court Should Lift the PSLRA's Presumptive Bar in Order to Grant Its Motion**

To be the presumptively most adequate lead plaintiff, a movant must not only possess the largest financial stake, it must also satisfy the PSLRA's lead plaintiff provisions and the requirements of Rule 23.  *See* 15 U.S.C. §78u-4(a)(3)(B); *Cavanaugh*, 306 F.3d at 730.  Detroit P&F is not entitled to the presumption because it has not – and cannot – make the required showing to warrant lifting the presumptive bar.  *See* 15 U.S.C. §78u-4(a)(3)(B)(vi).

The PSLRA's presumptive bar precludes a class member from serving as lead plaintiff in more than five cases in three years "[e]xcept as the court may otherwise permit."  15 U.S.C. §78u-4(a)(3)(B)(vi).  Thus, where "a court determines that an institutional investor's participation in five or more litigations poses a *risk* of overstretch, the institutional investor may be disqualified under the statutory bar."  *Thompson v. Shaw Group, Inc*., 2004 U.S. Dist. LEXIS 25641, at *20-*22 (E.D. La. 2004) (finding a "risk of overstretch where Detroit P&[F] would be directing a total of eight concurrent lawsuits were Detroit P&[F] selected as Lead Plaintiff here as well").  Here, the appointment of Detroit P&F as the sole lead plaintiff would not simply pose a *risk* of overstretch, it would ensure it.

Detroit P&F knew it was presumptively barred from serving as lead plaintiff when it filed its lead plaintiff application on April 8, 2008.  And, just since the filing of its motion here, Detroit P&F authorized yet another lead plaintiff application to be filed on May 11, 2008.[7]  When deciding whether or not Detroit P&F has met "the burden [imposed] upon the presumptively barred candidate

---

[7]    A cursory review of the 2005-2008 board minutes available on Detroit's website, www.rscd.org, reveals a troubling pattern: it appears Detroit P&F has *never* declined to file an action or seek lead plaintiff status in a *single* case suggested by counsel.  That Detroit P&F indiscriminately rubber stamps counsel's suggestions is indicia of an inability to "direct the litigation without undue influence from counsel."  *Versata*, 2001 U.S. Dist. LEXIS 24270, at *21.

IRON WORKERS' & WEISS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR
APPOINTMENT AS LEAD PLAINTIFF - 3:08-cv-00856-MMC                                    - 6 -

to demonstrate why the bar should not be applied," the Court should consider that Detroit P&F and

its fiduciaries are currently not only serving as representatives and lead plaintiffs in *federal* securities

fraud class actions, but are also involved in, and must attend to, numerous other complex shareholder

litigations. *In re Unumprovident Corp. Sec. Litig.*, 2003 U.S. Dist. LEXIS 24633, at *19 (E.D. Tenn.

2003). And, it appears Detroit P&F is continuing to authorize even more litigation. There is more

than a mere "risk" of overstretch here as Detroit P&F and its fiduciaries already have unprecedented

responsibilities in at least 10 other cases in which they are currently serving as a representative

party:[8]

- *McLain v. WSB Fin. Group, Inc.*, No. 07-cv-1747 (W.D. Wash.): On March 10, 2008, Detroit P&F was appointed as *sole lead plaintiff* in this case. On April 11, 2008, Detroit P&F filed a 121-paragraph consolidated complaint against nine individual defendants, WSB Financial and its underwriter. During May and June of 2008, Detroit P&F will be responsible for preparing and filing opposition briefs to the motions to dismiss filed by the 11 defendants in this case. Within 10 days of the court's ruling on the motion to dismiss (*i.e.*, likely mid-July 2008), Detroit P&F is required pursuant to a scheduling order to agree upon a case management schedule with defendants and will then be responsible for commencing plaintiff's pre-trial discovery and responding to defendants' discovery.

- *In re Medtronic Inc. Sec. Litig.*, No. 07-4564 (D. Minn.): Detroit General was appointed *sole lead plaintiff* in this securities fraud action on February 4, 2008. Detroit filed an 81-page 196-paragraph consolidated complaint detailing defendants' alleged fraud, including defendants' $25 million of insider selling. Detroit is currently scheduled to prepare and file oppositions to defendants' motion(s) to dismiss during June, July and August 2008. If those motions are denied, discovery in this action will commence in late 2008.

- *Police and Fire Ret. Sys. of the City of Detroit v. SafeNet, Inc.*, No. 06-5797 (S.D.N.Y.): Detroit P&F was appointed lead plaintiff in this case on February 21, 2007. The case currently involves 11 defendants and is a complex accounting fraud

---

[8]     Mr. Stampor is the fiduciary overseeing both Detroit P&F's and Detroit General's shareholder litigation. Mr. Terrell (Detroit General) and Ms. Thomas (Detroit P&F) directly report to Mr. Stampor. *See* Robbins Reply Decl., Ex. D. In addition to his numerous other duties as Executive Secretary to both funds, Mr. Stampor is purportedly monitoring at least 13 concurrent shareholder actions in jurisdictions across the country from San Francisco to Minnesota to Rochester, NY. And, despite Detroit P&F's likely protestations to the contrary, Mr. Stampor's status as both funds' fiduciary *is* relevant to this Court in assessing whether it should lift the bar here. *See* 15 U.S.C. §78u-4(a)(3)(B)(vi) (in determining whether the presumptive bar should be lifted, a district court must consider not only the prior involvement of a lead plaintiff, but also the prior involvement of those who serve as an "an officer, director, or fiduciary of a lead plaintiff").

1  securities class action which spans a thirty-eight month class period during 2003,
2  2004, 2005 and 2006. Further complicating the case, private equity firm Vector
3  Capital acquired SafeNet in April 2007 for $634 million after the company was
   swept up in the stock option backdating scandal, which revealed problems in
4  SafeNet's accounting of stock options for officers and directors. In early 2007,
5  Detroit P&F and its co-lead plaintiffs obtained permission to partially lift the
   discovery stay and issued document preservation subpoenas to numerous third
6  parties. Detroit P&F is currently overseeing a factual investigation and forensic
7  accounting analysis and is in the process of preparing a complaint relating to the
   backdating of more than 1.3 million options as well as the restatement of more than 5
   years of SafeNet's previously reported financial results.

8      • *In re Marvell Tech. Group, Inc. Sec. Litig.*, No. 06-6286 (N.D. Cal.): Detroit P&F
9        was appointed as a lead plaintiff on February 7, 2007. In addition to coordinating the
         prosecution of the case with two other institutions based in Italy and Puerto Rico,
10       Detroit P&F is attempting to actively oversee and direct the efforts of three different
11       law firms. On August 16, 2007, Detroit P&F and its co-lead plaintiffs filed a 275-
         paragraph consolidated complaint, alleging violations of the Securities Exchange Act
12       of 1934 which occurred over a forty-five month period arising out of the backdating
13       of more than 6 million options and resulted in a massive $350 million accounting
         restatement. On October 18, 2007, defendants filed four separate motions to dismiss
14       the complaint. On December 21, 2007, Detroit P&F and its co-lead plaintiffs filed a
         seventy-two page omnibus opposition to defendants' motions to dismiss. The court
15       held a hearing on February 15, 2008 concerning the motions to dismiss and Detroit
16       P&F will be charged with overseeing the discovery in this action which will
         commence upon the issuance of an order denying defendants' motions to dismiss.

17      • *Garber v. KLA-Tencor Corp.*, No. 06-4065 (N.D. Cal.): Detroit P&F was appointed
         lead plaintiff in this case on October 13, 2006. The action involves damages of as
18       much as $400 million. Detroit P&F is charged with directing the efforts of no less
19       than five law firms acting as class counsel. On March 6, 2007, Detroit P&F and its
         co-lead plaintiffs filed a 371-paragraph consolidated complaint alleging 18
20       defendants violated the securities laws over a period of almost 60-months. On May
21       21, 2007, defendants filed 7 different motions to dismiss totaling more than 200
         pages. On September 9, 2007, Detroit P&F and its co-lead plaintiffs filed a 155-page
22       opposition to defendants' 7 motions to dismiss. Detroit P&F is currently engaged in
         extensive confirmatory discovery prior to seeking final approval of a proposed
23       settlement.

24      • *Brody v. Dot Hill Sys. Corp.*, No. 06-cv-0228 (S.D. Cal.): On June 23, 2006, Detroit
         P&F and Detroit General were appointed lead plaintiff in this action. On August 25,
25       2006, Detroit P&F filed a 112-page, 214-paragraph consolidated complaint.
         Defendants filed a motion to dismiss. On March 15, 2007, the court granted
26       defendants' motion to dismiss with leave to amend. Detroit P&F filed a second
         amended complaint on April 20, 2007. On November 28, 2007, the parties requested
27       a stay of the proceeding pending mediation. That mediation was unsuccessful.
         Throughout May and June 2008, Detroit P&F will be preparing and filing opposition
28       briefs to defendants' motions to dismiss the 214-paragraph consolidated complaint.

A hearing on the motions to dismiss will be held on August 14, 2008. Discovery will commence thereafter if defendants' motions to dismiss are denied.

- *Laborers Local 100 and 397 Pension Fund v. Bausch & Lomb, Inc.*, No. 06-cv-06296 (W.D.N.Y.): On October 26, 2007, Detroit P&F was appointed a lead plaintiff in this action. On January 7, 2008, Detroit P&F filed a 110-page, 210-paragraph amended complaint against 15 defendants. On March 7, 2008, defendants filed a motion to dismiss. Detroit P&F is currently in the process of preparing an opposition to defendants' motion to dismiss.

- *In re Int'l Rectifier Corp. Sec. Litig.*, No. 07-2544 (C.D. Cal.): Detroit General serves as lead plaintiff in this action involving an accounting fraud that occurred at International Rectifier during a class period that runs from 2003 to 2007. Lead plaintiff filed a 183-page, 341-paragraph consolidated complaint on January 14, 2008. Defendants filed five different motions to dismiss on March 6, 2008. Lead plaintiffs filed a 75-page opposition to defendants' five motions to dismiss on April 11, 2008.

- *In re R&G Fin. Corp. Sec. Litig.*, No. 05-CV-04186 (S.D.N.Y.): Detroit General is a lead plaintiff in this securities class action and is charged with overseeing two law firms as lead counsel. This action arises out of an accounting scandal in which defendants overstated R&G's income by $180 million over a 49-month period, wiping out over $900 million in market value. Defendants include R&G, six officers and R&G's auditor, PricewaterhouseCoopers. On September 10, 2007, the court denied defendants' motions to dismiss and defendants answered the consolidated complaint on October 12, 2007. Lead plaintiff is currently in the process of negotiating, preparing and filing a Stipulation of Settlement and briefing in support thereof.

- *In re Levi Strauss & Co. Sec. Litig.*, No. C-03-05605 (N.D. Cal.): The Detroit Funds are lead plaintiff in this case brought on behalf of persons who purchased approximately $1 billion of *Levi Strauss* debt securities issued in debt offerings that occurred in 2001 and 2003. This action involves the manipulation of the company's reported net income for fiscal years 1998, 1999, 2000, 2001 and 2002. The case is brought against 17 defendants in connection with the alleged dissemination of false offering documents. Currently Detroit is responsible for overseeing the negotiation and preparation of a stipulation of settlement as well as the preparation and filing of hundreds of pages of briefing and attached exhibits to be filed in support of settlement as well as responses to any objections that might be lodged in connection therewith.

In addition to this case and the 10 or more federal securities fraud class actions that Detroit P&F's fiduciaries are currently attempting to oversee, Detroit P&F's fiduciaries are also currently responsible for directing the following additional shareholder class and derivative actions:

- *Trustees of the Police and Fire Retirement System of the City of Detroit v. Clapp*, No. 08-cv-01515 (S.D.N.Y.) (MBIA): Detroit P&F filed a shareholder derivative

complaint in this action on February 13, 2008.  The 63-page,  156-paragraph complaint details defendants' breaches of fiduciary duty for failing to properly oversee and/or implement policies, procedures, and rules to ensure compliance with federal and state laws requiring the dissemination of accurate financial statements, and restricting the misuse of material, non-public corporate information concerning MBIA's common stock as well as causing it to be a target of investigations by the SEC, New York Insurance Department and Massachusetts Secretary of State.  The complaint names 12 defendants.  On March 31, 2008, the court entered a Stipulation and Order extending the time for all defendants to respond to the complaint until June 24, 2008.

- *In re Yahoo! Inc., Takeover Litigation*, C.A. No. 3561 (Del. Ch. Ct.): Detroit P&F and Detroit General are serving as the lead plaintiffs in this shareholder class action filed on February 21, 2008.  The action involves a $42 billion transaction and was brought by Detroit P&F against Yahoo! and its board of directors alleging that they acted to thwart a takeover bid by Microsoft, which would provide a 62% premium over Yahoo!'s pre-offer share price and have  instead approved improper defensive measures.  The day following the filing of the complaint, Detroit P&F filed a motion to expedite proceedings seeking immediate discovery and requesting a trial of the case *in May 2008*.  On March 20, 2008, Yahoo! and the individual defendants filed an opposition to plaintiffs' motion for expedited proceedings.  Detroit P&F is currently in the process of overseeing the preparation, filing and resolution of various discovery disputes and "emergency" motions to compel discovery and preparing for the trial of this case which they seek conduct this month.  In fact, in the 2 months since Detroit P&F commenced this intense shareholder takeover litigation, the docket in the case has had no less than 277 entries.

- *Police & Fire Retirement System of the City of Detroit v. Commerce Bancorp, Inc.*, No. 07cv5905 (D.N.J.):  Detroit P&F filed a 120-paragraph shareholder derivative complaint on December 11, 2007 in this action.  The complaint alleged that defendants breached their fiduciary duties in connection with the $7.1 billion sale of Commerce Bancorp, Inc. to Toronto-Dominion Bank.  Detroit P&F is currently in the process of attempting to obtain approval of the settlement of this merger litigation.  The terms of the proposed settlement have been objected to and a settlement hearing is scheduled for May 2008.

- *Trustees of the Police and* Fire *Retirement System of the City of Detroit v. Callen*, C.A. No. 3521 (Del. Ch. Ct.) (Ambac Financial Group, Inc.): Detroit P&F filed a 55-page, 174-paragraph derivative complaint a little over 2 months ago on February 13, 2008.  On March 5, 2008, it was stipulated among counsel that Detroit P&F would be responsible for the prosecution of this case.  The complaint names as defendants 17 directors and officers of Ambac.  The complaint details breaches of fiduciary duties for (i)  failing to properly oversee and/or implement policies, procedures, rules to ensure compliance with federal and state laws requiring the dissemination of accurate financial statements, and restricting the misuse of material, non-public corporate information concerning Ambac's common stock and (ii) causing the company to be sued for, and exposed to liability for violations of *inter alia*, the Securities Exchange Act of 1934, as well as causing it to be a target of regulatory investigations by the Massachusetts Secretary of State.

Were the Court to grant its motion here, Detroit P&F's active case load would be increased to *fourteen* complex shareholder actions in venues across the country.   Detroit P&F's appointment here would subject the class in this case to the oversight of the action by a pension fund whose

1  existing litigation obligations alone have stretched it beyond the breaking point.[9]  The Court should

2  not subject all absent class members to the risk of appointing a lead plaintiff with such fractured

3  attention.[10]

4          Detroit P&F has not demonstrated why the presumptive bar should be lifted for Detroit P&F

5  here.  This is not a case in which there are not other qualified lead plaintiff candidates.  *Cf. Gemstar*,

6  209 F.R.D. at 454 (explaining that "courts have waived the PSLRA's professional plaintiff

7  restriction when there were no other suitable applicants for lead plaintiff").[11]  This is not a case in

8  which there is not another qualified institutional investor.  *Cf. Smith v. Suprema Specialties, Inc.*, 206

9  F. Supp. 2d 627, 641 (D.N.J. 2002) (court declined to impose the 5-in-3 bar because applicant was

10  "the only institutional investor that has moved for lead plaintiff").  Nor is this merely the sixth or

11  seventh case on Detroit P&F's plate.  In fact, there is every indication that Detroit P&F will continue

12  to authorize cases, which at its current rate of filing would yield another twenty class actions and/or

13  lead plaintiff applications by Detroit P&F's fiduciaries during just 2008 ***alone***.  There are no "special

14  circumstances" present here which warrant lifting the presumptive bar for Detroit P&F.  Quite the

15  opposite.  The facts support protecting absent class members and ***not*** lifting the bar to put Detroit

16  P&F at the helm of yet another class action.

---

18  [9]      Tellingly, rather than seek to limit its involvement in securities cases since the court in *Shaw

19  Group* deemed it "professional," Detroit P&F's fiduciaries have approved the filing of no less than
    24 additional lead plaintiff applications and/or other state court litigations.  *See* Robbins Reply Decl.,

20  Ex. E.

21  [10]     Detroit P&F's fractured attention may have already manifested itself.  Detroit P&F's inability
    to even comply with the Court's Local Rules (which are clearly posted on the Northern District

22  website), does not bode well for the class if Detroit P&F were to be appointed lead plaintiff in this
    action.

23  [11]     *See also Pivens v. Sykes Enters.*, 137 F. Supp. 2d 1295 (M.D. Fla. 2000) (same); *Blaich v.
    Employee Solutions, Inc.*, 1997 WL 842417 (D. Ariz. 1997) (same); *Naiditch v. Applied Micro*

24  *Circuits Corp.*, 2001 U.S. Dist. LEXIS 21374 (S.D. Cal. 2001) (same); *In re Critical Path, Inc.*, 156
    F. Supp. 2d 1102, 1112 (N.D. Cal. 2001) (same).  Ironically, the court in *Gemstar* appointed the

25  "professional plaintiff," Louisiana, in large part because its co-applicant, ***Detroit*** General, was "not
    acting as lead plaintiff in any other securities class action."  209 F.R.D. at 454.  Detroit P&F moved

26  for lead plaintiff in this case by itself, and thus cannot share the load as Iron Workers and Weiss can.
    *Id.* at 455 (noting that "class may also benefit by having two lead plaintiffs, as it ensures joint control

27  over the litigation and prevents a single lead plaintiff from acting unchecked in a manner contrary to
    the interests of the class").

28

IRON WORKERS' & WEISS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR
APPOINTMENT AS LEAD PLAINTIFF - 3:08-cv-00856-MMC                                    - 11 -

C.    **Detroit P&F's Prior Acts Also Weigh Against Lifting the Presumptive Bar Here**

The danger of lifting the presumptive bar to appoint as the ***sole*** lead plaintiff an overextended movant like Detroit P&F (instead of a small, cohesive group like the Iron Workers and Weiss), cannot be overemphasized.  If Detroit P&F later decided to withdraw, it would, at best, throw the case into turmoil, requiring the Court to issue a new notice to the class and reopen the lead plaintiff process.  At worst, it could in one fell swoop eliminate the claims of all class members.

This is not simply an academic concern.  For example, while serving as the sole lead plaintiff in a prior class action, Detroit P&F unilaterally withdrew, filing a voluntary dismissal of the action.  In *Osher v. Guess?, Inc.,* 2001 U.S. Dist. LEXIS 6057, at *15-*16 (C.D. Cal. 2001), Detroit P&F was appointed lead plaintiff instead of several other lead plaintiff movants.  In support of its appointment in *Guess?*, Detroit P&F assured the court it had "a significant, compelling interest in prosecuting this Action to its conclusion."  *See* Robbins Reply Decl., Ex. F at 17-18.  Yet, when Detroit P&F was given leave to replead after a prior complaint did not withstand a motion to dismiss, Detroit P&F simply "***voluntarily*** dismiss[ed]" the claims of the entire class and walked away.  *See* Robbins Reply Decl., Ex. G.

There can be little doubt that the appointment of a single, overstretched lead plaintiff like Detroit P&F also creates a tempting target for defendants to attack at later stages of the litigation.  If defects are uncovered against the ***only*** lead plaintiff, this can irremediably harm the class – prejudicing the class' case in front of the jury or undercutting the ability of that (impaired) lead plaintiff to negotiate vigorously on behalf of the class and/or hold out for the best result.  One class suffered such a fate when Detroit P&F was appointed the ***sole*** lead plaintiff in *Weisz v. Calpine Corp.*, No. 02-CV-1200, Docket #242 (N.D. Cal. May 11, 2004) (Armstrong, J.).  Judge Armstrong denied class certification and Detroit P&F later appealed.  During pendency of the appeal, Detroit P&F inexplicably altered course and filed a motion to withdraw the appeal and filed a stipulation and proposed order requesting dismissal of the case on October ***24***, 2005.  *See* Docket #528-533.  What class members (and likely the court) were unaware of was that Detroit P&F secretly agreed eleven days earlier on October ***13***, 2005 to "settle" the case for 100% of ***its own losses*** – including payment

1  of attorneys' fees and costs – while agreeing to abandon the appeal and the interests of all absent

2  class members.  *See* Robbins Reply Decl., Ex. H at 19-20.

3         Detroit P&F's purported rationale was that such payment was "in the best interest *of the*

4  *retirement system*."  *Id.*  And so it might have been.  However, the secret decision to abandon the

5  appeal, agree to forego the rights of the class, accept a payment of 100% of Detroit P&F's *own*

6  losses and ensure that its counsel were paid attorneys' fees from defendants was surely *not* in the

7  class' best interests.  *See generally* 15 U.S.C. §78u-4(a)(4) (requiring the "share of any final

8  judgment or of any settlement that is awarded to a representative party serving on behalf of a class"

9  to be "equal, on a per share basis, to the portion of the final judgment or settlement awarded to all

10  other members of the class"); Fed. R. Civ. P. 23(e)(3) ("parties seeking approval [of voluntary

11  dismissal] must file a statement identifying any agreement made in connection with the proposal").

12         **D.    Meruelo Is Neither Adequate Nor Typical**

13         Pursuant to the PSLRA's framework, the Court can only consider Meruelo's motion if Iron

14  Workers and Weiss are not the "most adequate plaintiff."  *See Cavanaugh*, 306 F.3d at 732 ("The

15  court must examine potential lead plaintiffs one at a time, starting with the one who has the greatest

16  financial interest, and continuing in descending order *if and only if* the presumptive lead plaintiff is

17  found inadequate or atypical.").[12]  No movant has successfully rebutted the presumption in Iron

18  Workers and Weiss' favor.  Thus, the Court's lead plaintiff inquiry stops with Iron Workers and

19  Weiss.

20         Even if the Court were to continue the inquiry, Meruelo, in addition to having a significantly

21  smaller loss than Iron Workers and Weiss, is neither adequate nor typical.  *See* Iron Workers' &

22  Weiss' Oppo. at 11 (Meruelo is atypical and inadequate due to his "put" trades); Detroit P&F Oppo.

23  _____

24  [12]    It is noteworthy that a majority of the cases cited by Detroit P&F and Meruelo in their
   attempts to convince this Court that they would either would do a better job as lead plaintiff than the
   Iron Workers and Weiss are either out-of-circuit or pre-date the Ninth Circuit's decision in

25  *Cavanaugh*.  The Ninth Circuit stressed that it is inappropriate for district courts to engage "in a
   freewheeling comparison of the parties competing for lead plaintiff."  306 F.3d at 732.  Rather, "[s]o

26  long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is
   entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would

27  do a better job."  *Id.*

28

1    at 7-10 (noting that Meruelo was not only a defendant in a shareholder breach of fiduciary duty suit

2    as recent as last year, but that Meruelo overstated his claimed loss); Omaha Funds' Oppo. at 5-7

3    (explaining that Meruelo engaged in "put" transactions, essentially betting that the stock price would

4    decline).[13]

5          Meruelo's certification reveals his transactions were anything but typical: Meruelo engaged

6    in arbitrage investments, which will enable defendants to persuasively argue that he did not rely

7    upon the integrity of the market, but rather relied upon considerations extraneous to the market price

8    of the underlying shares.  Making a $450,000 wager like Meruelo did that the price of SiRF shares

9    would fall – 3 trading days before it declined by 50% – is hardly typical of the investments made by

10   the average SiRF shareholder.  Such an investor is atypical of the class and should not be appointed

11   as lead plaintiff.  *See, e.g., Andrada*, 2005 U.S. Dist. LEXIS 6777, at *14 (noting that if options

12   trader was "appointed lead plaintiff for the entire class, factual issues specific to South Ferry in

13   determining the precise value of the options – e.g., the maturity, the volatility of the price of the

14   Atherogenics stock, the level of short term interest rates, and the competitive structure of the market

15   in which the options are traded – would likely 'threaten to become the focus of the litigation'")

16   (citing cases); *In re Bank One S'holders Class Actions*, 96 F. Supp. 2d 780 (N.D. Ill. 2000) (rejecting

17   movant's application because its arbitrage trading strategy rendered the fund inadequate); *Conseco*,

18   120 F. Supp. 2d at 733 (same).

19         And, unlike Iron Workers and Weiss which have submitted affidavits to "demonstrate that

20   these [investors] are willing to prosecute this case, understand the role of lead plaintiff under the

21   provisions of the PSLRA, and wish to undertake the responsibility and work entailed in being lead

22   plaintiff," Meruelo merely provided the Court with a "bare certification form[]" lacking the same

23   "quality of information."  *Conseco*, 120 F. Supp. 2d at 732-33 (rejecting sole individual investor's

24   application because he "has not submitted the quality of information that would give this Court the

25

---

26   [13]    *See also Andrada v. Atherogenics, Inc.*, 2005 U.S. Dist. LEXIS 6777, at *15 (S.D.N.Y. 2005)

27   ("As an options holder, [movant] is potentially subject to unique defenses irrelevant to regular stock
     purchasers in the class . . . as well as standing challenges.").

28

1  confidence . . . he is capable of adequately representing the purported class and controlling lead

2  counsel").

3  **III.    CONCLUSION**

4         For the foregoing reasons, as well as those previously briefed, Iron Workers and Weiss

5  respectfully request their motion be granted in the entirety.

6  DATED:  May 2, 2008                                Respectfully submitted,

7                                                     COUGHLIN STOIA GELLER
                                                          RUDMAN & ROBBINS LLP
8                                                     DARREN J. ROBBINS
                                                      RAMZI ABADOU
9

10                                                            s/ Darren J. Robbins
                                                     ───────────────────────────
                                                        DARREN J. ROBBINS
11
                                                     655 West Broadway, Suite 1900
12                                                   San Diego, CA  92101
                                                     Telephone:  619/231-1058
13                                                   619/231-7423 (fax)

14                                                   COUGHLIN STOIA GELLER
                                                          RUDMAN & ROBBINS LLP
15                                                   JEFFREY W. LAWRENCE
                                                     100 Pine Street, Suite 2600
16                                                   San Francisco, CA  94111
                                                     Telephone:  415/288-4545
17                                                   415/288-4534 (fax)

18                                                   LAW OFFICES BERNARD M. GROSS, P.C.
                                                     DEBORAH R. GROSS
19                                                   ROBERT P. FRUTKIN
                                                     Wanamaker Bldg., Suite 450
20                                                   100 Penn Square East
                                                     Philadelphia, PA  19107
21                                                   Telephone:  215/561-3600
                                                     215/561-3000 (fax)

22                                                   [Proposed] Co-Lead Counsel for Plaintiffs

23                                                   SULLIVAN, WARD, ASHER & PATTON, P.C.
24                                                   CYNTHIA J. BILLINGS
                                                     25800 Northwestern Highway
25                                                   1000 Maccabees Center
                                                     Southfield, MI  48075-1000
26                                                   Telephone:  248/746-0700
                                                     248/746-2760 (fax)

27                                                   Additional Counsel for Plaintiff
28  S:\CasesSD\SiRF Technology\BRF00051040.doc

1    <u>CERTIFICATE OF SERVICE</u>

2         I hereby certify that on May 2, 2008, I electronically filed the foregoing with the Clerk of the

3    Court using the CM/ECF system which will send notification of such filing to the e-mail addresses

4    denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the

5    foregoing document or paper via the United States Postal Service to the non-CM/ECF participants

6    indicated on the attached Manual Notice List.

7         I further certify that I caused this document to be forwarded to the following designated

8    Internet site at:  http://securities.csgrr.com/.

9         I certify under penalty of perjury under the laws of the United States of America that the

10   foregoing is true and correct.  Executed on May 2, 2008.

11
12                                             s/ Darren J. Robbins
                                          DARREN J. ROBBINS
13
                                          COUGHLIN STOIA GELLER
14                                             RUDMAN & ROBBINS LLP
                                          655 West Broadway, Suite 1900
15                                        San Diego, CA  92101-3301
                                          Telephone:  619/231-1058
16                                        619/231-7423 (fax)

17
                                          E-mail:darrenr@csgrr.com
18

19

20

21

22

23

24

25

26

27

28

# Mailing Information for a Case 3:08-cv-00856-MMC

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Ramzi Abadou**
  ramzia@csgrr.com,debh@csgrr.com

- **Jeffrey S. Abraham**
  jabraham@aftlaw.com

- **Vahn Alexander**
  valexander@faruqilaw.com

- **Peter Arthur Binkow**
  info@glancylaw.com,pbinkow@glancylaw.com

- **Patrice L. Bishop**
  service@ssbla.com

- **Robert P. Frutkin**
  robertf@bernardmgross.com

- **David Malcolm Furbush**
  david.furbush@pillsburylaw.com,frances.ceccacci@pillsburylaw.com

- **Benjamin Cunningham Geiger**
  bgeiger@orrick.com

- **Deborah R. Gross**
  debbie@bernardmgross.com

- **Reed R. Kathrein**
  reed@hbsslaw.com,nancyq@hbsslaw.com,sf_filings@hbsslaw.com

- **Jeffrey W. Lawrence**
  jeffreyl@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com,GDarwish@csgrr.com

- **Behram Viraf Parekh**
  bparekh@yaplaw.com

- **Leigh Anne Parker**
  info@wllawca.com,lparker@weisslurie.com

- **Alan Roth Plutzik**
  aplutzik@bramsonplutzik.com

- **Ira M. Press**
  ipress@kmslaw.com,lmorris@kmslaw.com

- **Michael Francis Ram**
  mfr@lrolaw.com,amw@lrolaw.com

- **Darren Jay Robbins**
  e_file_sd@csgrr.com

- **Amy M. Ross**
  aross@orrick.com

- **Adrian James Sawyer**
  sawyer@kerrwagstaffe.com,murphy@kerrwagstaffe.com

- **Michael David Torpey**
  mtorpey@orrick.com

- **Robert P. Varian**
  rvarian@orrick.com,bclarke@orrick.com

- **Shawn A. Williams**
  shawnw@csgrr.com,travisd@csgrr.com,moniquew@csgrr.com,e_file_sf@csgrr.com,cwood@csgr

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Jules Brody
Stull Stull & Brody
6 East 45th Street
New York, NY 10017

Kenneth A. Elan
Law Offices of Kenneth A. Elan
217 Broadway
Suite 605
New York, NY 10007

Sarah G. Lopez
Kirby McInerney LLp\P
830 Thrid Avenue
10th Floor
New York, NY 10022
```