1  COUGHLIN STOIA GELLER
     RUDMAN & ROBBINS LLP
2  JEFFREY W. LAWRENCE (166806)
   100 Pine Street, Suite 2600
3  San Francisco, CA  94111
   Telephone:  415/288-4545
4  415/288-4534 (fax)                      LAW OFFICES BERNARD M.
   jeffreyl@csgrr.com                          GROSS, P.C.
5       – and –                            DEBORAH R. GROSS
   DARREN J. ROBBINS (168593)               ROBERT P. FRUTKIN
6  RAMZI ABADOU (222567)                    Wanamaker Bldg., Suite 450
   655 West Broadway, Suite 1900            100 Penn Square East
7  San Diego, CA  92101                     Philadelphia, PA  19107
   Telephone:  619/231-1058                 Telephone:  215/561-3600
8  619/231-7423 (fax)                       215/561-3000 (fax)
   darrenr@csgrr.com                        debbie@bernardmgross.com
9  ramzia@csgrr.com                         rpf@bernardmgross.com

10 [Proposed] Co-Lead Counsel for Plaintiffs

11

12                    UNITED STATES DISTRICT COURT

13                 NORTHERN DISTRICT OF CALIFORNIA

14 In re SiRF TECHNOLOGY HOLDINGS, INC. )   Master File No. 3:08-cv-00856-MMC
   SECURITIES LITIGATION                  )
15 _____ )   CLASS ACTION
                                          )
16 This Document Relates To:              )   DECLARATION OF DARREN J. ROBBINS
                                          )   IN SUPPORT OF IRON WORKERS' &
17     ALL ACTIONS.                        )   WEISS' REPLY IN FURTHER SUPPORT
                                          )   OF THEIR MOTION FOR APPOINTMENT
18 _____ )   AS LEAD PLAINTIFF

19                                             DATE:        May 16, 2008
                                               TIME:         9:00 a.m.
20                                             COURTROOM:       7

21

22

23

24

25

26

27

28

1    I, DARREN J. ROBBINS, declare as follows:

2        1.    I am an attorney duly licensed to practice before all of the courts of the State of

3    California and this Court.  I am a member of the law firm of Coughlin Stoia Geller Rudman &

4    Robbins LLP, proposed lead counsel for proposed lead plaintiff Iron Workers Local No. 25 Pension

5    Fund and Kenneth L. Weiss in the above-entitled action.  I make this declaration in support of Iron

6    Workers' & Weiss' Reply in Further Support of Their Motion for Appointment as Lead Plaintiff.  I

7    have personal knowledge of the matters stated herein and, if called upon, I could and would

8    competently testify thereto.

9        2.    Attached are true and correct copies of the following exhibits:

10   Exhibit A:    *In re OfficeMax, Inc. Sec. Litig.*, No. 1:00cv2432, Memorandum and Order
              (N.D. Ohio Mar. 21, 2001);

11

12   Exhibit B:    Supplemental Declaration of Dennis Kramer;

     Exhibit C:    Iron Workers' Redacted Account Statement;

13

     Exhibit D:    Organizational Chart for the Retirement Systems of the City of Detroit;

14

     Exhibit E:    Chart of Detroit's Litigation;

15

16   Exhibit F:    *Osher v. Guess?, Inc.*, No. CV-01-871-LGB (RNBx), Memorandum of
              Points and Authorities in Support of the Motion of the Policemen and
17            Firemen Retirement System of the City of Detroit to be Appointed Lead
              Plaintiff Pursuant to §21D(a)(3)(B) of the Securities Exchange Act of 1934
18            and to Approve Proposed Lead Plaintiff's Choice of Counsel (C.D. Cal.
              Mar. 29, 2001);

19   Exhibit G:    *In re Guess?, Inc. Sec. Litig.*, No. CV 01-00871 LGB (RNBx), Order
              Granting Stipulation to Dismiss (C.D. Cal. Mar. 14, 2002); and

20

21   Exhibit H:    Journal of Proceedings – Board of Trustees – Police & Fire Retirement
              System – City of Detroit, Proceedings Held Thursday, October 13, 2005.

22       I declare under penalty of perjury under the laws of the United States of America that the

23   foregoing is true and correct.  Executed this 2nd day of May, 2008, at San Diego, California.

24                              s/ Darren J. Robbins
                              DARREN J. ROBBINS
25

26

27   C:\PROGRA~1\DocsCorp\PDFDOC~3\users\DeeM\Import\DEC00051050-DJR2.doc

28

DECLARATION OF DARREN J. ROBBINS - 3:08-cv-00856-MMC                    - 1 -

1

<u>CERTIFICATE OF SERVICE</u>

2        I hereby certify that on May 2, 2008, I electronically filed the foregoing with the Clerk of the

3  Court using the CM/ECF system which will send notification of such filing to the e-mail addresses

4  denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the

5  foregoing document or paper via the United States Postal Service to the non-CM/ECF participants

6  indicated on the attached Manual Notice List.

7        I further certify that I caused this document to be forwarded to the following designated

8  Internet site at:  http://securities.csgrr.com/.

9        I certify under penalty of perjury under the laws of the United States of America that the

10  foregoing is true and correct.  Executed on May 2, 2008.

11

12                                   s/ Darren J. Robbins
                                  DARREN J. ROBBINS

13

14                                  COUGHLIN STOIA GELLER
                                     RUDMAN & ROBBINS LLP

15                                  655 West Broadway, Suite 1900
                                  San Diego, CA  92101-3301

16                                  Telephone:  619/231-1058
                                  619/231-7423 (fax)

17

18                                  E-mail:darrenr@csgrr.com

19

20

21

22

23

24

25

26

27

28

# Mailing Information for a Case 3:08-cv-00856-MMC

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Ramzi Abadou**
  ramzia@csgrr.com,debh@csgrr.com

- **Jeffrey S. Abraham**
  jabraham@aftlaw.com

- **Vahn Alexander**
  valexander@faruqilaw.com

- **Peter Arthur Binkow**
  info@glancylaw.com,pbinkow@glancylaw.com

- **Patrice L. Bishop**
  service@ssbla.com

- **Robert P. Frutkin**
  robertf@bernardmgross.com

- **David Malcolm Furbush**
  david.furbush@pillsburylaw.com,frances.ceccacci@pillsburylaw.com

- **Benjamin Cunningham Geiger**
  bgeiger@orrick.com

- **Deborah R. Gross**
  debbie@bernardmgross.com

- **Reed R. Kathrein**
  reed@hbsslaw.com,nancyq@hbsslaw.com,sf_filings@hbsslaw.com

- **Jeffrey W. Lawrence**
  jeffreyl@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com,GDarwish@csgrr.com

- **Behram Viraf Parekh**
  bparekh@yaplaw.com

- **Leigh Anne Parker**
  info@wllawca.com,lparker@weisslurie.com

- **Alan Roth Plutzik**
  aplutzik@bramsonplutzik.com

- **Ira M. Press**
  ipress@kmslaw.com,lmorris@kmslaw.com

- **Michael Francis Ram**
  mfr@lrolaw.com,amw@lrolaw.com

- **Darren Jay Robbins**
  e_file_sd@csgrr.com

- **Amy M. Ross**
  aross@orrick.com

- **Adrian James Sawyer**
  sawyer@kerrwagstaffe.com,murphy@kerrwagstaffe.com

- **Michael David Torpey**
  mtorpey@orrick.com

- **Robert P. Varian**
  rvarian@orrick.com,bclarke@orrick.com

- **Shawn A. Williams**
  shawnw@csgrr.com,travisd@csgrr.com,moniquew@csgrr.com,e_file_sf@csgrr.com,cwood@csgr

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Jules Brody
Stull Stull & Brody
6 East 45th Street
New York, NY 10017

Kenneth A. Elan
Law Offices of Kenneth A. Elan
217 Broadway
Suite 605
New York, NY 10007

Sarah G. Lopez
Kirby McInerney LLp\P
830 Thrid Avenue
10th Floor
New York, NY 10022
```

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: OFFICEMAX, INC., | : | **Case No. 1:00cv2432** |
|     SECURITIES LITIGATION | : | |
| | : | **JUDGE O'MALLEY** |
| | : | |
| | : | **MEMORANDUM & ORDER** |
| | : | |

Currently pending are five putative class action lawsuits asserting securities fraud claims against defendant OfficeMax, Inc., ("OfficeMax"), Michael Fever (Chief Executive Officer and Chairman of OfficeMax), and Jeffrey L. Rutherford (Executive Vice President and Chief Financial Officer of OfficeMax). Two plaintiffs, or collections of plaintiffs, have filed motions for consolidation, for appointment as lead plaintiff, and for approval of their chosen counsel, pursuant to the framework set forth in the Private Securities Litigation Reform Act, 15 U.S.C. §78u-4 (the "PSLRA"). For the reasons set forth below, these cases are consolidated, Bernard Fidel, David Fidel and AO Corporation ("The Fidel Group") are appointed lead plaintiffs, and their selection of lead counsel is approved. Accordingly, the Fidel Group's motion for appointment as lead plaintiff (docket no. 12) is **GRANTED**. John Cross' Motion for appointment as lead-plaintiff (docket no. 16) is **DENIED**.

## I. Background

OfficeMax, headquartered in Shaker Heights, Ohio, operates a chain of approximately 1000 high volume, deep-discount office supply superstores across the United States, as well as many smaller format stores and an on-line office supply e-commerce site. Plaintiffs are shareholders of Office Max common stock who claim to have suffered financial loss.

All of the actions share similar, if not the same, allegations. In the second quarter of fiscal year 1998, OfficeMax stock fell to between $7 and $8 per share, down from a $19 5/8 high of two quarters earlier. In the fourth quarter of its fiscal year 1998, OfficeMax announced a major restructuring of its business model. Because it was losing money due to computer sales, but because computer sales were necessary to draw customers for computer-accessory products, OfficeMax split off an area of its business into the Computer Business Segment, and designated the rest of its business as the Core Business Segment. The Computer Business Segment dealt only with the sale of computers. The Core Business Segment involved everything else, and was where OfficeMax envisioned future growth. In the Computer Business Segment, OfficeMax decided to sell only high-end IBM computers, with IBM personnel working within OfficeMax stores to sell IBM computers. In the Core Business Segment, OfficeMax raised its inventory of non-computer items by about 1,000 items per store. In the fourth quarter of fiscal year 1998, Office Max also took an $81 million pre-tax inventory write down, purportedly to address obsolete and discontinued computer inventory.

Plaintiffs allege that defendants made a number of false and misleading statements about the nature of this restructuring and its potential positive effect on earnings potential and profitability. For instance, plaintiffs claim defendants falsely asserted that OfficeMax had

2

eliminated all excess inventory by its fourth quarter 1998 write down and otherwise made false statements about the extent to which the realignment of its business had been successfully accomplished.

OfficeMax began to show better than forecasted earnings in the first quarter of fiscal year 1999, and good earnings for the second quarter. During the second quarter, on May 18, 1999, OfficeMax stock rose to a class period high of $12 1/8. OfficeMax announced that its new business models, its increasing expansion of new stores, and its higher inventory per store were affecting its bottom line positively. In the third quarter of 1999, however, OfficeMax announced that it was taking another large pre-tax inventory write down, this time valued at $83 million, due to the overstocking of its retail stores with non-computer items. OfficeMax also announced than it was reducing the number of inventory items to be offered by its Core Business Segment and that it now believed its fiscal 2000 performance would be worse than previously forecasted. On October 1, 1999, two days after this announcement, OfficeMax stock declined to $5 per share. OfficeMax stock continued to decline throughout fiscal year 2000. The class period is from 3/2/99, when restructuring was first announced, to 9/30/99, when forecasts were adjusted downward. The putative class includes all purchasers of OfficeMax stock and publicly traded options during that period.

On November 27, 2000, two plaintiffs, or plaintiffs "groups," sought to be appointed lead plaintiff, pursuant to 15 U.S.C. §78u-4. These plaintiffs, or "groups" of plaintiffs, include (1) the "the Fidel Group," consisting of father and son, Bernard Fidel and David Fidel, and an unrelated investment company, AO Capital Corp., and (2) John Cross, an individual. The Fidel Group filed both a Motion for Appointment as Lead Plaintiff and a Motion to Consolidate the actions.

3

Cross filed only a Motion for Appointment as Lead Plaintiff, but has agreed that consolidation of these actions is appropriate under the PSLRA.

On January 18, 2000, this Court held a hearing on the outstanding motions to consolidate and for appointment of lead plaintiff, at which the Court heard additional argument on the motions and posed a number of questions to counsel.  The matter is thus ripe for ruling.

## II.  Law and Analysis

### A. Consolidation

The PSLRA effected significant procedural and substantive changes to securities fraud class actions.  The PSLRA requires that the Court address any outstanding motions to consolidate before considering motions for the appointment of counsel:

> If more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed, and any party has sought to consolidate those actions for pretrial purposes or for trial, the court shall not make the [lead plaintiff] determination . . . until after the decision on the motion to consolidate is rendered.  As soon as practicable after such decision is rendered, the court shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions in accordance with this paragraph.

15 U.S.C. §78u-4(a)(3)(B)(ii).

The plaintiffs constituting the Fidel Group have moved to consolidate the pending actions. During the hearing on the motions, counsel for all plaintiffs present were in agreement that consolidation is appropriate.  Counsel for defendants did not oppose consolidation and agreed that, from their perspective, consolidation of all cases is essential for the efficient administration and management of these cases.

All of the shareholder actions against OfficeMax share both factual and legal issues in common.  Consolidation, moreover, will prevent unnecessary expense and delay. Consolidation

4

is therefore appropriate under Rule 42(a) of the Federal Rules of Civil Procedure.  Accordingly,

the following actions are consolidated and all subsequent papers, pleadings, and motions shall

be filed under the case number of the lowest-numbered case, **Fidel v. OfficeMax, Inc., et al.,**

**1:00CV2432, which will be re-captioned as In re: OfficeMax, Inc., Securities Litigation,**

**Case No. 1:00CV2432:**

Fidel v. OfficeMax, Inc., et al., 1:00cv2432
Abrams v. OfficeMax, Inc., et al., 1:00cv2558
Perry v. OfficeMax, Inc., et al., 1:00cv2562
Callahan, et al., v. OfficeMax, Inc., et al., 1:00cv2606
Shackleford v. OfficeMax, Inc., et al., 1:00cv2720

An amended complaint effectuating this consolidation shall be filed by the lead plaintiff

within ten (10) days of the issuance of this Order, defined below, and captioned as described

above.[1]

## B. Appointment of Lead Plaintiff

### 1. The Legal Framework

The most significant procedural change effected by the PSLRA is the requirement that

the Court appoint, at the initial stages of litigation, a "lead plaintiff."  Specifically, the PSLRA

states that:

the court . . . shall appoint as lead plaintiff the member or members of the
purported plaintiff class that the court determines to be most capable of

---

[1]  As discussed at the January 18, 2000 hearing, case nos. 1:00cv2558 through
1:00cv2720 will be dismissed without prejudice; the amended complaint in case no. 1:00cv2432
will encompass the substance of those actions.

5

adequately representing the interests of class members (hereafter in this paragraph referred to as the "most adequate plaintiff").

15 U.S.C. §78u-4(a)(3)(B)(i).  The PSLRA creates a rebuttable presumption that the most

adequate plaintiff

is the person *or group of persons* that—

(aa) has either filed the complaint or made a motion in response to a notice . . . ;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.[2]

15 U.S.C. §78u-4(a)(3)(B)(iii)(I) (emphasis added).  This presumption may be "rebutted only

upon proof by a member of the purported plaintiff class that the presumptively most adequate

plaintiff — (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject

to unique defenses that render such plaintiff incapable of adequately representing the class." 15

U.S.C. §78u-4(a)(3)(B)(iii)(II).

The PSLRA also erects a presumption against the appointment as lead plaintiff of any

person that has served as lead plaintiff in five (5) or more securities class actions during any

three (3) year period.  15 U.S.C. §78u-4(a)(4).  Specifically, the PSLRA provides:

_____

[2]  Rule 23 of the Federal Rules of Civil Procedure sets forth four (4) prerequisites to a class action.  Briefly, these requirements are: (1) numerosity; (2) common questions of law or fact; (3) typicality of claims or defenses; and (4) fair and adequate representation of the class by the representative parties.  Fed. R. Civ. P. 23(a).  Of principle concern with respect to the lead plaintiff determination are the third and fourth prerequisites.

### Restrictions on professional plaintiffs

Except as the court may otherwise permit, consistent with the purposes of this section, a person may be a lead plaintiff, or an officer, director, or fiduciary of a lead plaintiff, in no more than 5 securities class actions brought as plaintiff class actions pursuant to the Federal Rules of Civil Procedure during any 3-year period.

Id.

The PSLRA also imposes a certification requirement for the filing of securities class action complaints, requiring that each plaintiff seeking to serve as a representative party on behalf of a class file, along with the complaint, a detailed certification personally signed by the plaintiff. Specifically, the certification must state that

(i) . . . the plaintiff has reviewed the complaint and authorized its filing;

(ii) . . . the plaintiff did not purchase the security that is the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under this chapter;

(iii) . . . the plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

15 U.S.C. §78u-4(a)(2)(A)(i)-(iii). The certification also must set forth all of the transactions of the plaintiff in the particular security during the class period, as well as all other actions during the three year period preceding the complaint in which the plaintiff sought to serve as a representative party; in addition, the certification must state that the plaintiff will not accept payment for serving as a representative party in excess of the plaintiff's pro rata share of any recovery, with certain exceptions.   Id. at §78u-4(a)(2)(A)(iv)-(vi).

7

## 2. **Application of the Legal Framework**

As mentioned above, two plaintiffs, or "groups" of plaintiffs, are vying for selection as lead plaintiff and approval of their counsel of choice as lead counsel. The first is the "Fidel Group", consisting of Bernard Fidel, his son, David Fidel, and an unrelated institutional investor, AO Capital, Corp.    Bernard Fidel alone suffered losses of \$106,386.10 during the class period.[3]

David Fidel suffered losses of \$16,152.50 and, AO Capital Corp. suffered losses of \$52,357.00.  The Fidel Group also requests approval of its chosen law firm, Milburg, Weiss, Bershad, Hynes, and Lerach to serve as lead counsel.  The Fidels, through their chosen law firm, instituted Case No. 1:00CV2432, Fidel v. OfficeMax, Inc., the first among the class actions which are pending before this Court.

John Cross is asserting his claim for lead plaintiff status as an individual.  John Cross suffered losses of \$65,700 during the class period.  Cross also requests approval of his chosen law firm, Stull, Stull, and Brody, to serve as lead counsel.  Cross seeks lead plaintiff status pursuant to a timely-filed motion in response to the filing of the initial action in this matter.

Both Fidel and Cross have submitted certifications consistent with that required by the PSLRA.  Both, thus, have indicated their willingness to serve as lead plaintiff in this matter and have attested that their purchases of OfficeMax stock were not made for purposes of instituting this action.

---

[3]  The financial loss figures provided by the Fidel Group and John Cross were calculated for purposes of the lead plaintiff motions only.  These figures may or may not ultimately be the actual amount of financial loss for purposes of any appropriate legal damages calculation.

As noted, the PSLRA mandates that the court appoint as lead plaintiff, that plaintiff or those plaintiffs who can "most adequately" represent the interests of the class. The Act goes on to explain how a court is to make that determination.

First, the court is to presume that the plaintiff with the largest financial interest at stake in the litigation is the most adequate plaintiff. In this case, Bernard Fidel alone suffered losses in excess of those suffered by the other proposed lead plaintiff, John Cross. Indeed, Bernard Fidel's losses exceeded Cross' by over $40,000. The Court, accordingly, need not determine whether Bernard Fidel may aggregate his losses with those of David Fidel or AO Capital for purposes of presumptive lead plaintiff status under the PSLRA; Bernard Fidel's losses standing alone entitle him to that status.[4]

Cross concedes that the Fidel Group (by virtue of Bernard Fidel's presence in that group) is entitled to the initial presumption in favor of its selection as lead plaintiff. He contends, however, that the presumption in favor of the Fidel Group is overcome both because Bernard Fidel is subject to unique defenses and because Bernard Fidel is not an otherwise adequate class representative. Cross argues that, once Bernard Fidel's losses are removed from the

---

[4]   This Court has previously addressed the question of aggregation of losses at some length.   See In Re: Telxon Securities Litigation, Case No. 5:98cv2876. There, the Court concluded that individuals with some logical connection to one another may group their losses for purposes of determining lead plaintiff status. It also concluded that individuals or entities whose only relation to one another is the fact that they both (or all) suffered financial losses by virtue of their purchases of the same stock could not amalgamate their losses and then claim to have the largest collective stake in the litigation. Under this analysis, it would be clear that Bernard and David Fidel could group their losses, if that were necessary to aid their claim to lead plaintiff status. It is unlikely, however, based on the limited record before it, that the Court would allow AO Capital's losses to be grouped with that of the Fidels if the only purpose for that grouping was to surpass some otherwise competing dollar threshold.

calculus, Cross' own losses become the most substantial of those individuals or entities vying for lead plaintiff status.

### a. Existence of Unique Defenses

Cross bases his contention that Bernard Fidel is subject to "unique defenses" on his claim that Bernard Fidel acted inappropriately in connection with a different securities class action dating back to the late 1980's and early 1990's. Specifically, Cross claims Fidel knowingly presented false information to a district court in 1990 (or 1991), and again in 1993, when he objected to the settlement of the Gibraltar Securities class action in which he and his family were slated to recover approximately $250,000 on a loss that exceeded $6.8 million. Cross claims this conduct raises serious doubts about Bernard Fidel's diligence and honesty and subjects him to attacks on his credibility. Because Bernard Fidel is subject to these "unique defenses," according to Cross, there is a danger that Bernard Fidel's honesty, or lack thereof, would become the focus of the litigation, to the detriment of the other, presumably more innocent, class members.

While the parties spend a great deal of time parsing and characterizing Bernard Fidel's conduct in the Gibraltar litigation and related matters, the Court chooses not to do so. The Court has reviewed the parties' arguments and has read the Ninth Circuit's decision in Fidel v. National Union Fire Ins. Co. of Pittsburgh, 1996 U.S. App. Lexis 33388 (9th Cir. 1996), to which both Cross and the Fidel Group point the Court. While the Court is not prepared to agree with the Fidel Group that Bernard Fidel's actions in connection with the Gibraltar settlement and the

10

National Union case are a testament to his fitness as a class representative, there is nothing about that case which disqualifies Bernard Fidel from that role.

The Court finds this to be true both because the Court does not find in the pages of the National Union case evidence of the pervasive fraud Cross describes and because the Court can conceive of few circumstances under which the events in the National Union case would be relevant to the matters at issue here.   For example, while Bernard Fidel did mistake the basis for his belief (which it turns out was an accurate one) that additional insurance was available to cover losses incurred by the Gibraltar class, he voluntarily corrected that statement through his own subsequent submissions to the Court.  Similarly, while Bernard Fidel did seek to disown the date he originally placed on a letter to the Court, it is not inconceivable, given the timing and sequence of events, that there is an innocent explanation for that fact – i.e., a typographical error on the original letter.  More importantly, however, there is no overlap between the Gibraltar-related matters and this one: that action was not instituted under the PSLRA; and Bernard Fidel was not the named class representative, much less the "lead plaintiff" as the law now contemplates that role; the Gibraltar settlement was in 1988; the events relating to the National Union case occurred primarily in 1991 and 1993; and there is no similarity among the substantive claims asserted in those actions and this one, other than the fact of a precipitant loss in stock values.

For these reasons, the Court finds nothing in Bernard Fidel's participation in the Gibraltar and National Union matters which renders him inadequate as a class representative or rebuts the presumption in favor of his selection as lead plaintiff under the PSLRA.  Indeed, as the Fidel Group points out, all of the cases upon which Cross relies to support his claim that some

11

personal impropriety by a putative lead plaintiff could act to disqualify that individual are cases in which the improprieties relate to the class claims <u>at issue in that proceeding</u> or are of a pervasive or egregious nature; neither of those circumstances exist here.[5]

### b. Adequacy as Class Representative

Even assuming Bernard Fidel is not subject to "unique defenses" as Cross first asserts, Cross claims the Fidel Group is otherwise inadequate as a class representative.  Cross claims the Fidel Group should not be deemed  an adequate class representative within the meaning of the PSLRA because (1) it seeks to join unrelated investors in one plaintiff group; (2) its primary member, Bernard Fidel, is a "frequent filer" of securities class actions; and (3) its chosen counsel is not as acceptable as that chosen by Cross.   The Court finds none of these points persuasive.

The PSLRA requires the Court to assess a would-be lead plaintiff's adequacy at two stages: (1) as part of an assessment of its suitability for presumptive lead plaintiff status, 15 U.S.C. §§ 78u-4(a)(3)(B)(i), (iii)(I) and (2) as part of its assessment of whether any lead plaintiff presumption should be disregarded. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  Thus, by including the prerequisites of Rule 23 of the Federal Rules of Civil Procedure,  § 78u-4(a)(3)(B)(iii)(II), the PSLRA assures that no party will be entitled to lead plaintiff status unless they will "fairly and

---

[5] Cross contends that Bernard Fidel's initial failure to sign the certification submitted on behalf of the Fidel Group somehow evidences Mr. Fidel's intent to attempt to deceive this Court at some point in the future.   The Court finds this contention unpersuasive; that aspect of Cross' opposition to the Fidel Group merits no further response.

adequately protect the interests of the class." Fed. R. Civ. P. 23(A)(4). The PSLRA then assures that the question of adequacy will be revisited by providing that any presumption in favor of a particular lead plaintiff can be rebutted if the Court concludes that that plaintiff, or plaintiffs, and his, her, their, or its counsel, will not "fairly and adequately protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).[6]

As noted, Cross' first attack on the Fidel Group's general adequacy is based on the fact that AO Capital is a proposed member of that Group.  Cross asserts that the Fidels and AO capital have no allegiance to one another and, thus, would be unlikely to function as a cohesive voice on behalf of the class when making decisions about the conduct of the litigation.  Cross relies heavily on this Court's opinion in Telxon to support his contention that unrelated individuals or entities should be barred from joining forces as a plaintiff group.

Cross reads Telxon too broadly.   It is true that Telxon stands for the proposition that an assemblage of unrelated investors generally may not combine relatively insignificant losses for the sole purpose of claiming to have the largest financial stake in the litigation and, thus, of obtaining presumptive lead plaintiff status.  And, this Court, in Telxon, did express the view that a plaintiff group consisting of a large number of persons who bear no relation to and have no connection with one another would tend to lack the cohesiveness necessary to speak with one voice and provide meaningful direction to class counsel.  Telxon does not stand for the

---

[6] It is unclear why the drafters of the PSLRA included this precise same prerequisite at two different stages in the lead plaintiff analysis.  Perhaps it was an oversight.  Perhaps the first inquiry is merely a threshold inquiry and the second is meant to be a comparative inquiry (i.e., who among the proposed lead plaintiffs, who may have identical losses is the *most* adequate).  Whatever the reason, the fact of its repetition evidences the importance of the adequacy requirement.

proposition, however, that an investor whose financial stake in the litigation entitles he, she or it to presumptive lead plaintiff status could never join forces with other investors in a lead plaintiff group. The Court must examine each proposed lead plaintiff group on a case by case basis, assessing the size of the group, the purpose for adding any particular individual or entity to the group and the likelihood that the group, as constituted collectively, could serve the lead plaintiff function contemplated by the PSLRA. Where, as here, the purpose of joining forces is not merely so that losses may be aggregated, the resulting plaintiff group is neither unduly large nor unwieldy, the unrelated investor was joined to add a perspective and experience which the presumptive lead plaintiff lacks, and the investors joining forces agree to work with and through one chosen counsel, the Court sees not inherent prohibition against joining forces.[7]

Cross' second attack on the Fidel Group's adequacy is premised on the fact that Bernard Fidel is serving as lead plaintiff in two other actions and has sought to be lead plaintiff on at least one other occasion over the years.[8]  In the circumstances of this case, the Court does not find that Bernard Fidel's involvement in these other litigations casts doubt on his adequacy as a class representative in this one.

---

[7] The Fidel Group has explained that AO Capital's presence in the plaintiff group will add the perspective of an institutional investor without having the effect of splintering the group's decision-making. While this Court did sever an unrelated investor from the approved lead plaintiff group in Telxon, no logical explanation for, nor benefit from that investor's inclusion in the plaintiff group was proffered. That is not the case here.

[8] While Cross argued that Fidel had sought lead plaintiff or class representative status on more than three total occasions, Cross offered no proof of that claim and Fidel disputes it. Because the Court finds this difference between the parties immaterial to its decision, it does not seek to resolve it.

14

As mentioned above, unless a court expressly allows otherwise, an investor may not serve as lead plaintiff in more than five securities class actions during any three-year period. 15 U.S.C. § 78-u4(a)(4). Thus, just as the PSLRA creates a presumption in <u>favor</u> of plaintiffs with the greatest financial stake in the litigation, it creates a presumption <u>against</u> plaintiffs who repeatedly seek and obtain lead plaintiff status in securities class actions. While Cross concedes that Bernard Fidel is not barred by the presumption in § 78u-4(a)(4), because he has only been designated as lead plaintiff in two cases, not five, Cross argues the Court should still consider this activity in determining whether Fidel will likely give the necessary time and attention to this case and, thus whether he is adequate as a class representative. The Court agrees with Cross' general proposition; while the PSLRA presumptively disqualifies individuals who participate more than five class actions in three years, it does not presumptively authorize plaintiffs who come in under that number. Thus, the fact that one serves as a lead plaintiff in other class actions, even if fewer than five, though not determinative, is still relevant to the question of adequacy.

If, for example, one's service as lead plaintiff in another action requires substantial personal involvement by that individual at the same time he seeks to serve as lead plaintiff in the case at bar, the Court cold find such simultaneous service at odds with the interests of the class before it. Thus, a lead plaintiff designation in one or more prior actions could, depending on the circumstances, render a putative lead plaintiff inadequate. There is nothing in the record before the Court, however, which indicates that Bernard Fidel's service in the two other class actions in which he is currently involved would be so distracting as to jeopardize the interests of the proposed class in this case. Indeed, as the Fidel Group points out, Bernard Fidel is retired and

15

spends a good portion of his time monitoring his investments and those of his family, including the investments giving rise to the losses in this case. Given this fact, rather than distracting him from pursuing the interests of the class in this case, some class action experience would tend to inure to the benefit of the class by educating him on the issues which arise in such matters. Accordingly, the Court rejects the contention that Mr. Fidel's status as lead plaintiff in two current cases renders the Fidel Group an inadequate representative of the proposed OfficeMax investor class before this Court.

The Court similarly rejects Cross' third and final challenge to the Fidel Group's adequacy – that based on its choice of counsel. The Court declines the parties' invitation to compare the proposed counsel and designate one more qualified than the other. The question before this Court is simply whether the counsel chosen by the presumptive lead plaintiff is adequate – i.e., can competently and responsibly represent the interests of the proposed class. Milberg Weiss satisfies that standard; it is experienced in these matters, has substantial resources available to it, has an established working relationship with the lead plaintiff and clearly has done the lion's share of the work in this litigation to date. The individuals appearing before this Court on behalf of the Fidel Group, moreover, have been well-prepared and professional. Simply, the Court sees no reason not to accept the Fidel Group's choice of counsel and finds nothing in the selection of that counsel which militates in favor of declaring the Fidel Group inadequate within the meaning of Rule 23 and the PSLRA.

For all these reasons, the Court finds that the Fidel Group is entitled to presumptive lead plaintiff status under the PLSRA and that there is nothing in the record sufficient to rebut that presumption. In reaching this conclusion, the Court hastens to add that the record also reflects

16

that Mr. Cross appears fully qualified to serve in the lead plaintiff role and that his choice of counsel would be an acceptable one. Were the parties' respective financial losses identical, the choice among the putative lead plaintiffs would be a difficult one. The parties' financial stakes in the litigation are not equal, however, and the Court must apply the presumption so clearly expressed in the PSLRA to its analysis of the parties' fitness to serve as lead plaintiff. Giving due deference to that presumption, the choice for lead plaintiff in this case becomes clear.

### III. Conclusion

The motion to consolidate is **GRANTED.** The following actions are consolidated and all subsequent papers, pleadings and motions shall be filed under the case number of the lowest numbered matter, **Fidel v. OfficeMax, Inc., et. al, 1:00CV2432, which will be recaptioned In re: OfficeMax, Inc., Securities Litigation, Case No. 1:00CV2432**:

Fidel v. OfficeMax, Inc., et al., 1:00cv2432
Abrams v. OfficeMax, Inc., et al., 1:00cv2558
Perry v. OfficeMax, Inc., et al., 1:00cv2562
Callahan, et al., v. OfficeMax, Inc., et al., 1:00cv2606
Shackleford v. OfficeMax, Inc., et al., 1:00cv2720

An amended complaint encompassing all claims of all plaintiffs reflected in all of the proceedings shall be filed by the lead plaintiff no later than ten (10) days from the date of this Court's Memorandum and Order.

Defendants must respond to the amended complaint within forty-five (45) days of the filing of that amended complaint. Plaintiffs will have twenty (20) days to file an opposition to any

17

Motion to Dismiss filed by the Defendants.  Defendants will have ten (10) days from the filing of plaintiff's opposition to reply.

This action is hereby assigned to the complex track.  A case management conference is scheduled for Thursday, July 11, 2001 at 2:00 P.M.  The parties shall meet prior to the case management conference to develop a case management plan for the remainder of the litigation.  Orders dismissing all cases other than 1:00CV2432 will be issued separately.

The motion of the Fidel Group for appointment as lead plaintiff is **GRANTED** and its selection of counsel is **APPROVED.**   John Cross' motion for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel is **DENIED.**

**IT IS SO ORDERED.**

_s/ Kathleen M. O'Malley_  
**KATHLEEN McDONALD O'MALLEY**  
**UNITED STATES DISTRICT JUDGE**

18

EXHIBIT B

1  COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
2  JEFFREY W. LAWRENCE (166806)
   100 Pine Street, Suite 2600
3  San Francisco, CA  94111
   Telephone:  415/288-4545
4  415/288-4534 (fax)
   jeffreyl@csgrr.com
5      – and –
   DARREN J. ROBBINS (168593)
6  RAMZI ABADOU (222567)
   655 West Broadway, Suite 1900
7  San Diego, CA  92101
   Telephone:  619/231-1058
8  619/231-7423 (fax)
   darrenr@csgrr.com
9  ramzia@csgrr.com

                          LAW OFFICES BERNARD M.
                            GROSS, P.C.
                          DEBORAH R. GROSS
                          ROBERT P. FRUTKIN
                          Wanamaker Bldg., Suite 450
                          100 Penn Square East
                          Philadelphia, PA  19107
                          Telephone:  215/561-3600
                          215/561-3000 (fax)
                          debbie@bernardmgross.com
                          rpf@bernardmgross.com

10  [Proposed] Co-Lead Counsel for Plaintiffs

11

12                UNITED STATES DISTRICT COURT

13             NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 14  In re SiRF TECHNOLOGY HOLDINGS, INC.) | Master File No. 3:08-cv-00856-MMC |
|     SECURITIES LITIGATION            ) | |
| 15  _____ ) | CLASS ACTION |
|                        ) | |
| 16  This Document Relates To:       ) | SUPPLEMENTAL DECLARATION OF |
|                        ) | DENNIS KRAMER |
| 17      ALL ACTIONS.          ) | |
|                        ) | |

18

19

20

21

22

23

24

25

26

27

28

1   I, DENNIS KRAMER, declare as follows:

2       1.    I submit this supplemental declaration in further support of the application of the Iron

3   Workers Local No. 25 Pension Fund (the "Pension Fund") and Kenneth L. Weiss to be appointed

4   lead plaintiff in this action pursuant to the Private Securities Litigation Reform Act of 1995 (the

5   "PSLRA"). I am the Administrator for the Pension Fund. I have personal knowledge of the

6   statements herein and, if called as a witness, could testify competently thereto.

7       2.    The Pension Fund was aware of the PSLRA's presumptive bar on "professional

8   plaintiffs" before it decided to make its lead plaintiff motion with Kenneth Weiss. Thus, prior to

9   making the lead plaintiff motion here, the Pension Fund considered whether the PSLRA's

10   presumptive bar on "professional plaintiffs" applied to the Pension Fund with respect to this action.

11   As of the date it made its motion in this case, the Pension Fund had only been appointed as lead

12   plaintiff in three actions in the past five years and as such, was aware that the PSLRA's presumptive

13   bar did not apply to the Pension Fund at that time as this case would have only been the Pension

14   Fund's fifth case, if appointed.

15       3.    Subsequent to the filing of the lead plaintiff motion in this action, on April 11, 2008,

16   the Pension Fund filed a lead plaintiff motion in *Monsefi v. Orion Energy Systems, Inc.* When it

17   filed its motion in *Orion Energy*, the Pension Fund was not aware of any other institutional investor

18   that was willing to serve as a lead plaintiff in that action. Significantly, the Pension Fund is the only

19   institutional investor seeking lead plaintiff status in *Orion Energy* and it appears that the Pension

20   Fund will likely be appointed as lead plaintiff in that action. In addition, two weeks after the lead

21   plaintiff motion was filed in this case, on April 24, 2008, the Pension Fund was appointed lead

22   plaintiff in *In re Focus Media Holding Ltd. Litig.*, an action that was commenced in November 2007.

23       4.    The Pension Fund is aware that a small handful of pension funds, including one of the

24   movants in this case, have opted to repeatedly file class action litigation and submit applications to

25   serve as a lead plaintiff in courts across the country. The Pension Fund is not one of those funds.

26   Rather, the Pension Fund seeks to serve as a lead plaintiff only in those cases where it can offer

27   active, engaged oversight. Absent exceptional circumstances, the Pension Fund intends to refrain

28   from seeking appointment as lead plaintiff in additional securities class actions until such time as the

SUPPLEMENTAL DECLARATION OF DENNIS KRAMER - 3:08-cv-00856-MMC       - 1 -

1   Pension Fund has resolved one or more of the other cases in which it is currently serving as, or

2   seeking to serve as, a lead plaintiff. If such exceptional circumstances arise during the pendency of

3   this action and prior to the resolution of one or more of its existing actions, the Pension Fund will not

4   seek to be appointed lead plaintiff without first advising this Court so this Court can assess the

5   impact, if any, such additional service might have on the Pension Fund's ability to advance and

6   protect the interests of the class here.

7       5.    Contrary to the suggestion of other movants, the Pension Fund was not cobbled

8   together with Mr. Weiss by counsel without its knowledge. Rather, the Pension Fund made an

9   informed decision to join with Mr. Weiss prior to making this lead plaintiff motion. Thus, the

10  contention that the Pension Fund did not confer with Mr. Weiss before making its lead plaintiff

11  motion is false. Mr. Weiss is a sophisticated individual investor with more than two decades of

12  investment experience and the Pension Fund believes that the Pension Fund and Mr. Weiss will

13  more than adequately protect the class' interests here. Granting the Pension Fund's motion will not

14  only provide the class with lead plaintiffs who are actively overseeing this case, but will also provide

15  the class with diversity of perspective given the Pension Fund's status as an institutional investor and

16  Mr. Weiss' status as a sophisticated individual investor.

17      I declare under penalty of perjury under the laws of the United States of America that the

18  foregoing is true and correct. Executed this 2nd day of May, 2008, at Novi, Michigan.

19

20                                          _____
                                            DENNIS KRAMER, ADMINISTRATOR

21                                          IRON WORKERS LOCAL NO. 25
22                                          PENSION FUND

S:\CasesSD\SiRF Technology\DEC00051005-DK2.doc
23

24

25

26

27

28

SUPPLEMENTAL DECLARATION OF DENNIS KRAMER - 3:08-cv-00856-MMC          - 2 -

# EXHIBIT C

IRONWORKERS LOCAL NO. 25
PENSION FUND

# ACCOUNT STATEMENT

| | |
|---|---|
| Statement Period | 02/01/2008 through 02/29/2008 |
| Account Number | |

## Schedule Of Asset Dispositions

| TRADE DATE | SETTLMT DATE | DESCRIPTION | PROCEEDS | MKT/COST BASIS | MKT/COST GAIN/LOSS |
|---|---|---|---|---|---|
| 02/04/2008 | 02/07/2008 | SOLD 9,649 SHS SIRF TECHNOLOGY HLDGS INC ON 02/04/2008 AT 11.2903 THRU UNX INC. COMMISSIONS PAID 289.47 EXPENSES PAID 1.20 | 108,649.43 | 147,726.19 268,265.40 | 39,076.76- 159,615.97- |
| 02/05/2008 | 02/08/2008 | SOLD 5,670 SHS SIRF TECHNOLOGY HLDGS INC ON 02/05/2008 AT 8.045 THRU LIQUIDNET INC COMMISSIONS PAID 170.10 EXPENSES PAID 0.51 | 45,444.54 | 86,807.70 157,639.63 | 41,363.16- 112,195.09- |
| 02/05/2008 | 02/08/2008 | SOLD 2,421 SHS SIRF TECHNOLOGY HLDGS INC ON 02/05/2008 AT 8.2317 THRU CITATION GROUP COMMISSIONS PAID 72.63 EXPENSES PAID 0.22 | 19,856.10 | 37,065.51 67,309.62 | 17,209.41- 47,453.52- |
| | TOTAL 17,740 SHS | | 173,950.07 | 271,599.40 493,214.65 | 97,649.33- 319,264.58- |

REDACTED

# EXHIBIT D



# EXHIBIT E

### DETROIT RETIREMENT SYSTEMS' SHAREHOLDER LITIGATION

| Case: | Fund: | Date Filed/Appointed: | Fiduciary: |
|---|---|---|---|
| *In re SiRF Tech. Holdings, Inc. Sec. Litig.*, No. 08-cv-00856 (N.D. Cal.) | PFRS | 04/08/2008 (**pending**) | Cynthia Thomas |
| *In re The Bear Stearns Cos. Inc. Consol. S'holder Litig*, No. CA3643 (Del. Ch. Ct.) (class action breach of fiduciary duty) | PFRS | 03/20/2008 | Walter Stampor |
| *McLain v. WSB Financial Group, Inc.*, No. 07-cv-1747 (W.D. Wash.) | PFRS (**active**) | 03/10/2008 (lead) | Ronald Zajac |
| *Police and Fire Ret. Sys. of the City of Detroit and Gen. Ret. Sys. of the City of Detroit v. Yahoo! Inc.*, No. CA3561 (Del. Ch. Ct.) (class action breach of fiduciary duty) | PFRS and GRS (**active**) | 02/21/2008 | Ronald Zajac |
| *Trustees of the Police and Fire Ret. Sys. of the City of Detroit v. Clapp*, No. 08-CV-01515 (S.D.N.Y.) (*MBIA Inc.* Derivative) | PFRS  (**active**) | 02/13/2008 | Walter Stampor |
| *Trustees of the Police and Fire Ret. Sys. of the City of Detroit v. Callen*, No. CA3541 (Del. Ch. Ct.) (*Ambac Fin. Group* Derivative) | PFRS (**active**) | 02/13/2008 | Walter Stampor |
| *Wesner v. UBS AG*, No. 07 CIV 11225 (S.D.N.Y.) | PFRS and GRS | 02/11/2008 (denied) | Myron Terrell (GRS); Cynthia Thomas (PFRS) |
| *In re Medtronic, Inc. Sec. Litig.*, No. 07-cv-4564 (D. Minn.) | GRS (**active**) | 02/04/2008 (lead) | Myron Terrell |
| *Eichenholtz v. Verifone Holdings, Inc.*, No. 07-cv-06140 (N.D. Cal.) | PFRS | 02/04/2008 (withdrew motion) | Ronald Zajac |
| *In re Aetna Inc. Sec. Litig.*, No. 07-cv-04451 (E.D. Pa.) | PFRS | 12/24/2007 (withdrew motion) | Cynthia Thomas |
| *Police & Fire Ret. Sys. of the City of Detroit v. Commerce Bancorp, Inc.*, No. 07-CV-05905 (D.N.J.) (class action breach of fiduciary duty) | PFRS (**active**) | 12/11/2007 | none identified |

Detroit Retirement Systems' Shareholder Litigation

| Case: | Fund: | Date Filed/Appointed: | Fiduciary: |
|---|---|---|---|
| *Laborers Local 100 and 397 Pension Fund v. Bausch & Lomb, Inc.*, No. 06-CV-06294 (W.D.N.Y.) | PFRS (**active**) | 10/26/2007 (lead) | Walter Stampor |
| *Kairalla v. Amgen, Inc.*, No. CV-07-2536 (C.D. Cal.) | GRS | 08/01/2007 (denied) | Myron Terrell |
| *In re International Rectifier Corp. Sec. Litig.*, No. 07-2544 (C.D. Cal.) | GRS (**active**) | 07/23/2007 (lead) | Myron Terrell |
| *Police and Fire Retirement System of the City of Detroit v. SafeNet, Inc.*, No. 06-5797 (S.D.N.Y.) | PFRS (**active**) | 02/21/2007 (lead) | Walter Stampor |
| *In re Marvell Technology Group, Ltd. Sec. Litig.*, No. C-06-06286 (N.D. Cal.) | PFRS (**active**) | 02/07/2007 (lead) | Walter Stampor |
| *Garber v. KLA-Tencor Corp.*, No. 06-4065 (N.D. Cal.) | PFRS (**active**) | 08/28/2006 (lead) | Walter Stampor |
| *Brody v. Dot Hill Systems Corp.*, No. 06-CV-0228 (S.D. Cal.) | GRS and PFRS (**active**) | 06/23/2006 (both funds lead) | Walter Stampor (PFRS); Myron T. Terrell (GRS) |
| *Maiden v. Merge Techs., Inc.*, No. 06-00349 (E.D. Wis.) | GRS | 05/22/2006 (denied) | Ron Gracia |
| *In re Sonus Networks Sec. Litig.*, No. 06-cv-10040 (D. Mass.) | PFRS | 03/27/2006 (denied) | Walter Stampor |
| *In re Boston Scientific Corp. Sec. Litig.*, No. 05-cv-11934 (D. Mass.) | PFRS | 02/15/2006 (denied) | Walter Stampor |
| *In re Bearingpoint, Inc. Sec. Litig. II*, No. 05-0454 (E.D. Va.) | GRS | 07/26/2005 (denied) | Walter Stampor |
| *In re R&G Financial Corp. Sec. Litig.*, No. 05-CV-04186 (S.D.N.Y.) | GRS (**active**) | 07/26/2005 (lead) | Walter Stampor |
| *Cox v. Delphi Corp.*, No. 1:05-CV2637 (S.D.N.Y.) | PFRS | 06/27/2005 (not appointed in stipulation) | Ronald Zajac |

DETROIT RETIREMENT SYSTEMS' SHAREHOLDER LITIGATION

| Case: | Fund: | Date Filed/Appointed: | Fiduciary: |
|---|---|---|---|
| *In re Williams Sec. Litig.*, No. 02-CV-72 (N.D. Okla.) | PFRS | 11/17/2004 (class rep in class cert. motion) | Walter Stampor (cert); Ronald Zajac (decl) |
| *Campbell v. CNL Hotels & Resorts Inc.*, No. 04-cv-1231 (M.D. Fla.) | PFRS | 11/10/2004 (denied – Court held Detroit is a professional plaintiff) | Walter Stampor |
| *Rosen v. BISYS Group, Inc.*, No. 04-CV-3840 (S.D.N.Y.) | PFRS | 08/25/2004 (denied) | Walter Stampor |
| *Thompson v. Shaw Group, Inc.*, No. 04-1685 (E.D. La.) | PFRS | 08/16/2004 (denied) | Walter Stampor |
| *Weisz v. Calpine Corp.*, No. 02 CV 1200 (N.D. Cal.) (bonds) | PFRS | 05/11/2004 (lead) | William Fairweather, George Orzech |
| *In re Advanced Marketing Services*, No. 04cv0121 (S.D. Cal.) | PFRS | 05/04/2004 (lead) | Walter Stampor |
| *In re Levi Strauss & Co. Sec. Litig.*, No. C-03-05605 (N.D. Cal.) | GRS and PFRS (**active**) | 03/29/2004 (lead) | Joseph Glanton (GRS)<br><br>Walter Stampor (PFRS) |
| *In re Royal Dutch/Shell Sec. Litig.*, No. 04cv374 (D.N.J.) (NV Koninklijke) | PFRS | 03/26/2004 (withdrew) | Walter Stampor |
| *In re Royal Ahold NV Sec. and ERISA Litig.*, No. 03-md-01539 (D. Md.) | GRS | 11/04/2003 (denied) | John Kanters |
| *In re King Pharms., Inc. Sec. Litig.*, No. 03-CV-0077 (E.D. Tenn.) | PFRS | 08/15/2003 (lead) | Nicholas Degel |
| *Schnall v. Annuity & Life Re (Holdings) Ltd.*, No. 02 cv 2133 (D. Conn.) | GRS | 05/29/2003 (denied) | Ronald Zajac |

DETROIT RETIREMENT SYSTEMS' SHAREHOLDER LITIGATION

| Case: | Fund: | Date Filed/Appointed: | Fiduciary: |
|---|---|---|---|
| *Rush v. Footstar, Inc.*, No. 02-cv-9130 (S.D.N.Y.) | GRS | 03/25/2003 (denied) | Ronald Zajac |
| *Sheth v. OM Group, Inc.*, No. 02-CV-2163 (N.D. Ohio) | PFRS | 03/10/2003 (lead) | Ronald Zajac |
| *Slutsky v. Endocare, Inc.*, No. 02-8429 (C.D. Cal.) | GRS | 02/03/2003 (withdrew) | Ronald Zajac |
| *In re AOL Time Warner Sec. Litig.*, MDL No. 1500 (S.D.N.Y.) | PFRS | 01/10/2003 (denied) | Ronald Zajac |
| *Marshall v. Peregrine Sys., Inc.*, No. 02-CV-0870 (S.D. Cal.) | PFRS | 11/01/2002 (denied) | Ronald Zajac |
| *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Dynegy, Inc.*, No. H-02-1571 (S.D. Tex.) | PFRS | 10/28/2002 (withdrew) | Ronald Zajac |
| *Gaines v. Bristol-Myers Squibb Co.*, No. 02-CV-2251 (S.D.N.Y.) | GRS | 10/07/2002 (lead) | Ronald Zajac |
| *Weisz v. Calpine Corp.*, No. 02 CV 1200 (N.D. Cal.) (stock) | PFRS | 08/19/2002 (denied) | Ronald Zajac |
| *In re Gemstar-TV Guide Int'l Inc. Sec. Litig.*, No. CV 02-2775 (C.D. Cal.) | GRS | 08/02/2002 (lead) | Ronald Zajac |
| *Simpson v. Homestore.com, Inc.*, No. 01-CV-11115 (C.D. Cal.) | PFRS | 03/25/2002 (denied) | Ronald Zajac |
| *Southern Elec. Ret. Fund v. Providian Fin. Corp.*, No. 01-CV-03952 (N.D. Cal.) | PFRS | 02/15/2002 (denied) | Ronald Zajac |

4

EXHIBIT F

1   BERNSTEIN LITOWITZ BERGER
        & GROSSMANN LLP
2   ALAN SCHULMAN (Bar No. 128661)
    ROBERT S. GANS
3   WOLFRAM WORMS (Bar No. 202889)
    12730 High Bluff Drive, Suite 100
4   San Diego, CA 92130
    Tel: (858) 793-0070
5   Fax: (858) 793-0323
        -and-
6   DOUGLAS M. McKEIGE
    1285 Avenue of the Americas
7   New York, NY 10019
    Tel: (212) 593-8800
8
    Attorneys for the Policemen and Firemen
9   Retirement System of the City of Detroit
    and Proposed Lead Counsel to the Class
10

REC'D APR - 2 2001

11              UNITED STATES DISTRICT COURT

12             CENTRAL DISTRICT OF CALIFORNIA

13                   WESTERN DIVISION

14  DAVID OSHER, On Behalf of        ) Case No.: CV-01-871-LGB (RNBx)
15  Himself and All Others           )
    Similarly Situated,              ) CLASS ACTION
16                                   )
                    Plaintiff,       ) MEMORANDUM OF POINTS AND
17                                   ) AUTHORITIES IN SUPPORT OF THE
         v.                          ) MOTION OF THE POLICEMEN AND
18                                   ) FIREMEN RETIREMENT SYSTEM OF
    GUESS?, INC.; MAURICE            ) THE CITY OF DETROIT TO BE
19  MARCIANO; ARMAND MARCIANO;       ) APPOINTED LEAD PLAINTIFF
    PAUL MARCIANO; and BRIAN         ) PURSUANT TO §21D(a)(3)(B) OF
20  FLEMING,                         ) THE SECURITIES EXCHANGE ACT OF
                                     ) 1934 AND TO APPROVE PROPOSED
21                  Defendants.      ) LEAD PLAINTIFF'S CHOICE OF
                                     ) COUNSEL
22                                   )
                                     ) Date:      April 30, 2001
23                                   ) Time:      10:00 a.m.
                                     ) Courtroom: 780
24  ―――――――――――――――――――――――          ) Judge:     Lourdes G. Baird
25
26
27
28

                MOTION TO APPOINT LEAD PLAINTIFF
                Case No.: CV-01-87-LGB (RNBx)



# TABLE OF CONTENTS

<u>Title</u>                                                              <u>Page</u>

Table of Authorities  . . . . . . . . . . . . . . . . . . . . . . .  ii

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . .  1

II.   PROCEDURAL BACKGROUND  . . . . . . . . . . . . . . . . . . . .  5

III.  SUMMARY OF PENDING ACTIONS . . . . . . . . . . . . . . . . . .  6

IV.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      A.    Detroit Should Be Appointed Lead Plaintiff  . . . .  10

            1.    Detroit Is An Institutional Investor
                  With A Large Financial Stake In The
                  Relief Sought By The Class . . . . . . . . . .  10

            2.    Detroit is Qualified Under Rule 23 . . . . . .  15

                  (a)   Detroit's Claims Are Typical
                        Of The Claims Of The Class  . . . . . .  15

                  (b)   Detroit Will Fairly And Adequately
                        Represent The Interests of the Class  . .  16

      B.    This Court Should Approve Detroit's
            Choice of Lead Counsel  . . . . . . . . . . . . . .  18

V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

CASES                                                                    PAGE

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975) ........................... 16

*Bowman v. Legato Systems, Inc. et al.*,
    Case No. CV-00-20111-JF (N.D. Cal.) ...................... 1

*Gluck v. CellStar Corp.*,
    976 F. Supp. 542 (N.D. Tex. 1997) ............... 2, 11, 15

*Greebel v. FTP Software*,
    939 F. Supp. 57 (D. Mass. 1996) ......................... 2

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ........................... 15

*In re Cirrus Logic Security Litigation*,
    155 F.R.D. 654 (N.D. Cal. 1994) ...................... 15

*In re Computer Memories Securities Litigation*,
    111 F.R.D. 675 (N.D. Cal. 1986) ....................... 17

*In re Conseco, Inc. Security Litigation*,
    120 F. Supp. 2d 729 (S.D. Ind. 2000)    ............... 12

*In re E.Spire Communications, Inc., Securities Litigation*,
    2000 U.S. Dist. LEXIS 19517 (D. Md. August 15, 2000) ... 13

*In re McKesson HBOC, Inc. Security Litigation*,
    79 F. Supp. 2d 1146 (N.D.Cal. 1999) ................... 12

*In Re Network Associates, Inc. Securities Litigation*,
    76 F. Supp. 2d 1017 (N.D. Cal. 1999) ............... 12, 13

*In re Telxon Corp. Security Litigation*,
    67 F. Supp. 2d 803 (N.D. Ohio 1999) ................... 12

*In re United Energy Corp. Solar Power Modules Tax Shelter Investment Security Litigation*,
    122 F.R.D. 251 (C.D. Cal. 1988) ....................... 16

*Sakhrani v. Brightpoint, Inc.*,
    78 F. Supp. 2d 845 (S.D. Ind. 1999) ................... 12

*Sherleigh Associates LLC v. Windmere-Durable Holdings, Inc.,*
    184 F.R.D. 688 (S.D. Fla. 1999) ..................... 11, 12

*Switzenbaum v. Orbital Sciences Corp.,*
    187 F.R.D. 246 (E.D. Va. 1999) ......................... 12

*Takeda v. Turbodyne Technologies, Inc,*
    67 F. Supp. 2d 1129 (C.D. Cal. 1999) ............... 11, 14

*Weinberger v. Thornton,*
    114 F.R.D. 599 (S.D. Cal. 1986) ........................ 17

*Wenderhold v. Cylink Corp.,*
    188 F.R.D. 577 (N.D. Cal. 1999) ....................... 12

*Yousefi v. Lockheed Martin Corp.,*
    70 F. Supp. 2d 1061 (C.D. Cal. 1999) .......... 11, 12, 14

**STATUTES, RULES & REGULATIONS**

15 U.S.C.
    §78j(b) .................................................. 5
    §78t(a) .................................................. 5
    §78u-4(a)(3)(A)(I) ....................................... 3
    §78u-4(a)(3)(B) .......................................... 1
    §78u-4(a)(3)(B)(iii)(I) ............................... 4, 10
    §78u-4(a)(3)(B)(iii)(II)(aa) ............................ 18
    §78u-4(a)(3)(B)(v) .................................. 17, 18
    §78u-4(e) ............................................... 14

Federal Rules of Civil Procedure
    Rule 23 ................................................. 10
    Rule 23(a) .............................................. 15
    Rule 23(a)(3) ........................................... 15
    Rule 23(a)(4) ........................................... 17

**SECONDARY AUTHORITIES**

House Conference Report No. 369
    104th Cong. 1st Sess. 34 (1995)
    1995 WL 709276 at 30 .................................... 2

Report On The Private Securities Litigation Reform Act of 1995
    Senate Report No. 104-98 at 11 ....................... 2, 3

Let The Money Do The Monitoring: How Institutional Investors
Can Reduce Agency Costs In Securities Class Actions,
    by: Weiss & Beckerman
    104 Yale L.J. 2053, 2095 (1995) ......................... 3

1  I.    INTRODUCTION

2          The Policemen and Firemen Retirement System of the City of
3  Detroit, Michigan ("Detroit"), a public pension fund with a loss of
4  approximately $1.8 million from purchases of 207,950 shares of
5  Guess?, Inc. ("Guess" or the "Company") common stock, respectfully
6  submits this Memorandum of Points and Authorities in support of its
7  motion for (1) appointment as lead plaintiff; and (2) approval of
8  its selection of counsel.[1]    As set forth in the affidavit of
9  Ronald Zajac, Esq., General Counsel of Detroit ("Zajac Affidavit"),
10 annexed hereto as Exhibit B, Detroit is familiar with the
11 applicable provisions governing the appointment of the lead
12 plaintiff in securities class actions, appreciates its
13 responsibilities to the Class, and is willing to oversee the
14 prosecution of this Action.[2]

15         This motion fulfills one of the principal goals of Congress in
16 enacting the Private Securities Litigation Reform Act of 1995 (the
17 "Reform Act") -- to encourage institutional investors to serve as
18 lead plaintiff in class actions brought under the federal
19 securities laws. Congress envisioned that the provisions of the
20 Reform Act would "increase the likelihood that institutional
21 investors will serve as lead plaintiffs" because, among other

22

23        [1]    Detroit purchased Guess stock during the period from
   February 14, 2000 through January 26, 2001 (the "Class Period").
24 The federal securities laws specifically authorize class members,
   regardless of whether they have filed a complaint, to move for
25 appointment as lead plaintiff.  See 15 U.S.C. §78u-4(a)(3)(B).  A
   copy of Detroit's certification and a chart summarizing its losses
26 is attached hereto as Exhibit A.
          [2]    Detroit is also currently serving as lead plaintiff in a
27 class action securities lawsuit entitled Bowman v. Legato Systems,
   Inc. et al., Case No. CV-00-20111-JF (N.D. Cal.).  See Exhibit A at
28 ¶6.

MOTION TO APPOINT LEAD PLAINTIFF
Case No.: CV-01-87-LGB (RNBx)                                    Page 1

1    reasons, institutional investors with large amounts at stake "will

2    represent the interests of the plaintiff class more effectively

3    than class members with small amounts at stake." House Conference

4    Report No. 104-369, 104th Cong. 1st Sess. at 34 (1995), 1995 WL

5    709276 at 30.    Similarly, the Senate Report on the Reform Act

6    states:

7              The Committee believes that increasing the

8              role of institutional investors in class

9              actions will ultimately benefit the class and

10             assist the courts.

11                                   * * *

12             Institutions with large stakes in class

13             actions have much the same interests as the

14             plaintiff class generally.

15   Report On The Private Securities Litigation Reform Act of 1995,

16   Senate Report No. 104-98 at 11 ("S. Rep.").

17        Numerous courts also have recognized that the Reform Act

18   "suggests a presumption that institutional investors be appointed

19   lead plaintiff." Greebel v. FTP Software, 939 F. Supp. 57, 63 (D.

20   Mass. 1996).    This presumption is rooted in Congress' belief that

21   increasing the role of institutions in securities class actions

22   would "benefit both injured shareholders and the courts." Id. See

23   also Gluck v. CellStar Corp., 976 F. Supp. 542, 548 (N.D. Tex.

24   1997) ("through the PSLRA, Congress has unequivocally expressed its

25   preference for securities fraud litigation to be directed by large

26   institutional investors").    In reaching this conclusion, Congress

27   reasoned that:

28             [i]nstitutions' large stakes give them an

1          incentive to monitor, and institutions have or

2          readily could develop the expertise necessary

3          to assess whether plaintiffs' attorneys are

4          acting as faithful champions for the plaintiff

5          class.

6   See Elliott J. Weiss & John S. Beckerman, Let The Money Do The

7   Monitoring: How Institutional Investors Can Reduce Agency Costs In

8   Securities Class Actions, 104 Yale L.J. 2053, 2095 (1995) ("Weiss

9   & Beckerman"). See also S. Rep. at 11 n.32 (noting that Weiss &

10  Beckerman provided "the basis for the most adequate plaintiff

11  provision").

12      To implement this Congressional goal, the Reform Act sets

13  forth a detailed procedure for the selection of lead plaintiff to

14  oversee class actions brought under the federal securities laws.

15  Section 21D(a)(3)(A)(I) of the Exchange Act provides that, within

16  20 days after the date on which a class action is filed, the

17  plaintiff or plaintiffs shall cause to be published, in a widely

18  circulated national business-oriented publication or wire service,

19  a notice advising members of the purported plaintiff class:

20          (I)  Of the pendency of the action, the claims

21               asserted therein, and the purported class

22               period; and,

23          (II) That, not later than 60 days after the

24               date on which the notice is published,

25               any member of the purported class may

26               move the court to serve as lead plaintiff

27               of the purported class.

28  See 15 U.S.C. §78u-4(a)(3)(A)(I).

1    Further, Section 21D of the Exchange Act directs the Court to
2    consider any motions brought by plaintiffs or purported class
3    members to appoint lead plaintiffs filed in response to any such
4    notice by not later than 90 days after the date of publication, or
5    as soon as practicable after this Court decides any pending motion
6    to consolidate any actions asserting substantially the same claim
7    or claims.  This provision further directs the Court to appoint the
8    "most adequate plaintiff" to serve as lead plaintiff and, in making
9    this determination, to presume that the "most adequate plaintiff"
10   is the entity that, among other things, has "the largest financial
11   interest in the relief sought by the class."  See 15 U.S.C. §78u-
12   4(a)(3)(B)(iii)(I).

13   Detroit is precisely the type of institutional investor that
14   the Reform Act encourages to lead the prosecution of class actions.
15   As a large public pension fund with over $3 billion in assets under
16   management (See Ex. B at ¶2), Detroit possesses the financial
17   sophistication and expertise to ensure that the litigation is
18   conducted in the best interests of the members of the Class.  (A
19   copy of the sworn Affidavit of Ronald Zajac, general counsel for
20   Detroit, is attached hereto as Exhibit B.)  Having suffered a loss
21   of approximately $1.8 million on behalf of its pensioners, Detroit
22   believes that it has "the largest financial interest in the relief
23   sought by the Class," as generally required for appointment as lead
24   plaintiff under the Reform Act.  Therefore, Detroit respectfully
25   requests that the Court grant its motion to be appointed lead
26   plaintiff, and approve its selection of lead counsel.

27

28

1    II.    PROCEDURAL BACKGROUND

2            Presently pending in this District are the following 8
3    related securities class action lawsuits:

4    Abbreviated Case Name                          Case Number    Date Filed
5    1. David Osher v. Guess Inc., et al.           01-CV-871      01/31/01
6    2. Robert M. Nuckols v. Guess Inc. et al.      01-CV-979      02/01/01
7    3. Brett Dreyfus v. Guess Inc., et al.         01-CV-996      02/01/01
8    4. Jerry Sloan v. Guess Inc., et al.           01-CV-1114     02/06/01
9    5. Jerry Byrd v. Guess Inc., et al.            01-CV-1413     02/13/01
10   6. Patrick Liska v. Guess Inc., et al.         01-CV-1502     02/14/01
11   7. Darrin S. Wegman v. Guess Inc., et al.      01-CV-1724     02/22/01
12   8. Rosie Gindi v. Guess Inc., et al.           01-CV-1733     02/22/01

13          All of these actions allege claims for violations of Section
14   10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5 promulgated
15   thereunder, on behalf of investors who purchased or otherwise
16   acquired Guess common stock in the open market during the Class
17   Period.[3]

18          The Reform Act requires prompt publication of notice advising
19   class members of their right to move within 60 days of publication
20   to be appointed lead plaintiff. On January 31, 2001, the plaintiff
21   in the Osher action published a notice of the pendency of the
22   Action on the Business Wire. (A copy of the January 31, 2001
23   notice published by plaintiff in Osher is attached hereto as
24   Exhibit C.) That notice advised class members of the existence of
25   the lawsuit and described the claims asserted. This motion is

26
27          [3]   The Osher v. Guess?, Inc. et al. Complaint, along with
     the overwhelming majority of the related securities lawsuits
28   pending in this District, allege a Class Period of February 14,
     2000 to January 26, 2001.

1   timely filed within 60 days from the publication of that notice.

2   III. SUMMARY OF PENDING ACTIONS

3       These related class actions allege that, during the Class
4   Period, the defendants disseminated a series of false and
5   misleading statements about Guess' operations and financial
6   performance. ¶2.[4]

7       Guess is a Delaware corporation with its headquarters in Los
8   Angeles, California. ¶11. Guess designs, markets, distributes and
9   licenses casual clothing, accessories and related consumer
10  products. ¶11. The Complaint alleges that, beginning on
11  February 14, 2000, and continuing until January 26, 2001,
12  defendants issued a series of false and misleading statements
13  regarding inventory levels, order backlog, and demand for its
14  apparel products. ¶¶21-32; ¶41.

15      On February 14, 2000, the first day of the Class Period, Guess
16  reported financial results for the fourth quarter and year ended
17  December 31, 1999. According to the press release, Guess revenues
18  increased 47% to $195.5 million. ¶21. The Company also announced
19  that "[o]ur strong revenue and earnings growth in 1999 demonstrates
20  the strength of our brand. Our business currently has great
21  momentum and we are looking forward to a very successful year
22  2000." Id.

23      Thereafter, on May 1, 2000, Guess issued a press release
24  reporting its results for the 2000 first quarter ended March 31,
25  2000, which marked the Company's "sixth consecutive quarter of

26  _____

27      [4]    Unless specifically stated otherwise, all paragraph
    references ("¶__") are to the Class Action Complaint for Violation
28  of the Federal Securities Laws ("Complaint") in the Osher v.
    Guess?, Inc. et al. action.

1  strong revenue and earnings growth." ¶25.  In that same press
2  release, the Company also reported a substantial increase in its
3  inventory levels, but emphasized that this increase in inventory
4  was the result of "significantly increased product sales [and]
5  substantially higher wholesale backlog." Id.

6      On June 23, 2000, an analyst at Salomon Smith Barney, Inc.
7  ("Salomon") reported that Guess manipulated its backlog numbers to
8  make them appear higher than they really were.  See Liska v.
9  Guess?, Inc. et al. (Case No. 01-CV-1502) Complaint at ¶35.  Within
10  the apparel industry, backlog should include only orders that have
11  been placed by independent third party retailers and vendors, and
12  not orders placed by company-owned stores.  Id.  In effect, the
13  Salomon analyst alleged that Guess was including sales made to
14  itself in its backlog numbers, which made its business appear
15  better than it in fact was.  Id.

16      In response to the Salomon analyst's allegations, the price of
17  Guess stock dropped significantly, from $16.875 per share to
18  roughly $11, or by nearly 33%.  However, according to the
19  Complaint, Guess promptly issued a press release denying the
20  accusations.  Id.  The Company also announced that its business
21  for the year was strong, and that its sales were on track to meet
22  analysts' revenue and earnings estimates for the year.  Id.  By
23  mid-July 2000, Guess stock rebounded and was trading at a price of
24  more than $17 per share.

25      On July 31, 2000, the Company issued a press release
26  announcing its financial results for the 2000 second quarter ended
27  June 30, 2000, which exceeded analysts' estimates.  Once again, the
28  Company touted the "continued strength" of its backlog, noting that

1  the backlog "signaled excellent demand for our product going

2  forward." ¶31.  Moreover, while the Company reported higher

3  inventory levels, it stated that the increase in inventory was "in

4  line with sales trends and [was] necessary to support our

5  substantially higher wholesale backlog." Id.

6      On September 25, 2000, Guess announced that its results for

7  the third quarter ended September 30 would fall materially short of

8  analysts' expectations, with the Company expecting to report

9  earnings per share in the range of $0.35 to $0.38, versus the

10  consensus expectation of $0.44.  ¶36.  According to the

11  announcement, the reason for the shortfall was lower consumer

12  demand for Guess' products, which resulted in Guess having to

13  "clear inventory" at cut-rate prices.  Id.  In response, Guess

14  shares fell more than 50 percent, or $10.19 per share, to close at

15  $9.63 per share.  ¶37.  Significantly, however, the Company

16  downplayed the news, stating that it expected "inventories at the

17  end of the third quarter to be improved as a result of both the

18  off-price sales and the retail clearance activities." ¶36.

19      Subsequently, on November 9, 2000, the Company announced that

20  earnings for the third quarter would be only $0.13 per share – or

21  approximately a third of the $0.35 to $0.38 per share the Company

22  had said it would earn on September 25, 2000.  ¶38.  The Company

23  also announced that its inventory problems were much more severe

24  than had previously been disclosed.  The Complaint alleges that

25  Guess had so much excess inventory that, during the third quarter,

26  it engaged in "aggressive markdowns" at both the wholesale and

27  retail level in an attempt to generate sales.  Id.  The Company

28  further disclosed that it liquidated millions of dollars worth of

1   unsold and worthless inventory during the third quarter, and that
2   it would have to increase inventory reserves materially to account
3   for future inventory write-downs.  The Company also announced that
4   it would record charges of up to $10 million in the fourth quarter
5   for closing numerous under-performing retail stores and that, as a
6   result, fourth quarter earnings would only be in the range of $0.08
7   to $0.10 per share. Id.

8       Following these disclosures, the price of Guess stock fell an
9   additional 31%, or $2.25 per share, to close at $5 per share. ¶39.
10  On November 16, 2000, Guess announced that Paul Marciano, the
11  Company's President, and Brian Fleming, the Chief Financial
12  Officer, had been replaced.  ¶40.  Moreover, as a result of the
13  Company's weak operating performance, the Company was in violation
14  of the financial covenants in its loan agreements, and was forced
15  to obtain a waiver to prevent its lenders from foreclosing on a
16  $125 million credit facility.  Id.

17      Finally, on January 26, 2001, the Company announced that it
18  would restate its results for the first three quarters of 2000.
19  ¶41.  According to the announcement, the restatement was required
20  because Guess had improperly capitalized certain costs which should
21  have been recorded as expenses, and had improperly valued its
22  inventory throughout 2000.  Id.  As a result of the restatement,
23  the Company announced that earnings per share for the first quarter
24  would be reduced from $0.35 to $0.33, and that earnings per share
25  for the second quarter would be cut nearly in half, from $0.28 to
26  $0.15. Id.

27
28

1 | IV.  ARGUMENT

2 |        A.    Detroit Should Be Appointed Lead Plaintiff

3 |              1.    Detroit Is An Institutional Investor With A Large
                       Financial Stake In The Relief Sought By The Class
4 |

5 |        The Reform Act provides that this Court:

6 |              shall appoint as lead plaintiff the member or

7 |              members of the purported plaintiff class that

8 |              the court determines to be most capable of

9 |              adequately representing the interests of class

10 |             members (hereafter in this paragraph referred

11 |             to  as  the  "most  adequate  plaintiff")  in

12 |             accordance with this subparagraph.

13 | Moreover, the statute directs the Court to adopt a rebuttable

14 | presumption that:

15 |             [T]he most adequate plaintiff in any private

16 |             action arising under this title is the person

17 |             or group of persons that –

18 |                             * * *

19 |             (aa) has either filed the complaint or made a motion in

20 |                   response to a notice . . .;

21 |             (bb) in the determination of the court, has the largest

22 |                   financial  interest  in  the  relief  sought  by  the

23 |                   class; and

24 |             (cc) otherwise satisfies the requirements of Rule 23 of

25 |                   the Federal Rules of Civil Procedure.

26 | 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

27 |        The Congressional goal in enacting these provisions was to

28 | encourage large, sophisticated institutional investors to direct

1  securities class actions, thereby supplanting the prior regime of
2  "figurehead plaintiffs who exercise no meaningful supervision of
3  litigation." <u>Takeda v. Turbodyne Technologies, Inc</u>, 67 F. Supp. 2d
4  1129, 1135 (C.D. Cal. 1999) (<u>quoting</u> <u>Ravens v. Iftikar</u>, 174 F.R.D.
5  651, 661 (N.D. Cal. 1997)). As Judge Morrow noted in <u>Takeda</u>, "the
6  Reform Act establishes a preference that sophisticated
7  institutional investors direct the course of securities cases."
8  <u>Takeda</u>, <u>supra</u>, 67 F. Supp. 2d at 1135.

9      Congress reasoned that the empowerment of institutional
10 investors would result in the appointment of lead plaintiffs that
11 "can best prosecute the claims" and are "best able to negotiate
12 with and oversee counsel." <u>Sherleigh Assocs. LLC v. Windmere-</u>
13 <u>Durable Holdings, Inc.</u>, 184 F.R.D. 688, 691 (S.D. Fla. 1999). <u>See</u>
14 <u>also</u> <u>Gluck v. Cellstar Corp.</u>, 976 F. Supp. 542, 548 (N.D. **Tex.**
15 1997) (noting that "[t]he legislative history of the [PSLRA] is
16 replete with statements of Congress' desire to put control of such
17 litigation in the hands of large, institutional investors").

18      Thus, this Court has held that the following factors should be
19 considered in determining motions for appointment as lead
20 plaintiff:

21         1.    Whether the class member is an institutional
22               investor;
23         2.    Whether there is evidence that the class **member**
24               will serve as an efficient monitor of its
25               attorneys;
26         3.    Whether the class member uniquely represents the
27               class interest.

28 <u>Yousefi v. Lockheed Martin Corp.</u>, 70 F. Supp. 2d 1061, 1070 (C.D.

1 Cal. 1999) (citation omitted).

2     As a result, courts have uniformly appointed a single

3 institutional investor or small group of institutional investors as

4 lead plaintiff, recognizing that appointment of a random assemblage

5 of unrelated individuals generally undermines the remedial purpose

6 of the Reform Act. See, e.g., In re Conseco, Inc. Sec. Litig., 120

7 F. Supp. 2d 729 (S.D. Ind. 2000); Sakhrani v. Brightpoint, Inc., 78

8 F. Supp. 2d 845 (S.D. Ind. 1999); In re McKesson HBOC, Inc. Sec.

9 Litig., 79 F. Supp. 2d 1146 (N.D. Cal. 1999); Yousefi, supra, 70 F.

10 Supp. 2d at 1067-71; In re Telxon Corp. Sec. Litig., 67 F. Supp. 2d

11 803, 809-16 (N.D. Ohio 1999); Wenderhold v. Cylink Corp., 188

12 F.R.D. 577, 583-87 (N.D. Cal. 1999); Switzenbaum v. Orbital

13 Sciences Corp., 187 F.R.D. 246, 248-51 (E.D. Va. 1999).

14     Nonetheless, "lawyers have taken advantage of the PSLRA by

15 recruiting individual clients and then packaging them together as

16 a group" in an effort to satisfy the "largest financial interest"

17 prong of the Reform Act. In Re Network Associates, Inc. Securities

18 Litigation, 76 F. Supp. 2d 1017, 1026 (N.D. Cal. 1999). These

19 concerns are particularly relevant where the proposed lead

20 plaintiffs were the targets of "recruiting efforts" by law firms

21 and have little understanding of the duties and responsibilities of

22 a lead plaintiff. See Sherleigh Assocs. LLC, supra, 184 F.R.D. at

23 694 n.4.

24

25

26

27     [5] In Yousefi, the Court refused to appoint a group of 137

28 unrelated investors as lead plaintiff, even though their motion was
unopposed. Yousefi, supra, 70 F. Supp. 2d at 1064.

1    Appointing a single institutional investor as lead plaintiff
2  alleviates these concerns:

3              To   allow   an   aggregation   of   unrelated
4              plaintiffs to serve as lead plaintiffs defeats
5              the purpose of choosing a lead plaintiff.  One
6              of the principal legislative purposes of the
7              Reform  Act  was  to  prevent  lawyer-driven
8              litigation.  Appointing lead plaintiff on the
9              basis of financial interest, rather than on a
10             'first come, first serve' basis was intended
11             to insure that institutional plaintiffs with
12             expertise in the securities market and real
13             financial interests in the integrity of the
14             market  would  control  the  litigation,  not
15             lawyers.  See H.R. Conf. Rep. No. 104-369, at
16             31-35 (1995), reprinted in 1005 U.S.C.C.A.N.
17             679,  730,  730-34.   To  allow  lawyers  to
18             designate unrelated plaintiffs as a 'group'
19             and aggregate their financial stakes would
20             allow  and  encourage  lawyers  to  direct  the
21             litigation.   Congress  hoped  that  the  lead
22             plaintiff  would  seek  lawyers,  rather  than
23             having the lawyers seek the lead plaintiffs.
24             Id. at 35.
25  In re Network Associates, Inc., supra, 76 F. Supp. 2d at 1023
26  (quoting In re Donnkenny Inc. Securities Litigation, 171 F.R.D.
27  156, 158 (S.D. N.Y. 1997); see also, In re E.Spire Communications,
28  Inc., Securities Litigation, 2000 U.S. Dist. Lexis 19517 at *18 (D.

1  Md. August 15, 2000) ("by allowing any group of plaintiffs to
2  aggregate their losses to satisfy the 'largest financial interest'
3  prong of the presumption, a court runs the risk that attorneys will
4  seek to put together a group of unrelated plaintiffs for the sole
5  purpose of having that group qualify as the group with the 'largest
6  financial interest,' in turn leading to such attorneys' appointment
7  as lead counsel.").

8      Detroit is ideally situated to serve as lead plaintiff in the
9  present case.    Courts in this District have expressed an
10 unquestionable preference for institutional investors as lead
11 plaintiffs in class action securities lawsuits. See e.g. Yousefi,
12 supra, 70 F. Supp. 2d at 1068; Takeda, supra, 67 F. Supp. 2d at
13 1135. Moreover, Detroit satisfies each of the Yousefi factors. As
14 a public pension fund with over $3 billion in assets under
15 management, and having suffered a loss in excess of $1.8 million,[6]
16 appointment of Detroit as lead plaintiff would advance one of the
17
18
       [6]    Section 21D(e) of the Exchange Act, 15 U.S.C. §78u-4(e),
19 provides a formula for computing a Class member's damages for
   violations of Section 10(b), which includes separate calculations
20 as to securities that have been sold and securities that are still
   held.   For purchasers who hold their securities, damages are
21 measured by comparing the purchase price of the security with its
   mean trading price during the 90 day period following the
22 corrective disclosure by the Company.  As 90 days have not passed
23 since January 26, 2001, Detroit has utilized a computed retention
   price of $6.725 per share to compute its losses (the mean closing
24 price of Guess common stock during the period from January 29,
   2001, through and including March 26, 2001).  Detroit purchased
25 207,950 shares of Guess stock during the Class Period. See Ex. A.
   Detroit's total purchase price of the Guess stock was $3,209,680.
26 Id.  The current value of Detroit's 207,950 shares of Guess stock
   is $1,398,463.70 (207,950 x $6.725 per share).  Thus, Detroit's
27 current loss equals approximately $1,811,216.30 ($3,209,680 less
28 $1,398,463.70).

1   Reform Act's primary goals - to encourage institutional investors
2   with large financial stakes in the outcome to assume control over
3   securities class actions.   As a large institutional investor with
4   significant resources dedicated to overseeing and supervising the
5   prosecution of the litigation, Detroit possesses the sophistication
6   and experience to serve as an effective monitor of its attorneys.
7   Indeed, Detroit will "actively represent the class" and "drive the
8   litigation" to ensure that the class obtains the best recovery
9   possible. Gluck, supra, 976 F. Supp. at 549.   See also Zajac
10  Affidavit, annexed hereto as Exhibit B.

11                  2.    Detroit Is Qualified Under Rule 23

12      Section 21D(a)(3)(B)(iii)(I)(cc) of the Reform Act, provides
13  that the lead plaintiff must also "otherwise satisf[y] the
14  requirements of Rule 23 of the Federal Rules of Civil Procedure."
15  Id.  With respect to the qualification of a class representative,
16  Rule 23(a) requires generally that its claims be typical of the
17  claims of the class and that the representative fairly and
18  adequately protect the interests of the class.  As detailed below,
19  Detroit satisfies the typicality and adequacy requirements of Rule
20  23(a), and should therefore be appointed Lead Plaintiff.

21                  (a)   Detroit's Claims Are Typical
22                        Of The Claims Of the Class

23      The typicality requirement of Rule 23(a)(3) is satisfied when
24  the named plaintiffs have (1) suffered the same injuries as the
25  absent class members; (2) as a result of the same course of conduct
26  by defendants; and (3) their claims are based on the same legal
27  issues. Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir.
28  1992); In re Cirrus Logic Sec. Litig., 155 F.R.D. 654, 657 (N.D.

1  Cal. 1994). The questions of law and fact common to the members of
2  the Class which predominate over questions that may affect
3  individual Class members include the following:

4         (1)  whether Guess issued false and misleading statements
5  during the Class Period relating to its business and financial
6  results;

7         (2)  whether defendants acted knowingly or with
8  deliberate recklessness in issuing false and misleading financial
9  statements;

10        (3)  whether the market price of Guess' common stock was
11  artificially inflated during the Class Period because of the
12  defendants' conduct; and

13        (4)  whether the members of the Class have sustained
14  damages and, if so, what is the proper measure of damages.

15      These questions apply equally to Detroit as to all other
16  members of the proposed Class. Detroit, as did all of the members
17  of the Class, acquired Guess common stock in the open market, at
18  prices allegedly artificially inflated by defendants' fraudulent
19  misrepresentations and omissions, and were damaged thereby.
20  Because Detroit's claims are based on the same legal theories and
21  arise "from the same event or course of conduct giving rise to the
22  claims of other class members," typicality is satisfied.    In re
23  United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec.
24  Litig., 122 F.R.D. 251, 256 (C.D. Cal. 1988); accord Blackie v.
25  Barrack, 524 F.2d 891, 9902-03 & n.19 (9th Cir. 1975).

26              (b)   Detroit Will Fairly And Adequately
                      Represent The Interests of the Class
27

28      Prior to the enactment of the Reform Act, Courts within this

)                          )

1   Circuit routinely held that the adequacy requirements of Rule
2   23(a)(4) were satisfied under a dual pronged analysis requiring:

3       (1) that the interests of the class representative coincide
4       with those of the class, and (2) that the representative be
5       able to prosecute the action vigorously. [citation omitted.]
6       To make the first showing, a class representative must
7       demonstrate that there is no antagonism among the claims of
8       the various (named or absent) plaintiffs. To make the second
9       showing, the representative must demonstrate adequacy of
10      counsel.

11  Weinberger v. Thornton, 114 F.R.D. 599, 604-605 (S.D. Cal. 1986).
12  Accord, In re Computer Memories Securities Litigation, 111 F.R.D.
13  675, 682 (N.D. Cal. 1986) ("the focus of the adequacy determination
14  has been on the competency of counsel and the absence of
15  antagonistic interests between class representatives and class
16  members"). The enactment of the Reform Act slightly changed this
17  analysis, however, by directing the Court to limit its inquiry to
18  the existence of any conflicts between the interests of the
19  proposed representatives and the members of the Class, and then
20  allow the lead plaintiff or plaintiffs to retain lead counsel to
21  represent the Class, "subject to the approval of the court." See 15
22  U.S.C. §78u-4(a)(3)(B)(v).

23      The interests of Detroit are clearly aligned with the members
24  of the Class and there is no evidence of any antagonism between its
25  interests and those of the Class members. As detailed above,
26  Detroit shares substantially similar questions of law and fact with
27  the members of the Class and its claims are typical of the members
28  of the Class. Further, Detroit, as a substantial institutional

1  investor, has a significant, compelling interest in prosecuting

2  this Action to its conclusion, based upon the substantial financial

3  loss that it has incurred as a result of the wrongful conduct

4  alleged herein.  This motivation, combined with Detroit's common

5  interest with the members of the Class, militates in favor of

6  granting the instant motion.

7      B.   This Court Should Approve Detroit's
           Choice of Lead Counsel
8

9      The Reform Act vests authority in the lead plaintiff to select

10 and retain counsel to represent the class, subject to this Court's

11 approval.  See 15 U.S.C. §78u-4(a)(3)(B)(v).  Thus, this Court

12 should not disturb the lead plaintiff's choice of counsel unless

13 necessary to "protect the interests of the class." 15 U.S.C. §78u-

14 4(a)(3)(B)(iii)(II)(aa).

15     Detroit has retained the law firm of Bernstein Litowitz Berger

16 & Grossmann LLP to serve as Lead Counsel for the Class.  Bernstein

17 Litowitz possesses extensive experience litigating complex actions

18 such as this one and has successfully prosecuted numerous

19 securities fraud class actions on behalf of injured investors.  See

20 Bernstein Litowitz Berger & Grossmann LLP's firm resume attached

21 hereto as Exhibit D.

22

23                              .

24

25

26

27

28

1  V.    CONCLUSION

2         For all the foregoing reasons, Detroit respectfully requests

3  that this Court: (1) appoint Detroit as lead plaintiff pursuant to

4  Section 21D(a)(3)(B) of the Exchange Act; (2) approve Detroit's

5  selection of lead counsel for the class; and (3) grant such other

6  and further relief as the Court may deem just and proper.

7  Dated:   March 29, 2001

8                                    Respectfully submitted,

9                                    BERNSTEIN LITOWITZ BERGER
                                        & GROSSMANN LLP
10

11

12                                   ALAN SCHULMAN
                                     ROBERT S. GANS
13                                   WOLFRAM WORMS
                                     12730 High Bluff Drive, Suite 100
14                                   San Diego, CA 92130
                                     Tel: (858) 793-0070
15                                   Fax: (858) 793-0323
                                          -and-
16                                   DOUGLAS M. McKEIGE
                                     1285 Avenue of the Americas
17                                   New York, New York 10019
                                     Tel:   (212) 554-1400
18
                                     Attorneys for the Policemen and
19                                   Firemen Retirement System of the
                                     City of Detroit and Proposed Lead
20                                   Counsel to the Class

21

22

23  45583.1

24

25

26

27

28

# EXHIBIT G

ORIGINAL

FILED
CLERK, U.S. DISTRICT COURT

MAR 14 2002

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

ENTERED
CLERK, U.S. DISTRIC· COURT

MAR 18 2002

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

X Priority
X Send
__ Clsd
X Enter
X JS-5/JS-6
__ JS-2/JS-3

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

In re GUESS?, INC.                    )
SECURITIES LITIGATION                 )
                                      )     CV 01-00871 LGB (RNBx)
                                      )
_____ )     ORDER GRANTING STIPULATION
                                      )     TO DISMISS
This Document Relates To:             )
      ALL ACTIONS: CV01·1733·LGB;     )
CV01·1502·LGB; CV01·1413·LGB; CV01·1114·LGB )
CV01·996·LGB; CV01·979·LGB            )

On November 29, 2001, the Court entered an Order granting

defendants' motion to dismiss this action for failure to state a

claim and granting leave to amend. Lead plaintiff then determined

not to amend the complaint, but rather to voluntarily dismiss the

action pursuant to Federal Rule of Civil Procedure 41(a). To

accomplish this, the attorneys for lead plaintiff and the

defendants submitted a stipulation on January 14, 2002, agreeing

to voluntarily dismiss the action without prejudice.

The Court, in a minute order dated February 6, 2002,

requested briefing on the applicability of the factors found in

Diaz v. Trust Territory of the Pacific Islands, 876 F.2d 1401,

ENTERED ON ICMS
MAR 18 2002
CV

/ 28
__ Docketed
__ Copies NTC Sent
__ JS - 5 / JS - 6
__ JS - 2 / JS - 3
__ CLSD

1  1408-10 (9th Cir. 1987). These factors relate to the

2  appropriateness of requiring notice be given to class members

3  before approving a pre-class certification dismissal of an

4  action. <u>Id.</u>

5      In response, the Court has received Lead Plaintiff's Brief

6  in Support of Voluntary Dismissal ("Lead Plaintiff's Brief"),

7  Defendants' Statement of Non-Opposition, and all related papers.

8  No opposition to dismissal without notice has been filed with the

9  Court. Based on the representations in Lead Plaintiff's Brief and

10 the Declaration of Alan Schulman, the Court concludes that notice

11 to class members is unnecessary under <u>Diaz</u>. The Court therefore

12 DISMISSES the action without prejudice, in accord with the

13 stipulation.

14     Further, the Court has received the Notice of Status of

15 Related Case, filed February 14, 2002. Under the terms of the

16 Court's July 6, 2001 Minute Order, defendants were required to

17 notify the Court of the outcome of a shareholder derivative

18 action in Delaware Chancery Court, <u>Susan Goldman v. Bryan Isaacs,</u>

19 <u>et al.</u>, Civil Action No. 18732NC and the Court would then

20 schedule a status conference. The <u>Goldman</u> action was dismissed on

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27

28                                   2

1  February 12, 2002. In light of the Court's decision above

2  dismissing the case, the Court declines to set the status

3  conference as the issue is now moot.

4  IT IS SO ORDERED.

5

6  Dated:    *March 14, 2002*

7                                    *Lourdes G. Baird*

8                                    LOURDES G. BAIRD
                                     United States District Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                    3

EXHIBIT H

♦ ♪ ♦ ≈ ≈ ≈ ♦ ♪ ♦   **MEETING NUMBER 2545**   ♦ ♪ ♦ ≈ ≈ ≈ ♦ ♪ ♦

**JOURNAL OF PROCEEDINGS - BOARD OF TRUSTEES -
POLICE & FIRE RETIREMENT SYSTEM - CITY OF DETROIT**

**PROCEEDINGS HELD THURSDAY, OCTOBER 13, 2005 - 9:00 A.M.
IN THE CONFERENCE ROOM OF THE RETIREMENT SYSTEMS
910 COLEMAN A. YOUNG MUNICIPAL CENTER
DETROIT, MICHIGAN  48226**

## PRESENT

| | |
|---|---|
| Marty Bandemer | Elected Trustee |
| Gregory Best | Elected Trustee |
| Roger Cheek | Ex/Officio Trustee |
| Gary Christian | Ex/Officio Alternate Trustee |
| Seth Doyle | Ex/Officio Alternate Trustee |
| Frank English | Elected Trustee & Vice Chairperson |
| Laura Isom | Elected Trustee & Chairperson |
| Timothy Ngare | Ex/Officio Alternate Trustee |
| George Orzech | Elected Trustee |
| Paul Stewart | Elected Trustee |
| | |
| Walter Stampor | Executive Secretary |
| Cynthia Thomas | Assistant Executive Secretary |
| Janet S. Lenear | Recording Secretary |
| Ronald Zajac | Legal Counsel |
| Richard Huddleston | Investment Analyst |

## EXCUSED

None

## ABSENT

| | |
|---|---|
| Sharon McPhail | Ex/Officio Trustee & City Council Member |

<u>**CHAIRPERSON**</u>

**Laura Isom**

<u>**VICE CHAIRPERSON**</u>

**Frank English**

**ROLL CALL WAS TAKEN AT 9:05 A.M. BY THE  BOARD'S RECORDING SECRETARY AND THE MEETING WAS CALLED TO ORDER.**

<u>**NON-DUTY DISABILITY APPLICATION OF SANA BRIKHO**</u>

<u>**BY MR. ORZECH – SUPPORTED BY MR. ENGLISH**</u>

**WHEREAS,  SANA BRIKHO FILED A SEPTEMBER 20, 2005 APPLICATION FOR NON-DUTY DISABILITY RETIREMENT, AND**

**WHEREAS,  THE BOARD'S MEDICAL DIRECTOR HAS OPINED THAT MS. BRIKHO IS DISABLED FOR FULL DUTY, NON-DUTY RELATED, THEREFORE BE IT**

**RESOLVED,  THAT THE BOARD ACCEPT THE FINDING OF ITS MEDICAL DIRECTOR REGARDING MS. BRIKHO,  AND BE IT FURTHER**

**RESOLVED,  THAT THE BOARD FINDS THAT MS. BRIKHO'S DISABILITY DID NOT RESULT FR0M PERFORMANCE OF DUTY, AND BE IT FURTHER**

**RESOLVED,   THAT SANA BRIKHO'S APPLICATION FOR NON-DUTY DISABILITY RETIREMENT BE HEREBY APPROVED:**

**YEAS – TRUSTEES BANDEMER,  BEST,  CHEEK, ENGLISH,  ORZECH, STEWART AND CHAIRPERSON ISOM – 7**

**NAYS – NONE**

**POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT**    3
**MEETING NUMBER 2545  –  THURSDAY  –   OCTOBER 13, 2005**


## CONFIRMATIONS

### BY MR. ENGLISH – SUPPORTED BY MR. STEWART

**RESOLVED,  THAT THE RECEIPTS WHICH ARE OUTLINED BELOW BE CONFIRMED:**

**YEAS – TRUSTEES  BANDEMER,  BEST,  CHEEK,  ENGLISH,  ORZECH, STEWART AND CHAIRPERSON ISOM – 7**

**NAYS – NONE**


## CONFIRMATIONS

THE BOARD RECEIVED THE SUM OF **$5,435,000.00** ON OCTOBER 7, 2005 FROM CAPRI SELECT INCOME (CAPITAL RETURN)

THE BOARD RECEIVED THE SUM OF **$2,041,643.84** ON OCTOBER 7, 2005 FROM MIDLAND'S AFFORDABLE HOUSING GROUP TRUST – 2005 THIRD QUARTER DISTRIBUTION

THE BOARD RECEIVED THE SUM OF  **$74,616.45** ON OCTOBER 7, 2005 FROM INLAND'S RETAIL TRUST – SEPTEMBER, 2005 DISTRIBUTION

THE BOARD RECEIVED THE SUM OF **$630,136.99** ON OCTOBER 7, 2005 FROM MIDLAND'S MULTI-FAMILY EQUITY

## REFUNDS  OF  ACCUMULATED  CONTRIBUTIONS

### BY MR. STEWART – SUPPORTED BY MR. ENGLISH

**RESOLVED,  THAT THE CONTRIBUTIONS TO THE ANNUITY SAVINGS FUND BY MEMBERS OF THE POLICEMEN AND FIREMEN RETIREMENT SYSTEM OF THE  CITY OF DETROIT,  AS SET FORTH ON LIST #3179 (WHICH IS REFERENCED AT THE END OF THESE PROCEEDINGS), IN THE AMOUNT OF $67,356.37, INCLUDING INTEREST, BE REFUNDED PENDING AUDIT BY RETIREMENT SYSTEM ACCOUNTING STAFF:**

<u>REFUNDS  OF  ACCUMULATED  CONTRIBUTIONS</u>

**YEAS** – TRUSTEES  BANDEMER,  BEST,  CHEEK,  ENGLISH,  ORZECH, STEWART AND CHAIRPERSON ISOM – 7

**NAYS** – NONE

▌ **EX/OFFICIO TRUSTEE SETH DOYLE ENTERED THE MEETING.**

<u>MINUTES OF THURSDAY, SEPTEMBER 22, 2005</u>

<u>BY MR. ENGLISH – SUPPORTED BY MR. BANDEMER</u>

**RESOLVED,  THAT THE MINUTES OF THE MEETING HELD THURSDAY, SEPTEMBER 22, 2005 BE APPROVED AS RECORDED AND SUBMITTED BY THE BOARD'S RECORDING SECRETARY:**

**YEAS** – TRUSTEES  BANDEMER, BEST, CHEEK, DOYLE, ENGLISH, ORZECH, STEWART AND CHAIRPERSON ISOM – 8

**NAYS** – NONE

<u>BILL PAYMENT REQUESTS</u>

<u>BY MR. ORZECH – SUPPORTED BY MR. BANDEMER</u>

**WHEREAS,  THE BOARD IS IN RECEIPT OF THE FOLLOWING BILLINGS REQUESTING PAYMENT FOR SERVICES RENDERED, AND**

**WHEREAS,   THE  BOARD  IS  SATISFIED  THAT  SERVICES  WERE PROVIDED  TO  THE  BOARD  AS  REQUESTED  BY  THE  BOARD, THEREFORE BE IT**

**RESOLVED,  THAT SUBJECT TO STAFF AUDIT, THE BOARD APPROVE PAYMENT OF SAID BILLINGS:**

**POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT**
**MEETING NUMBER 2545 – THURSDAY – OCTOBER 13, 2005**

5

## BILL PAYMENT REQUESTS

## FIRM OR INDIVIDUAL, DATE, AMOUNT, SERVICE(S) PROVIDED

**DATA MEDIA STORE.COM – OCTOBER 5, 2005 - $144.00 – POLICE AND FIRE PORTION OF $288.00 – OFFICE SUPPLIES**

**ENGLISH, FRANK – OCTOBER 13, 2005 - $127.00 – PARKING REIMBURSEMENT**

**GABRIEL, ROEDER, SMITH & COMPANY – OCTOBER 1, 2005 - $4,300.00 – OCTOBER, 2005 ACTUARIAL SERVICES**

**IRON MOUNTAIN – SEPTEMBER 30, 2005 - $92.72 – POLICE AND FIRE PORTION OF $185.44 – CONTRACT/MISCELLANEOUS SERVICES – CUSTOMER IDENTIFICATION NUMBER LV-23-D**

**IRON MOUNTAIN – SEPTEMBER 30, 2005 - $677.92 – POLICE AND FIRE PORTION OF $1,355.83 – CONTRACT/MISCELLANEOUS SERVICES – CUSTOMER IDENTIFICATION NUMBER L-166-D**

**PDS, INC. – OCTOBER 12, 2005 - $10,119.27 – POLICE AND FIRE PORTION OF $20,238.53 – COMPUTER EQUIPMENT, SOFTWARE, TRAINING, MAINTENANCE**

**PLANTE & MORAN – SEPTEMBER 30, 2005 - $14,330.00 – POLICE AND FIRE PORTION OF $28,660.00 – AUDIT SERVICES**

**RELIABLE OFFICE PRODUCTS – SEPTEMBER 30, 2005 - $92.02 – POLICE AND FIRE PORTION OF $184.04 – OFFICE SUPPLIES**

**RELIABLE OFFICE PRODUCTS – SEPTEMBER 39, 2005 - $8.23 – POLICE AND FIRE PORTION OF $16.45 – OFFICE SUPPLIES**

**YEAS – TRUSTEES BANDEMER, BEST, CHEEK, DOYLE, ENGLISH, ORZECH, STEWART AND CHAIRPERSON ISOM – 8**

**NAYS – NONE**

## Finance/Retirement Petty Cash Account

## By Mr. Orzech – Supported by Mr. Bandemer

**Whereas, The present balance of the Finance/Retirement Petty Cash account is $143.93, and**

## Finance/Retirement  Petty  Cash  Account

**Whereas, Staff has requested that the account be replenished to its maximum amount of $2,000.00, Therefore Be It**

**Resolved,  That  the  Finance/Retirement  Petty  Cash  account  be replenished  to  the  maximum  amount  of  $2,000.00,  and  be  it further**

**Resolved,    That  the  amount  required  to  replenish  the Finance/Retirement  Petty  Cash  account  to  $2,000.00,  which totals  $1,856.07,  be  paid  by  the  Police  and  Fire  Retirement System  ($1,073.59)  and  the  General  Retirement  System ($782.48):**

**YEAS – TRUSTEES    BANDEMER,  BEST,  CHEEK,  DOYLE,  ENGLISH, ORZECH, STEWART AND CHAIRPERSON ISOM – 8**

**NAYS – NONE**

## Pre-Employment Military Service Credit

## By Mr. Orzech – Supported by Mr. English

**Whereas,  The  individual  whose  name  is  designated  below  has applied  to  this  Board  for  Pre-Employment  Military  Service  Credit and  has  complied  with  all  of  the  necessary  requirements  of Section  54-30-3-B  of  the  Charter  Provisions,  as  amended  by Board resolution of February 3, 1983, Therefore Be It**

**Resolved,  That  payment  of  the  full  amounts  be  made  to  the Pension  Accumulation  Fund  by  the  method  selected  by  the individual  and  the  number  of  months  eligible  active  duty  be credited  him  as  membership  service  credit  subject  to  the conditions and limitations of the authorizing 0rdinance Provisions as amended by Board resolution of February 3, 1983:**

**Terry Bonds – Officer – Police Department**

**<ins>Pre-Employment Military Service Credit</ins>**

**YEAS – TRUSTEES   BANDEMER,  BEST,  CHEEK,  DOYLE,  ENGLISH,
ORZECH, STEWART AND CHAIRPERSON ISOM – 8**

**NAYS – NONE**

▮ **EX/OFFICIO TRUSTEE TIMOTHY NGARE ENTERED THE MEETING.**

▮ **EX/OFFICIO TRUSTEE GARY CHRISTIAN ENTERED THE MEETING.**

**<ins>MEMBERS   OF   THE   DETROIT   POLICE   COMMAND   OFFICERS'
ASSOCIATION</ins>**

**<ins>BY MR. ORZECH – SUPPORTED BY MR. BANDEMER</ins>**

**WHEREAS,   MARSHALL J. WIDICK (OF THE LAW OFFICES OF SACHS
WALDMAN) REQUESTS THAT THE BOARD CONFIRM THAT CERTAIN
MEMBERS   OF   THE   DETROIT   POLICE   COMMAND   OFFICERS'
ASSOCIATION  HAVE  NOT  RETIRED  AND  HAVE  NOT  FILED  AN
APPLICATION   FOR   RETIREMENT   WITH   THE   POLICE   AND   FIRE
RETIREMENT   SYSTEM,   PER   ONE-PAGE   OCTOBER   10,   2005
COMMUNICATION, THEREFORE BE IT**

**RESOLVED,   THAT THE EXECUTIVE SECRETARY INFORM MR. WIDICK
IN WRITING THAT THE INDIVIDUALS REFERENCED IN HIS OCTOBER
10, 2005 LETTER HAVE NOT FILED THE NECESSARY FORMS TO
ENTITLE THEM TO BEGIN RECEIVING A RETIREMENT ALLOWANCE
FROM
THE  POLICE  AND  FIRE  RETIREMENT  SYSTEM  OF  THE  CITY  OF
DETROIT:**

**YEAS – TRUSTEES   BANDEMER,  BEST,  CHEEK,  CHRISTIAN,  DOYLE,
ENGLISH,   NGARE,  ORZECH,  STEWART  AND  CHAIRPERSON
ISOM – 10**

**NAYS – NONE**

## LEGAL COUNSEL'S REPORTS

**LEGAL COUNSEL RONALD ZAJAC DISCUSSED VARIOUS MATTERS WITH THE BOARD, INCLUDING LOOMIS, LIBERTY MUTUAL'S U.S. POWER FUND, HSBC, GLOBAL CROSSING, ALPHA PARTNERS, PF COLONNADES WEST CORPORATION, PFRS DUBLIN CORPORATION, PFRS OAK GROVE CORPORATION, PFRS PATRICK CENTER CORPORATION, PFRS YAMATO CORPORATION, THE IRS, JOHNNY GEORGE, GERALDINE SMITH, ALLISON WALKER AND THE CALPINE CORPORATION.**

## LOOMIS, SAYLES & COMPANY

## BY MR. NGARE – SUPPORTED BY MR. DOYLE

**Whereas, The Board has been requested to execute an Acknowledgement Letter dated October 6, 2005, re: Authority Under Public Act 314 of 1965 to Invest in Futures relative to the foregoing transaction, and**

**Whereas, The execution of said document has been recommended by Loomis Sayles & Company, and**

**Whereas, The execution of said document has been reviewed and approved as to form by the Board's Legal Counsel, and the execution of said document is consistent with prior action of the Board, Therefore Be It**

**Resolved, That said document be executed by two (2) authorized signatories on behalf of the Board, and be it further**

**Resolved, That the executed original document be forwarded to Loomis, Sayles & Company, and be it further**

**Resolved, That the Retirement System retain copies of said executed original document:**

## LOOMIS, SAYLES & COMPANY

**YEAS – TRUSTEES BANDEMER, BEST, CHEEK, CHRISTIAN, DOYLE, ENGLISH, NGARE, ORZECH, STEWART AND CHAIRPERSON ISOM – 10**

**NAYS – NONE**

## LIBERTY LIFE'S U.S. POWER FUND

## BY MR. ENGLISH – SUPPORTED BY MR. STEWART

**Whereas, The Board has been requested to execute an Investor Life/Investor Consent and Officers' Certificate dated October 12, 2005 relative to the foregoing transaction, and**

**Whereas, The execution of said document has been recommended by Liberty Life and**

**Whereas, The execution of said document has been reviewed and approved as to form by the Board's Legal Counsel, and the execution of said document is consistent with prior action of the Board, Therefore Be It**

**Resolved, That said document be executed by two (2) authorized signatories on behalf of the Board, and be it further**

**Resolved, That the executed original document be forwarded to the appropriate party, and be it further**

**Resolved, That the Retirement System retain copies of said executed original document:**

**YEAS – TRUSTEES BANDEMER, BEST, CHEEK, CHRISTIAN, DOYLE, ENGLISH, NGARE, ORZECH, STEWART AND CHAIRPERSON ISOM – 10**

**NAYS – NONE**

## IRS

LEGAL COUNSEL PROVIDED EACH  BOARD MEMBER WITH A COPY OF AN OCTOBER 11, 2005 COMMUNICATION FROM LEGAL COUNSEL TO THE IRS REGARDING A $1,474,715.92 CREDIT ADJUSTMENT.

## CALPINE CORPORATION

LEGAL COUNSEL PROVIDED EACH  BOARD MEMBER WITH A COPY OF A SEPTEMBER 7, 2005 COMMUNICATION FROM SPECIAL COUNSEL KOHN, SWIFT & GRAF, P.C. TO THE BOARD REGARDING THE ABOVE-CAPTIONED LITIGATION.

## PRE-EMPLOYMENT MILITARY SERVICE CREDIT

LEGAL COUNSEL PROVIDED EACH BOARD MEMBER WITH A COPY OF AN OCTOBER 5, 2005 COMMUNICATION FROM THE GENERAL RETIREMENT SYSTEM TO  CITY COUNCIL REGARDING THE ABOVE-CAPTIONED MATTER.

## GLOBAL CROSSING LIMITED

## BY MR. DOYLE – SUPPORTED BY MR. BANDEMER

WHEREAS,  DEMAND HAS BEEN MADE ON THE RETIREMENT SYSTEM F OR A RETURN OF $8,203.12 IN DIVIDENDS BY THE BANKRUPTCY TRUSTEE, AND

WHEREAS,  GENERAL COUNSEL HAS DISCUSSED THIS MATTER WITH BANKRUPTCY COUNSEL (PETER JACKSON FROM CLARK HILL), AND

WHEREAS,  IN CLOSED SESSION (THIS DATE) LEGAL COUNSEL HAS MADE A RECOMMENDATION REGARDING A PROPOSED SETTLEMENT REGARDING THIS MATTER, THEREFORE BE IT

**POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT**   11
**MEETING NUMBER 2545 – THURSDAY – OCTOBER 13, 2005**

**RESOLVED, THAT AN ATTEMPT TO SETTLE THIS MATTER BE MADE CONSISTENT WITH THE BOARD'S DISCUSSION OF THIS DATE, AND BE IT FURTHER**

**GLOBAL CROSSING LIMITED**

**RESOLVED, THAT A COPY OF THIS RESOLUTION BE FORWARDED TO SPECIAL COUNSEL PETER JACKSON AT CLARK HILL:**

**YEAS – TRUSTEES BANDEMER, BEST, CHEEK, CHRISTIAN, DOYLE, ENGLISH, NGARE, ORZECH, STEWART AND CHAIRPERSON ISOM – 10**

**NAYS – NONE**

**PF COLONNADES WEST CORPORATION**

**THE BOARD WAS MADE AWARE OF THE EXECUTION OF THE 2005 VIRGINIA ANNUAL REPORT DATED OCTOBER 13, 2005 BY AN OFFICER OF THE CORPORATION.**

**MAYFIELD GENTRY REALTY ADVISORS**

**ALICIA DIAZ AND SPECIAL COUNSEL F. LOGAN DAVIDSON APPEARED BEFORE THE BOARD AND ASKED THE BOARD TO EXECUTE CERTAIN DOCUMENTS RELATIVE TO THE 7 PROPERTIES MAYFIELD GENTRY IS RE-FINANCING FOR THE BOARD.**

**THE BOARD THEN EXCUSED MR. DAVIDSON AND MS. DIAZ.**

**PF COLONNADES WEST CORPORATION**

**THE BOARD OF TRUSTEES WAS MADE AWARE OF THE EXECUTION OF THE FOLLOWING DOCUMENTS BY AN OFFICER OF THE CORPORATION:**

**PROMISSORY NOTE FROM PF COLONNADES WEST CORPORATION ("BORROWER") TO WACHOVIA BANK, NATIONAL ASSOCIATION ("LENDER") IN THE ORIGINAL PRINCIPAL AMOUNT OF $13,500,000.00**

**POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT**
**MEETING NUMBER 2545  –  THURSDAY  –  OCTOBER 13, 2005**

**DEED OF TRUST AND SECURITY AGREEMENT**

**ASSIGNMENT OF LEASES AND RENTS**


**PF COLONNADES WEST CORPORATION**

**ENVIRONMENTAL INDEMNITY AGREEMENT**

**BORROWER'S CERTIFICATE**

**POST-CLOSING AGREEMENT**

**DISBURSEMENT AUTHORIZATION**

**RECEIPT AND CLOSING CERTIFICATE**

**REQUEST FOR TAXPAYER I.D. (IRS FORM W-9)**

**CORPORATE OWNER'S AFFIDAVIT**

**WRITTEN CONSENT OF SHAREHOLDER, RE:  APPROVAL OF AMENDED AND RESTATED ARTICLES OF INCORPORATION**

**AMENDED AND RESTATED ARTICLES OF INCORPORATION**

**PFRS DUBLIN CORPORATION**

**THE BOARD OF TRUSTEES WAS MADE AWARE OF THE EXECUTION OF THE FOLLOWING DOCUMENTS BY AN OFFICER OF THE CORPORATION:**

**PROMISSORY NOTE FROM PFRS DUBLIN CORPORATION ("BORROWER") TO WACHOVIA BANK, NATIONAL ASSOCIATION ("LENDER") IN THE ORIGINAL PRINCIPAL AMOUNT OF $13,700,000.00**

**DEED OF TRUST AND SECURITY AGREEMENT**

**ASSIGNMENT OF LEASES AND RENTS**

**ENVIRONMENTAL INDEMNITY AGREEMENT**

**POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT**   13
**MEETING NUMBER 2545 – THURSDAY – OCTOBER 13, 2005**

**BORROWER'S CERTIFICATE**

**POST-CLOSING AGREEMENT**


**PFRS DUBLIN CORPORATION**

**DISBURSEMENT AUTHORIZATION**

**RECEIPT AND CLOSING CERTIFICATE**

**REQUEST FOR TAXPAYER I.D. (IRS FORM W-9)**

**CORPORATE OWNER'S AFFIDAVIT**

**WRITTEN CONSENT OF SHAREHOLDER, RE:  APPROVAL OF AMENDED AND RESTATED ARTICLES OF INCORPORATION**

**AMENDED AND RESTATED ARTICLES OF INCORPORATION**

**PFRS OAK GROVE CORPORATION**

**THE BOARD OF TRUSTEES WAS MADE AWARE OF THE EXECUTION OF THE FOLLOWING DOCUMENTS BY AN OFFICER OF THE CORPORATION:**

**PROMISSORY NOTE FROM PFRS OAK GROVE CORPORATION ("BORROWER") TO WACHOVIA BANK, NATIONAL ASSOCIATION ("LENDER") IN THE ORIGINAL PRINCIPAL AMOUNT OF $6,700,000.00**

**DEED OF TRUST AND SECURITY AGREEMENT**

**ASSIGNMENT OF LEASES AND RENTS**

**ENVIRONMENTAL INDEMNITY AGREEMENT**

**BORROWER'S CERTIFICATE**

**POST-CLOSING AGREEMENT**

**DISBURSEMENT AUTHORIZATION**

**POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT**                    14
**MEETING NUMBER 2545  –  THURSDAY  –   OCTOBER 13, 2005**


**RECEIPT AND CLOSING CERTIFICATE**

**REQUEST FOR TAXPAYER I.D. (IRS FORM W-9)**

**PFRS OAK GROVE CORPORATION**

**CORPORATE OWNER'S AFFIDAVIT**

**WRITTEN CONSENT OF SHAREHOLDER, RE:  APPROVAL OF AMENDED
AND RESTATED ARTICLES OF INCORPORATION**

**AMENDED AND RESTATED ARTICLES OF INCORPORATION**

**PFRS PATRICK CENTER CORPORATION**

**THE BOARD OF TRUSTEES WAS MADE AWARE OF THE EXECUTION OF
THE FOLLOWING DOCUMENTS BY AN OFFICER OF THE CORPORATION:**

**PROMISSORY NOTE FROM PFRS PATRICK CENTER CORPORATION
("BORROWER") TO WACHOVIA BANK, NATIONAL ASSOCIATION
("LENDER") IN THE ORIGINAL PRINCIPAL AMOUNT OF $9,000,000.00**

**DEED OF TRUST AND SECURITY AGREEMENT**

**ASSIGNMENT OF LEASES AND RENTS**

**ENVIRONMENTAL INDEMNITY AGREEMENT**

**BORROWER'S CERTIFICATE**

**POST-CLOSING AGREEMENT**

**DISBURSEMENT AUTHORIZATION**

**RECEIPT AND CLOSING CERTIFICATE**

**REQUEST FOR TAXPAYER I.D. (IRS FORM W-9)**

**CORPORATE OWNER'S AFFIDAVIT**

**POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT**
**MEETING NUMBER 2545 – THURSDAY – OCTOBER 13, 2005**

**WRITTEN CONSENT OF SHAREHOLDER, RE:  APPROVAL OF AMENDED AND RESTATED ARTICLES OF INCORPORATION**

**AMENDED AND RESTATED ARTICLES OF INCORPORATION**

**PFRS YAMATO CORPORATION**

**THE BOARD OF TRUSTEES WAS MADE AWARE OF THE EXECUTION OF THE FOLLOWING DOCUMENTS BY AN OFFICER OF THE CORPORATION:**

**PROMISSORY NOTE FROM PFRS YAMATO CORPORATION ("BORROWER") TO WACHOVIA BANK, NATIONAL ASSOCIATION ("LENDER") IN THE ORIGINAL PRINCIPAL AMOUNT OF $14,000,000.00**

**DEED OF TRUST AND SECURITY AGREEMENT**

**ASSIGNMENT OF LEASES AND RENTS**

**ENVIRONMENTAL INDEMNITY AGREEMENT**

**BORROWER'S CERTIFICATE**

**POST-CLOSING AGREEMENT**

**DISBURSEMENT AUTHORIZATION**

**RECEIPT AND CLOSING CERTIFICATE**

**REQUEST FOR TAXPAYER I.D. (IRS FORM W-9)**

**CORPORATE OWNER'S AFFIDAVIT**

**WRITTEN CONSENT OF SHAREHOLDER, RE:  APPROVAL OF AMENDED AND RESTATED ARTICLES OF INCORPORATION**

**AMENDED AND RESTATED ARTICLES OF INCORPORATION**

16

## PF COLONNADES WEST CORPORATION

## BY MR. ENGLISH – SUPPORTED BY MR. BANDEMER

RESOLVED,    THAT    THE    AMENDED    AND    RESTATED    ARTICLES    OF
INCORPORATION OF THE CORPORATION DATED OCTOBER 13, 2005
BE AND THEY ARE HEREBY DULY ADOPTED PURSUANT TO AND IN
ACCORDANCE WITH SECTION 642 OF THE BUSINESS CORPORATION
ACT OF THE STATE OF MICHIGAN (MCL 450.642) TO BE THE AMENDED
AND    RESTATED    ARTICLES    OF    INCORPORATION    OF    THE
CORPORATION:

YEAS – TRUSTEES  BANDEMER,  BEST, CHEEK, CHRISTIAN,  DOYLE,
ENGLISH,  NGARE,  ORZECH,  STEWART  AND  CHAIRPERSON
ISOM – 10

NAYS – NONE

## PFRS DUBLIN CORPORATION

## BY MR. ENGLISH – SUPPORTED BY MR. BANDEMER

RESOLVED,    THAT    THE    AMENDED    AND    RESTATED    ARTICLES    OF
INCORPORATION OF THE CORPORATION DATED OCTOBER 13, 2005
BE AND THEY ARE HEREBY DULY ADOPTED PURSUANT TO AND IN
ACCORDANCE WITH SECTION 642 OF THE BUSINESS CORPORATION
ACT OF THE STATE OF MICHIGAN (MCL 450.642) TO BE THE AMENDED
AND    RESTATED    ARTICLES    OF    INCORPORATION    OF    THE
CORPORATION:

YEAS – TRUSTEES  BANDEMER,  BEST, CHEEK, CHRISTIAN,  DOYLE,
ENGLISH,  NGARE,  ORZECH,  STEWART  AND  CHAIRPERSON
ISOM – 10

**POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT**     17
**MEETING NUMBER 2545   –   THURSDAY   –   OCTOBER 13, 2005**

**NAYS – NONE**

<u>**PFRS OAK GROVE CORPORATION**</u>

<u>**BY MR. ENGLISH – SUPPORTED BY MR. BANDEMER**</u>

**RESOLVED,   THAT THE AMENDED AND RESTATED ARTICLES OF INCORPORATION OF THE CORPORATION DATED OCTOBER 13, 2005 BE AND THEY ARE HEREBY DULY ADOPTED PURSUANT TO AND IN ACCORDANCE WITH SECTION 642 OF THE BUSINESS CORPORATION ACT OF THE STATE OF MICHIGAN (MCL 450.642) TO BE THE AMENDED AND RESTATED ARTICLES OF INCORPORATION OF THE CORPORATION:**

**YEAS – TRUSTEES  BANDEMER,  BEST, CHEEK, CHRISTIAN, DOYLE, ENGLISH,  NGARE, ORZECH, STEWART AND CHAIRPERSON ISOM – 10**

**NAYS – NONE**

<u>**PFRS PATRICK CENTER CORPORATION**</u>

<u>**BY MR. ENGLISH – SUPPORTED BY MR. BANDEMER**</u>

**RESOLVED,   THAT THE AMENDED AND RESTATED ARTICLES OF INCORPORATION OF THE CORPORATION DATED OCTOBER 13, 2005 BE AND THEY ARE HEREBY DULY ADOPTED PURSUANT TO AND IN ACCORDANCE WITH SECTION 642 OF THE BUSINESS CORPORATION ACT OF THE STATE OF MICHIGAN (MCL 450.642) TO BE THE AMENDED AND RESTATED ARTICLES OF INCORPORATION OF THE CORPORATION:**

**YEAS – TRUSTEES  BANDEMER,  BEST, CHEEK, CHRISTIAN, DOYLE, ENGLISH,  NGARE, ORZECH, STEWART AND CHAIRPERSON ISOM – 10**

**NAYS – NONE**

## PFRS YAMATO CORPORATION

## BY MR. ENGLISH – SUPPORTED BY MR. BANDEMER

RESOLVED,   THAT  THE  AMENDED  AND  RESTATED  ARTICLES  OF
INCORPORATION OF THE CORPORATION DATED OCTOBER 13, 2005
BE AND THEY ARE HEREBY DULY ADOPTED PURSUANT TO AND IN
ACCORDANCE WITH SECTION 642 OF THE BUSINESS CORPORATION
ACT OF THE STATE OF MICHIGAN (MCL 450.642) TO BE THE AMENDED
AND   RESTATED   ARTICLES   OF   INCORPORATION   OF   THE
CORPORATION:

YEAS – TRUSTEES  BANDEMER,  BEST, CHEEK, CHRISTIAN, DOYLE,
        ENGLISH,  NGARE,  ORZECH,  STEWART  AND  CHAIRPERSON
        ISOM – 10

NAYS – NONE

## CLOSED SESSION

## By Mr. Best – Supported by Mr. Ngare

Resolved,   That  the  Board  enter  into  Closed  Session  for  the
purpose of discussing matters involving attorney/client privilege:

A Roll Call Vote was taken as follows:

YEAS – TRUSTEES  BANDEMER,  BEST, CHEEK, CHRISTIAN, DOYLE,
        ENGLISH,  NGARE,  ORZECH,  STEWART  AND  CHAIRPERSON
        ISOM – 10

NAYS – NONE

The Board entered into Closed Session at 10:29 A.M.

**POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT** 19
**MEETING NUMBER 2545 – THURSDAY – OCTOBER 13, 2005**

<u>OPEN SESSION</u>

<u>By Mr. English – Supported by Mr. Bandemer</u>

**Resolved, That the Board return to Open Session:**

<u>OPEN SESSION</u>

**A Roll Call Vote was taken as follows:**

**YEAS – TRUSTEES BANDEMER, BEST, CHEEK, CHRISTIAN, DOYLE,
ENGLISH, NGARE, ORZECH, STEWART AND CHAIRPERSON
ISOM – 10**

**NAYS – NONE**

**The Board returned to Open Session at 11:07 A.M.**

<u>CALPINE CORPORATION</u>

<u>BY MR. ORZECH – SUPPORTED BY MR. BANDEMER</u>

**WHEREAS, LEGAL COUNSEL PROVIDED THE BOARD WITH A STATUS
UPDATE REGARDING THE CALPINE CORPORATION LITIGATION, AND**

**WHEREAS, A SETTLEMENT OFFER IN THE AMOUNT OF $5,250,000.00
HAS BEEN MADE TO THE BOARD, WHICH INCLUDES THE RETIREMENT
SYSTEM RECEIVING 100% OF ITS LOSSES (ESTIMATED TO BE
$2,350,000.00 PLUS ADDITIONAL AMOUNTS TO PAY THE ATTORNEYS'
OUT-OF-POCKET COSTS OF APPROXIMATELY $1,200,000.00 AND
ATTORNEY FEES), AND**

**WHEREAS, LEGAL COUNSEL HAS IDENTIFIED A NUMBER OF
MODIFICATIONS TO THE PROPOSED SETTLEMENT AGREEMENT
WHICH WILL BE REQUESTED BY THE BOARD'S GENERAL COUNSEL,
AND**

**WHEREAS, THE BOARD HAS EXTENSIVELY DISCUSSED THIS MATTER
AND HAS HAD THE BENEFIT OF INFORMATION PROVIDED BY VARIOUS
LEGAL COUNSEL, AND**

## CALPINE CORPORATION

WHEREAS,  THE BOARD CONSIDERS THE SETTLEMENT OFFER TO BE IN THE BEST INTEREST OF THE RETIREMENT SYSTEM, AND

WHEREAS, IN THE EVENT GENERAL COUNSEL DOES NOT APPROVE ALL DOCUMENTATION, ANY UNRESOLVED ISSUES BE BROUGHT TO THE ATTENTION OF THE BOARD FOR FURTHER DISCUSSION, THEREFORE BE IT

RESOLVED,  THAT THE BOARD APPROVE THE SETTLEMENT OFFER SUBJECT TO APPROVAL OF ALL DOCUMENTATION BY THE BOARD'S GENERAL COUNSEL, AND BE IT FURTHER

RESOLVED,  THAT A COPY OF THIS RESOLUTION BE FORWARDED TO SPECIAL COUNSEL KOHN, SWIFT AND GRAF:

FOLLOWING DISCUSSION OF THE FOREGOING MOTION, THE MOTION WHICH FOLLOWS WAS MADE:

BY MR. ORZECH – SUPPORTED BY MR. BANDEMER

RESOLVED,  THAT THE FOREGOING MOTION BE TABLED:

A ROLL CALL VOTE WAS TAKEN AS FOLLOWS:

YEAS – TRUSTEES  BANDEMER,  BEST, CHEEK, CHRISTIAN, DOYLE, ENGLISH,  NGARE, ORZECH, STEWART AND CHAIRPERSON ISOM – 10

NAYS – NONE

## ALLISON WALKER

BY MR. DOYLE – SUPPORTED BY MR. CHRISTIAN

WHEREAS,    The Board of Trustees is in receipt of a letter dated October 3, 2005 from Kathleen L. Bogar, attorney for Allison Walker requesting the Board to allow Ms. Walker to file an application for duty disability retirement, and

**POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT**
**MEETING NUMBER 2545  –  THURSDAY  –  OCTOBER 13, 2005**

21

## ALLISON WALKER

WHEREAS,   Allison Walker applied for Early (New Plan) Retirement per application dated June 24, 2002, and

WHEREAS,   The Board of Trustees approved the application for Early (New Plan) Option A retirement effective July 14, 2002, and

WHEREAS,   Allison Walker is a retiree of the Retirement System and has no standing to now apply for a disability retirement, and

WHEREAS,    The Board has discussed this matter with its legal counsel, therefore be it

RESOLVED,   That the request of Allison Walker to be allowed to file an application for duty disability retirement is denied, and further

RESOLVED,    That a copy of this resolution be forwarded to Attorney Kathleen Bogas, Allison Walker and the City Law Department:

YEAS – TRUSTEES  BEST,  CHEEK,  CHRISTIAN,  DOYLE,   ENGLISH, NGARE,  ORZECH  AND  CHAIRPERSON ISOM – 8

NAYS – TRUSTEES BANDEMER AND STEWART – 2

## GERALDINE SMITH

## BY MR. DOYLE – SUPPORTED BY MR. CHRISTIAN

WHEREAS,    The Board of Trustees is in receipt of a letter from Geraldine Smith requesting an answer as to why she has been denied the opportunity to apply for duty disability retirement, and

WHEREAS,   The Police and Fire Board adopted a resolution on June 29, 2000 (pages 18-19 of said minutes) which reads as follows:

> Whereas, Geraldine Smith was hired as a Police Officer on February 20, 1978, employment terminated on May 13, 1978, re-hired on September 27, 1979, laid off on October 12, 1979, re-called from lay-off on April 8, 1985,

## GERALDINE SMITH

employment terminated on September 25, 1986, and placed on Worker's Compensation, effective July 23, 1988, and

Whereas, Ms. Smith, prior to commencement of Worker's Compensation benefits, was credited with one (1) year, eight (8) months and twenty-four (24) days of service credit, and

Whereas, The Worker's Compensation Statute provides for a police officer to elect either Worker's Compensation benefits or Retirement System benefits, if qualified for both, and

Whereas, Ms. Smith never applied for disability benefits from the Retirement System, and

Whereas, Ms. Smith has asked whether she is entitled to any benefits from the Retirement System's Defined Benefit plan, and

Whereas, Ms. Smith was a participant in the Defined Contribution Plan and is entitled to the refund of any Defined Contribution Plan balance, and

Whereas, Legal Counsel has opined that Ms. Smith is not entitled to any benefits from the Retirement System's Defined Benefit Plan, inasmuch as she has elected Worker's Compensation benefits and did not apply for Retirement System benefits prior to her termination of employment in September of 1986, Therefore Be It

Resolved, That Geraldine Smith is not entitled to any benefits from the Defined Benefit Plan, and be it further

Resolved, That Ms. Smith be informed of the amount of any Defined Contribution Plan balance, and be it further

## GERALDINE SMITH

Resolved, That Ms. Smith be afforded a copy of this resolution:

WHEREAS,  As the June 29, 2000 resolution indicates, Ms. Smith failed to apply for disability benefits from the Retirement System when she was a member of the Retirement System, and

WHEREAS,  Ms. Smith has no standing to apply for duty disability retirement and lost her standing to apply after she left the active payroll in 1986, and

WHEREAS,  The Board has discussed this matter, therefore be it

RESOLVED,  That the request of Geraldine Smith to apply for duty disability retirement be again denied, and be it further

RESOLVED,  That a copy of this resolution be forwarded to Geraldine Smith:

YEAS – TRUSTEES  BANDEMER,  BEST, CHEEK, CHRISTIAN, DOYLE, ENGLISH, NGARE, ORZECH AND CHAIRPERSON ISOM – 9

NAYS – TRUSTEE STEWART – 1

■  EX/OFFICIO TRUSTEES DOYLE AND NGARE TEMPORARILY EXCUSED THEMSELVES.

## RYAN ALM

RON RYAN AND ASSOCIATE KEN BUFFIN APPEARED BEFORE THE BOARD AND DISCUSSED THE LIABILITY PORTION OF THE BOARD'S PORTFOLIO.

ADRIAN ANDERSON (OF NORTH POINT ADVISORS) JOINED THE BOARD IN LISTENING TO RYAN ALM'S DISCUSSION.

█    EX/OFFICIO TRUSTEE DOYLE RE-JOINED THE MEETING DURING RYAN ALM'S PRESENTATION, AS DID EX/OFFICIO TRUSTEE NGARE.

THE BOARD THEN EXCUSED MESSRS. BUFFIN AND RYAN.

## NORTH POINT ADVISORS

PRIOR TO EXCUSING HIMSELF, MR. ANDERSON DISCUSSED HIGH YIELD MANAGERS WITH THE BOARD.

█    EX/OFFICIO TRUSTEE GARY CHRISTIAN TEMPORARILY EXCUSED HIMSELF.

## ALPHA PARTNERS, LLC

## BY MR. ENGLISH – SUPPORTED BY MR. NGARE

Whereas,   The Board has been requested to execute an Investment Management Agreement with Alpha Partners, LLC relative to the foregoing transaction, and

Whereas,   The execution of said document has been reviewed and approved as to form by the Board's Legal Counsel, and the execution of said document is consistent with prior action of the Board, Therefore Be It

Resolved,  That said document be executed by two (2) authorized signatories on behalf of the Board and held in escrow pending approval and completion of all exhibits, and be it further

Resolved,   That after all exhibits have been agreed upon and attached to the Agreement, the executed original document be forwarded to the appropriate party, and be it further

## ALPHA PARTNERS, LLC

Resolved,  That the Retirement System retain copies of said executed original document:

YEAS – TRUSTEES  BANDEMER, BEST, CHEEK, DOYLE, ENGLISH, NGARE, ORZECH, STEWART AND CHAIRPERSON ISOM  –  9

NAYS – NONE

▌ EX/OFFICIO TRUSTEE CHRISTIAN RE-JOINED THE MEETING.

▌ TRUSTEE ORZECH EXCUSED HIMSELF.

▌ EX/OFFICIO TRUSTEE NGARE EXCUSED HIMSELF.

## HSBC INVESTMENTS

## BY MR. ENGLISH – SUPPORTED BY MR. DOYLE

Whereas,  The Board has been requested to execute a letter dated October 13, 2005, re:  temporary management of a high yield portfolio, relative to the foregoing transaction, and

Whereas,  The execution of said document has been recommended by the Board's Investment Consultant, and

Whereas,  The execution of said document has been reviewed and approved as to form by the Board's Legal Counsel, and the execution of said document is consistent with prior action of the Board, Therefore Be It

Resolved,  That said document be executed by two (2) authorized signatories on behalf of the Board, and be it further

Resolved,  That the executed original document be forwarded to the appropriate party, and be it further

## HSBC INVESTMENTS

Resolved,   That the Retirement System retain copies of said executed original document:

YEAS – TRUSTEES  BANDEMER,  BEST, CHEEK, CHRISTIAN, DOYLE, ENGLISH, STEWART AND CHAIRPERSON ISOM  –  8

NAYS – NONE

## TRANSAMERICA

## BY MR. CHRISTIAN – SUPPORTED BY MR. DOYLE

WHEREAS,  THE BOARD IS IN RECEIPT OF A SEPTEMBER 22, 2005 LETTER FROM TRANSAMERICA REQUESTING A CHANGE IN THE INVESTMENT GUIDELINES RESTRICTING 144-A SECURITIES IN THE "RESTRICTIONS" SECTION BE ELIMINATED AND THAT UNDER THE LIST OF "ELIGIBLE SECURITIES" RULE 144-A SECURITIES, WHICH ARE INVESTMENT-GRADE BY TWO OF THE THREE MAJOR RATING AGENCIES (STANDARD & POORS, MOODY'S OR FITCH), BE INCLUDED, AND

WHEREAS,  THE BOARD HAS DISCUSSED THIS MATTER, THEREFORE BE IT

RESOLVED,  THAT THE REQUEST OF TRANSAMERICA BE GRANTED, AND BE IT FURTHER

RESOLVED,   THAT THE INVESTMENT GUIDELINES BE AMENDED CONSISTENT WITH THIS RESOLUTION, AND BE IT FURTHER

RESOLVED,  THAT A COPY OF THIS RESOLUTION BE IMMEDIATELY FORWARDED TO HEIDE HU AT TRANSAMERICA AND ADRIAN ANDERSON AT NORTH POINT ADVISORS:

YEAS – TRUSTEES  BANDEMER, BEST, CHEEK, CHRISTIAN, DOYLE, ENGLISH, STEWART AND CHAIRPERSON ISOM  –  8

NAYS – NONE

▌ **EX/OFFICIO TRUSTEE NGARE RE-JOINED THE MEETING.**

**CONFERENCE**

**By Mr. Stewart – Supported by Mr. Bandemer**

**Resolved,  That the Board approve the attendance of all Trustees, the Executive Secretary and the Assistant Executive Secretary at the below-referenced conference, and be it further**

**Resolved,  That the Board approve expenditures for all Trustees, the Executive Secretary and the Assistant Executive Secretary to attend said conference:**

**REIP USA – 2006
ARIZONA
FEBRUARY 4, 2006 – FEBRUARY 8, 2006**

**YEAS – TRUSTEES  BANDEMER,  BEST, CHEEK, CHRISTIAN, DOYLE, ENGLISH, NGARE, STEWART AND CHAIRPERSON ISOM  –  9**

**NAYS – NONE**

**PUBLIC FORUM**

**AT 4:15 P.M., CHAIRPERSON ISOM DECLARED THE MEETING IN OPEN FORUM FOR GENERAL DISCUSSION BY THE PUBLIC ATTENDING THE MEETING.**

**ADJOURNMENT**

**THERE BEING NO FURTHER BUSINESS BEFORE THE BOARD, CHAIRPERSON ISOM ADJOURNED THE MEETING AT 4:20 P.M. UNTIL THURSDAY, OCTOBER 20, 2005, AT 9:00 A.M., IN ROOM 910 OF THE COLEMAN A. YOUNG MUNICIPAL CENTER, DETROIT, MICHIGAN  48226.**

28

**POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT**
**MEETING NUMBER 2545  –  THURSDAY  –  OCTOBER 13, 2005**


<u>**ADJOURNMENT**</u>


**RESPECTFULLY SUBMITTED,**



_____

**ASSISTANT EXECUTIVE SECRETARY**